**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., SIERRA CLUB, INC., ENVIRONMENTAL LAW & POLICY CENTER, and RESPIRATORY HEALTH ASSOCIATION, <br><br>  Plaintiffs, <br><br> v. <br><br> AMEREN ENERGY RESOURCES COMPANY LLC and AMEREN ENERGY RESOURCES GENERATING COMPANY, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** |

## INTRODUCTION

1.     Natural Resources Defense Council, Inc., Sierra Club, Inc., Environmental Law & Policy Center, and Respiratory Health Association bring this action against to address significant and ongoing violations of air pollution permit emission limits at the E.D. Edwards Generation Plant in Bartonville, Illinois (Edwards Plant), owned and operated by Defendants.  This Complaint seeks declaratory and injunctive relief and the imposition of civil penalties under the federal Clean Air Act, 42 U.S.C. § 7401 *et. seq.*

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over the Clean Air Act claims set forth in this complaint pursuant to 42 U.S.C. § 7604(a) (Clean Air Act citizen suit provision) and 28 U.S.C. § 1331 (federal question).  Jurisdiction exists under 28 U.S.C. § 1331 because this action is brought to address Defendants' violations of the Illinois State

1

Implementation Plan approved by the United States Environmental Protection Agency (USEPA) pursuant to the Clean Air Act, and a permit issued pursuant to the State Implementation Plan. The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 7413 and 7604.

3. Venue lies in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 7604, because the stationary source that is the subject of this action is located within this district.

4. To the extent required by 42 U.S.C. § 7604(b)(1)(A), on July 17, 2012, Plaintiffs notified in writing the Administrator of the USEPA, the Illinois Environmental Protection Agency (IEPA), and the Defendants of the alleged violations set forth in this complaint and Plaintiffs' intent to sue 60 days prior to commencement of this action. A true and accurate copy of Plaintiffs' 60-day notice letter is attached as Exhibit 1 and incorporated by reference herein (Notice Letter).

5. More than sixty days have passed since notice was served by United States Mail. Neither USEPA nor IEPA has commenced or diligently prosecuted a court action to redress the violations alleged in this complaint.

## PARTIES

6. Plaintiff Natural Resources Defense Council, Inc. (NRDC), a not-for-profit corporation organized and existing under the laws of the State of New York, is a national environmental organization with more than 400,800 members. More than 16,840 of these members live in the State of Illinois, and more than 150 of those members live within Peoria County where the Edwards Plant is located. *See* Declarations of Robert Jorgenson, Mary Ann Schafer, Donald Zumwalt, and Linda Andrews, attached

as Exhibits 2, 3, 4, and 5.  NRDC is dedicated to the preservation, protection, and defense of the environment, its wildlife and natural resources, and actively supports effective enforcement of the Clean Air Act on behalf of its members.

7.   Plaintiff Sierra Club, Inc. (Sierra Club), a not-for-profit corporation organized and existing under the laws of the State of California, is a national environmental organization with more than 625,000 members, with offices and programs authorized and doing business in the State of Illinois.  More than 21,000 of these members live in the State of Illinois; more than 1,400 of those members live within Peoria County.  See Declarations of David Pittman, Joyce Blumenshine, and Joyce Harant, attached as Exhibits 6, 7, and 8.  The Sierra Club's purpose is to protect the natural environment and promote the responsible use of the earth's ecosystems and resources; and Sierra Club devotes substantial resources to Clean Air Act enforcement.

8.   Plaintiff Environmental Law and Policy Center (ELPC), a not-for-profit corporation organized and existing under the laws of the State of Illinois, is a Midwest public interest environmental advocacy organization.  ELPC's goals include developing sound environmental management practices that conserve natural resources and improve the quality of life in its members' communities.  ELPC currently has more than 1,500 members who live in the State of Illinois, including members who live in the vicinity of the Edwards Plant.  See Declarations of R. Given Harper, Harold Schlesser, and Meredith Schroeer, attached hereto as Exhibits 9, 10, and 11.  ELPC strives to help effectively enforce the Clean Air Act in order to improve heath and quality of life in its members' communities and to ensure clean air.

9.      Plaintiff Respiratory Health Association (RHA), a not-for-profit corporation organized and existing under the laws of the State of Illinois, has been a local public health leader since 1906.  Today, the association addresses asthma, chronic obstructive pulmonary disease, lung cancer, tobacco control, and air quality, with a comprehensive approach involving research, education, and advocacy activities.  RHA currently has more than 1,500 members who live in the State of Illinois, including members who live in the vicinity of the Edwards Plant.  See Declaration of Alicia High, attached hereto as Exhibit 12.

10.     Within the meaning of section 302(e) of the Act, 42 U.S.C. § 7602(e), NRDC, Sierra Club, ELPC, and RHA are "persons" who may commence a civil action under section 304(a)(3) of the Clean Air Act, 42 U.S.C. § 7604(a)(3).  NRDC, Sierra Club, ELPC, and RHA sue on behalf of themselves and their individual members who live in the vicinity of the Edwards Plant.  These organizations and their members are adversely affected by the Edwards Plant's excess emissions – in violation of the Clean Air Act – that have deleterious impacts on the areas where they live, work, and recreate, as described in Exhibits 2-12.

11.     Defendant Ameren Energy Resources Company LLC (AER) is a Missouri corporation with principal offices at 1901 Chouteau Avenue, St. Louis, Missouri.

12.     Defendant Ameren Energy Resources Generating Company LLC (AERG), a wholly-owned subsidiary of Defendant AER, is an Illinois corporation with principal offices at 300 Liberty Street, Peoria, Illinois.

13.     Defendants AER and AERG are "persons" for purposes of Clean Air Act § 304(a)(1), 42 U.S.C. § 7604(a)(1).  42 U.S.C. § 7602(e).

14.     AER and AERG (collectively, Ameren) own and operate the Edwards Plant, which is located at 7800 South Cilco Lane, Bartonville, Illinois.  The Edwards Plant contains coal-fired generating Unit Nos. 1, 2, and 3.  Unit Nos. 1 and 2 are served by Common Stack 1, and Unit No. 3 is served by a separate stack.  Upon information and belief, construction on all three units commenced prior to April 14, 1972.

## BACKGROUND

15.     The objective of the federal Clean Air Act is "to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  Clean Air Act § 101(b), 42 U.S.C. § 7401(b).

16.     The Clean Air Act citizen suit provision provides at § 304(a), 42 U.S.C. § 7604(a), that "any person may commence a civil action on his own behalf . . . against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

17.     Under the Clean Air Act, each state is required to promulgate a State Implementation Plan providing for the implementation, maintenance, and enforcement of federally-specified air quality standards.  The State Implementation Plan must be approved by the USEPA.  Clean Air Act § 110, 42 U.S.C. § 7410.

18.     The State Implementation Plan promulgated by Illinois, set forth in regulations adopted by the Illinois Pollution Control Board, has been approved by USEPA.  40 C.F.R. § 52.720.

*Regulation of Opacity and Particulate Matter*

19. The Illinois State Implementation Plan regulates, *inter alia*, percentage opacity, which is the degree to which transmittance of light through an air emission plume is reduced by the presence of air pollutants. The provisions governing percentage opacity were approved as part of the Illinois State Implementation Plan in 1992. 57 Fed. Reg. 61834-01 (Dec. 29, 1992).

20. The State Implementation Plan provides at 35 Ill. Adm. Code § 212.123 that, for any unit for which construction commenced prior to April 14, 1972, an exceedance of 30% opacity constitutes a violation of that provision if it falls into one or more of the following categories:

1. The exceedance is greater than 60% opacity.
2. The exceedance(s) are greater than 8 minutes in aggregate duration within any 60-minute period.
3. The exceedance occurs when there have already been three other exceedances within 24 hours.
4. The exceedances occurred, regardless of duration, from more than one stack within a 60-minute period, where the center points of the stacks are less than 305 meters (1,000 feet) apart.

21. The Illinois State Implementation Plan regulations prohibit operation of any emission source without an operating permit issued by IEPA. 35 Ill. Adm. Code 201.143, 201.144; 37 Fed. Reg. 10862 (May 31, 1972).

22. The Illinois State Implementation Plan opacity regulations further provide as follows:

      a.      The opacity limitations set forth in sections 212.122 and 212.123 "shall apply during times of startup, malfunction and breakdown except as provided in the operating permit."  35 Ill. Adm. Code § 201.124; and

      b.      Where a permit grants permission to operate during startup, malfunction and breakdown notwithstanding opacity exceedances, operating during these events, and full compliance with any terms and conditions associated with such permission, constitutes a prima facie defense to enforcement.  35 Ill. Adm. Code § 201.265.

      23.      The Illinois State Implementation Plan sets out particulate matter emission limits applicable to coal-fired electric generating units constructed prior to April 14, 1972.  *See* 35 Ill. Adm. Code §§ 212.202 and 212.203.

      24.      The Illinois State Implementation Plan creates a presumption that a violation of opacity limits constitutes a violation of the applicable particulate matter limit, unless a stack test conducted within 60 days, under the same operating conditions for the unit and the control devices, shows that the unit at issue is in compliance with the particulate matter limitation.  35 Ill. Adm. Code § 212.124.

*Permit Conditions*

      25.      The Edwards Plant is currently subject, and was subject during the relevant time period, to an operating permit issued by IEPA (Permit) that regulates, *inter alia*, percentage opacity.

      26.      The terms and conditions contained in the Permit that have expired remain in force pursuant to Illinois Environmental Protection Act § 39.5(4)(b), 415 ILCS 5/39.5(4)(b).

      27.      The Permit includes, *inter alia*, the following conditions:

  a. Emissions of particulate matter from the boilers shall not exceed [specified numeric limits derived from 35 Ill. Adm. Code §§ 212.202 and 212.203(a)] in any one-hour period.  (Condition 2).

  b. Except as provided in Conditions 1 and 2, emissions of opacity from the boilers shall comply with the standards of general applicability for existing coal-fired boiler [sic] . . . .  (Condition 3).

  c. The Permittee shall submit a quarterly excess emission report of emissions in excess of those allowed under 35 Ill. Adm. Code § 212.123, in accordance with the requirements of 35 Ill. Adm. Code § 201.405.  This report shall be based on data from the Continuous Emissions Monitor System (CEMS).  (Condition 4a).

  d. Operation in excess of applicable opacity, particulate matter, and carbon monoxide emission standards is allowed during periods of startup, malfunction, and breakdown.  (Condition 5a).

  e. The Permittee shall keep a record of each startup, including information as to the length of time that such operation exceeded applicable standards and limitations, and a justification for the length of the startup.  (Condition 5b).

  f. The Permittee shall notify the Illinois EPA's Regional Office by telephone as soon as possible during normal working hours upon the occurrence of excess emissions due to malfunctions or breakdowns.  The Permittee shall comply with all reasonable and safe directives of the Regional Office regarding such malfunctions and breakdowns. (Condition 5c).

  g. The Permittee shall maintain records of excess emissions during malfunctions and breakdowns.  (Condition 5d).

      h.      The Permittee shall not continue operation during malfunction or breakdown beyond such time as is necessary to prevent injury to persons or severe damage to equipment or to provide essential services. (Condition 5f).

***Opacity Exceedances***

      28.      In the quarterly reports submitted by Ameren pursuant to Permit Condition 4a (Excess Opacity Reports) for the period April 1, 2008 through December 31, 2012, Ameren separately reported opacity emissions from its Common Stack 1 (serving generating unit nos. 1 and 2) and its Unit No. 3 stack.[1]

      29.      Upon information and belief, the center point of Common Stack 1 is located less than 305 meters (1000 feet) from the center point of the Unit No. 3 stack.

      30.      In the Excess Opacity Reports for April 8, 2008 through December 31, 2012, Ameren identifies at least 1,069 excursions over the 30 percent opacity limit in the State Implementation Plan and the Permit that do not qualify for the exemptions set forth in 35 Ill. Adm. Code § 212.123, *i.e.*, these excursions do not fall into any of the four categories listed in ¶ 20 above (Exceedances).[2]

---

[1] Because Ameren submits Excess Opacity Reports quarterly, December 31, 2012 is the latest date for which Ameren has submitted a report as of the filing date of this Complaint.

[2] The number of Exceedances alleged in this Complaint is based upon the number of Exceedances identified in in Plaintiffs' original notice of intent to sue, sent July 17, 2012 (Exhibit 1), modified as necessary. The original notice identified Exceedances during the period from July 17, 2007 through March 31, 2012. Due to the applicable 5-year limitations period, the number of Exceedances alleged in this Complaint is based on the Exceedances from April 8, 2008 through March 31, 2012 identified in the original notice; less several exceedances that Plaintiffs later determined qualified for one of the exemptions in 35 Ill. Adm. Code § 212.123. On the filing date of this Complaint, Plaintiffs sent a new notice of intent to sue that supplements the initial notice, attached hereto as Exhibit 1. The new notice additionally identifies Exceedances that occurred from April 1, 2012 through December 31, 2012, as well as Exceedances that occurred during eight past quarters for which Plaintiffs did not have Excess Opacity Reports at the time of the initial notice: the fourth quarter of 2008, the fourth quarter of 2009, all four quarters of 2010, and the first and second quarters of 2011. The new notice also removes reference to any exceedance from the original notice that Plaintiffs determined qualified for one of the exemptions in 35 Ill. Adm. Code § 212.123. Plaintiffs will move to amend this Complaint to specifically incorporate all violations in the new notice upon expiration of the 60-day notice period.

31.     787 of the Exceedances are not attributed by Ameren in the Excess Opacity Reports to startup, breakdown, or malfunction so as to potentially qualify them for the exemption set forth in Permit Condition 5a (Non-SBM Exceedances).  The Non-SBM Exceedances reported by Ameren are listed in the spreadsheets attached as Exhibit 1 to the Notice Letter.

32.     The remaining 282 of the Exceedances are attributed by Ameren in the Excess Opacity Reports to startup, breakdown, or malfunction (SBM Exceedances).  The SBM Exceedances reported by Ameren are listed in the spreadsheets attached as Exhibit 2 to the Notice Letter.

33.     In connection with the SBM Exceedances, upon information and belief, Ameren failed to comply with some or all of the Permit requirements associated with startup, breakdown, and malfunction events, including but not necessarily limited to the requirement set forth in Condition 5b that Ameren notify IEPA's regional office by telephone as soon as possible during normal working hours of such events.

*Particulate Matter Exceedances*

34.     Upon information and belief, Ameren has not performed any particulate matter stack tests within 60 days of any of the Exceedances from April 17, 2008 to the present under the same operating conditions for the unit and the control devices, and in accordance with Method 5, 40 CFR part 60, showing that any of the emission units were in compliance with the particulate emission limitations required by 35 Ill. Adm. Code §§ 212.202 and 212.203(a) and incorporated into the Permit in Condition 2.

**FIRST CLAIM FOR RELIEF**
**Violation of Opacity Limits – Non-SBM Exceedances**

35.     Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 34.

36.     The Illinois State Implementation Plan provision at 35 Ill. Adm. Code § 212.123, setting forth a 30 percent opacity limitation subject specified exemptions, constitutes an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A).

37.     The Permit, which requires at Condition 3 that the Edwards Plant comply with the requirements of 35 Ill. Adm. Code § 212.123, constitutes an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A), and "an order issued by . . . a State with respect to such standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(B), 42 U.S.C. § 7604(a)(1)(B).

38.     In its Excess Opacity Reports from April 17, 2008 through December 31, 2012, Ameren reported at least 787 Non-SBM Exceedances, as set forth in Exhibit 1 to the Notice Letter (Ex. 1 hereto).

39.     The Non-SBM Exceedances violate the Illinois State Implementation Plan at section 212.123, 35 Ill. Adm. Code § 212.123, and therefore constitute violations of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A).  These violations are, upon information and belief, continuing through the date of filing of this Complaint, and have been repeated.

40.     The Non-SBM Exceedances violate the Permit, and therefore constitute

violations of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A), and of "an order issued by . . . a State with respect to such standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(B), 42 U.S.C. § 7604(a)(1)(B). These violations are continuing and have been repeated.

## SECOND CLAIM FOR RELIEF
### Violation of Opacity Limits – SBM Exceedances

41.  Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 40.

42.  In its Excess Opacity Reports from April 17, 2008 through December 31, 2012, Ameren reported 282 SBM Exceedances, as set forth in Exhibit 2 to the Notice Letter (Ex. 1 hereto).

43.  Ameren's failure to comply with some or all of the Permit requirements associated with startup, breakdown, and malfunction events, including but not necessarily limited to the requirement set forth in Condition 5b that Ameren notify IEPA's regional office by telephone as soon as possible during normal working hours of such events, disqualifies the SBM Exceedances from the exemption set forth in Permit Condition 5a, and any associated affirmative defense, because Ameren is, upon information and belief, not in "full compliance with any terms and conditions associated with such permission" pursuant to 35 Ill. Adm. Code § 201.265.

44.  The SBM Exceedances violate the Illinois State Implementation Plan at section 212.123, 35 Ill. Adm. Code § 212.123, and therefore constitute violations of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act

§ 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A).

45. These violations are, upon information and belief, continuing through the date of filing of this Complaint, and have been repeated.

46. The SBM Exceedances violate the Permit, and therefore constitute violations of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A), and of "an order issued by . . . a State with respect to such standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(B), 42 U.S.C. § 7604(a)(1)(B). These violations are continuing and have been repeated.

### THIRD CLAIM FOR RELIEF
### Violation of Particulate Matter Limits

47. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 46.

48. Upon information and belief, Ameren has not performed any particulate matter stack tests within 60 days of any of the Exceedances from April 17, 2008 through December 31, 2012 under the same operating conditions for the unit and the control devices showing that any of the emission units were compliance with the particulate emission limitations incorporated into the Permit in Condition 2.

49. Both the Non-SBM Exceedances and the SBM Exceedances therefore constitute violations of the particulate matter limitations in 35 Ill. Adm. Code §§ 212.202 and 212.203(a) and set forth in Permit Condition 2, pursuant to 35 Ill. Admin. Code § 212.124.

50. The exceedances of particulate matter limitations, by operation of 35 Ill.

Adm. Code § 212.124, violate the Illinois State Implementation Plan at sections 212.202 and 212.203(a), 35 Ill. Adm. Code §§ 212.202 and 212.203(a), and therefore constitute violations of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A).

51.     The exceedances of the Permit Condition 2 particulate matter limitations, by operation of 35 Ill. Admin. Code § 212.124, violate the Permit, and therefore constitute violations of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A), and of "an order issued by . . . a State with respect to such standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(B), 42 U.S.C. § 7604(a)(1)(B).

52.     These violations are, upon information and belief, continuing through the date of filing of this Complaint, and have been repeated.

**FOURTH CLAIM FOR RELIEF**
**CAA – Violation of Reporting Requirements**

53. Plaintiffs incorporate by reference and reallege the allegations contained in paragraphs 1 through 52.

54. Ameren's failure to comply with some or all of the Permit requirements associated with startup, breakdown, and malfunction events, including but not necessarily limited to the requirement set forth in Condition 5b that Ameren notify IEPA's regional office by telephone as soon as possible during normal working hours of such events, constitutes violation of an "emission standard or limitation" under the Clean Air Act for purposes of Clean Air Act § 304(a)(1)(A), 42 U.S.C. § 7604(a)(1)(A), and of "an order issued by . . . a State with respect to such standard or limitation" under the Clean Air Act

for purposes of Clean Air Act § 304(a)(1)(B), 42 U.S.C. § 7604(a)(1)(B).

55. These violations are, upon information and belief, continuing through the date of filing of this Complaint, and have been repeated.

## **RELIEF REQUESTED**

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief to correct defendants' significant and ongoing violations of law:

A. DECLARE that defendants have violated and continue to violate the Illinois State Implementation Plan and the Permit by continually allowing the Edwards Plant to exceed its opacity limit;

B. DECLARE that defendants have violated and continue to violate the Illinois State Implementation Plan and the Permit through exceedances of the Edwards Plant's particulate matter limitation by operation of 35 Ill. Adm. Code § 212.124;

C. DECLARE that defendants have violated and continue to violate the Permit by continually failing to take the required measures concerning opacity exceedances identified as occurring during startup, breakdown, and malfunction.

D. ISSUE A PERMANENT INJUNCTION requiring defendants to take promptly all measures necessary to operate Edwards Plant in compliance with the opacity limitations and associated conditions contained in the Illinois State Implementation Plan and the Permit;

E. ORDER defendants to pay a civil penalty pursuant to Clean Air Act §§ 113(b) and 304(a), 42 U.S.C. §§ 7413(b) and 7604(a).

F. ORDER defendants to pay to plaintiffs their costs of litigation, including but not limited to reasonable attorney and expert witness fees, as authorized in Clean Air

Act § 304(d), 42 U.S.C. § 7604(d).

      G.     GRANT such other relief as the Court deems necessary and proper.

Dated:  April 18, 2013

                      Respectfully submitted,

                      /s Ann Alexander
                      _____
                      Ann Alexander
                      Natural Resources Defense Council
                      2 N. Riverside Plaza, Ste. 2250
                      Chicago, IL 60606
                      (312) 652-7905
                      aalexander@nrdc.org
                      *Counsel for Plaintiff Natural Resources Defense Council*

                      /s Andrew Armstrong
                      _____
                      Andrew Armstrong
                      Environmental Law & Policy Center
                      35 East Wacker Drive, Suite 1600
                      Chicago, IL 60601
                      312-673-6500
                      aarmstrong@elpc.org
                      *Counsel for Plaintiffs Environmental Law and Policy Center, Sierra Club, and Respiratory Health Association*