## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., SIERRA CLUB, INC., ENVIRONMENTAL LAW & POLICY CENTER, and RESPIRATORY HEALTH ASSOCIATION, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 13-cv-1181 |
| AMEREN ENERGY RESOURCES COMPANY LLC and AMEREN ENERGY RESOURCES GENERATING COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendants Ameren Energy Resources Company (AER) and Ameren Energy Resources Generating Company's (AERG) (collectively Ameren) Motion to Partially Dismiss for Lack of Subject Matter Jurisdiction (d/e 17). For the reasons set forth below, the Motion should be DENIED.

## STATEMENT OF FACTS

This action concerns alleged illegal air pollution from the E.D. Edwards Generation Plaint in Bartonville, Illinois (Plant), in violation of the Clean Air Act (Act), 42 U.S.C. § 7401 et seq. The Plant is a coal-fired electricity generating facility owned and operated by Ameren. The Plant has been operating since before April 14, 1972. The Plaintiffs Natural Resources Defense Council, Inc., Sierra Club, Inc., Environmental Law & Policy Center, and Respiratory Health Association each have members who reside near the Plant. Amended Complaint (d/e 16), ¶¶ 6-9, 11-14, 20. Plaintiffs allege that all of the parties are "persons" under the Act. Id., ¶¶10, 13.

The Act requires the United States Environmental Protection Agency (USEPA) to establish National Ambient Air Quality Standards (NAAQS). 42 U.S.C. § 7409. The Act calls on the states to promulgate a State Implementations Plan (SIP) to achieve air quality in that state that meets the NAAQS. 42 U.S.C. § 7410. Each state is divided into regions classified as attainment (meaning the air in that region meets the NAAQS), nonattainment (meaning that the air in that region does not meet the NAAQS), and unclassifiable (meaning that the region cannot be classified as meeting or not meeting the NAAQS ). 42 U.S.C. § 7407(d). The Plant is

in a designated Attainment region.  See Memorandum of Law in Support of Defendants' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction (d/e 18) (Ameren Memorandum), at 2; 60 Fed. Reg. 16996 (April 4, 1995).

The USEPA must approve each state SIP.  The USEPA approved the Illinois SIP.  40 C.F.R. § 52.720.  The NAAQS and the state implementation plans, including the Illinois SIP, are revised periodically.  The Illinois SIP is codified at 35 Illinois Administrative Code Part 106 et seq.  The Illinois SIP prohibits certain facilities (called "sources" or "stationary sources"), including coal-fired facilities such as the Plant, from operating without an operating permit.  35 Ill. Adm. Code § 201.144.  The Illinois SIP set deadlines by which facilities which existed on April 14, 1972, including the Plant, had to secure an operating permit.  The deadline for the Plant was April 1, 1973.  Id.

The Plant is currently operating on a permit (Permit) that was issued in July 1, 2004, for one year.  Amended Complaint, ¶ 25; Ameren Memorandum, attached Permit.  The July 1, 2005, permit for the Plant was issued pursuant to Clean Air Act Permit Program approved by the USEPA under Title V of the Act.  See 42 U.S.C. §§ 7661-7661f; 415 ILCS 5/39.5(4).  Ameren appealed the issuance of the permit to the Illinois Pollution Control

Board, and that appeal is still pending.  Until the appeal is resolved, the

Permit remains in effect.  AmerenEnergy Resources Generating Company,

Edwards Plant Station v. IEPA, PCG 06-067, 2006 WL 529477, at *1

(Ill. Pol. Contr. Bd. February 16, 2006); see 415 ILCS 5/39.5(4)(b).

The Illinois SIP places limits on the "opacity" of the plume emitted

from the smoke stacks of facilities such as the Plant.  Opacity means "the

degree to which emissions reduce the transmission of light and obscure the

view of an object in the background."  40 C.F.R. § 60.2.  The degree to

which the plume blocks light is measured in a percentage of opacity, and

an occurrence of opacity that exceeds a stated allowed percentage is

referred to as "exceedance."  The Illinois SIP's opacity requirements

depend, in part, on the age of the facility.  For facilities constructed before

April 14, 1972, such as the Plant, an exceedance of 30% opacity or greater

violates the SIP.   35 Ill. Adm. Code § 212.123(a).  The SIP contains an

exception to this requirement:

> b) Exception: The emission of smoke or other particulate
> matter from any such emission source may have an opacity
> greater than 30 percent but not greater than 60 percent for a
> period or periods aggregating 8 minutes in any 60 minute
> period provided that such more opaque emissions permitted
> during any 60 minute period shall occur from only one such
> emission source located within a 305 m (1000 ft) radius from
> the center point of any other such emission source owned or
> operated by such person, and provided further that such more

opaque emissions permitted from each such emission source
shall be limited to 3 times in any 24 hour period.

35 Ill. Adm. Code § 212.123(b).

The SIP contains additional provisions regarding opacity

exceedances during three specific circumstances:  startup, malfunction,

and breakdown:

a.  The opacity limitations "shall apply during times of startup,

malfunction and breakdown except as provided in the operating

permit;" and

b.  The grant of permission in a permit to operate during startup,

malfunction or breakdown in violation of the opacity limitations,

"and full compliance with any terms and conditions connected

therewith, shall be a prima facie defense to an enforcement

action."

35 Ill. Adm. Code §§ 212.124 & 201.265.

The Illinois SIP also establishes particulate matter emission limits for

coal-fired facilities that existed prior to April 14, 1972, such as the Plant.

35 Ill. Adm. Code §§212.202 & 212.203.  The SIP states that an

exceedance of the applicable opacity limitations "shall constitute a violation

of the applicable particulate limitations"; provided, however, that the owner

or operator may establish a defense by demonstrating that he facility is in

compliance through the use of "tests conducted within a reasonable time not to exceed 60 days, under the same operating conditions for the source and the control device(s), and in accordance with Method 5, 40 CFR 60, Appendix A, incorporated by reference in Section 212.113."  35 Ill. Adm. Code § 212.124.

The Permit requires the Plant to comply with limits for particulate matter established pursuant to the SIP and a site specific determination by the Illinois Pollution Control Board in Regulatory Proceeding R82-1. Permit, ¶ 2.  The Permit requires the Plant to comply with opacity "standards of general applicability for existing coal-fired boiler . . . ." Permit, ¶ 3.  The Permit, however, states that, "Operation in excess of applicable opacity, particulate matter, and carbon monoxide emission standards, is allowed during periods of startup, malfunction, and breakdown."  Permit, ¶ 5a.

The Permit requires Ameren to submit quarterly excess emissions reports in accordance with the SIP, 35 Ill. Adm. Code § 201.405.  Permit, ¶ 4a.  Ameren must also "keep a record of each startup, including . . . the length of time such operation exceeded applicable standards and limitations, and a justification for the length of startup."  Permit, ¶ 5b. Ameren also must maintain records of excess emissions during

malfunctions and breakdowns, and must retain these records for at least two years.  Permit, ¶¶ 5d & 5e.

In the event of a malfunction or breakdown, Ameren must notify the Illinois Environmental Protection Agency's (IEPA) Regional Office by telephone as soon as possible during normal working hours.  Ameren must "comply with all reasonable and safe directives of the Regional Office regarding such malfunctions and breakdowns."  Permit,¶ 5c.  Ameren also must not continue to operate "during malfunctions and breakdowns beyond such time as is necessary to prevent injury to persons or severe damage to equipment or to provide essential services."  Permit, ¶ 5f.

The Plaintiffs allege that the quarterly excess emission reports for the Plant show that from April 8, 2008 through December 31, 2012, the Plant had 2,339 exceedances beyond 30 % opacity that did not fit within the quoted exception in Illinois SIP § 212.123(b).  Of these 2,339 exceedances, 1,549 of them were not associated with startup, malfunctions or breakdowns and violated the SIP and the Permit.  The Plaintiffs further allege that Ameren violated the SIP and the Permit in connection with 790 exceedances that occurred during startups, malfunctions and breakdowns (the SBM Exceedances) because Ameren did not follow all of the Permit's requirements, and specifically because Ameren did not contact IEPA's

Regional Office by telephone as soon as possible during normal working hours to give notice of the events.  Amended Complaint, ¶¶ 30-33.  The Plaintiffs further allege that Ameren has not conducted the approved testing within 60 days of these exceedances to show that the emissions were in compliance with the particulate matter limits in the SIP and the Permit, pursuant to 35 Ill. Adm. Code §§ 212.203 and 212.203(a).  Amended Complaint, ¶ 34.

The Plaintiffs allege four claims based on these alleged facts.

Count I alleges that Ameren exceeded the opacity limits during the exceedances that did not involve startup, malfunctions or breakdowns (the Non-SBM Exceedances), in violation of the SIP and the Permit.  Amended Complaint, ¶¶  35-40.

Count II alleges that Ameren failed to comply with all requirements of the permit during the SBM Exceedances, in violation of the Permit and the SIP.  The Plaintiffs allege that the SBM Exceedances violated the SIP because Ameren did not fully comply with the terms and conditions in the Permit associated with the Permit's permission to allow exceedances during startup, malfunctions, and breakdowns.  Amended Complaint, ¶¶ 41-46.

Count III alleges that all of the 2,339 exceedances violated the particulate matter limitations in the Permit and the SIP. Amended Complaint, ¶¶ 47-52.

Count IV alleges that Ameren failed to telephone the IEPA Regional Office as soon as possible during normal working hours to give notice of exceedances due to malfunctions and breakdowns, in violation of the Permit. Amended Complaint, ¶¶ 53-54.

The Plaintiffs ask the Court to declare that Ameren is violating the Act by virtue of the alleged conduct; to issue a permanent injunction enjoining Ameren to comply with the SIP and the Permit; to impose civil penalties on Ameren as allowed under the Act; and to award the Plaintiffs cost and attorney fees. Amended Complaint, at 15-6 Prayer for Relief. Ameren moves to dismiss Count IV and the portions of Counts I, II, and III that are based on violating the Permit on the grounds that the Court lacks subject matter jurisdiction to hear claims arising from the violation of the Permit.

## ANALYSIS

Ameren moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction to hear the case. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may challenge subject matter jurisdiction based on its jurisdictional allegations in the complaint, or may challenge jurisdiction

based on facts not set forth in the complaint.  <u>Apex Digital, Inc. v. Sears,</u>

<u>Roebuck</u> & Co., 572 F.3d 440, 443-44 (7th Cir. 2009).  The Court may

consider matters outside of the pleadings to resolve a Rule 12(b)(1) Motion.

<u>See</u> <u>St. John's United Church of Christ v. City of Chicago</u>, 502 F.3d 616,

625 (7th Cir. 2007).  The Plaintiffs bear the burden of proof to establish

subject matter jurisdiction.  <u>United Phosphorus, Ltd. v. Angus Chem. Co.</u>,

322 F.3d 942, 946 (7th Cir. 2003) (en banc), *overruled on other grounds by*

<u>Minn-Chem, Inc. v. Agrium, Inc.</u>, 683 F.3d 845, 851-52 (7th Cir. 2012) (en

banc).

      After careful review, this Court finds that the District Court has subject

matter jurisdiction to hear the Plaintiffs' claims for violation of the terms of

the Permit.  The Plaintiffs bring this action pursuant to § 7604(a) of the Act,

42 U.S.C. § 7604(a).  Section 7604(a) authorizes any person to bring

actions to enforce compliance with the Act.  Section 7604(a) states, in part:

> (a) Authority to bring civil action; jurisdiction
>
> Except as provided in subsection (b) of this section, any person
> may commence a civil action on his own behalf--
>
> > **(1)** against any person . . . who is alleged to have
> > violated (if there is evidence that the alleged violation has
> > been repeated) or to be in violation of (A) an emission
> > standard or limitation under this chapter or (B) an order
> > issued by the Administrator or a State with respect to
> > such a standard or limitation,

> . . . .
>
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties . . . .

42 U.S.C. § 7604(a) (emphasis in the original).[1]  Section 7604 defines

"emission standard or limitation" as follows, in part:

> For purposes of this section, the term "emission standard or limitation under this chapter" means—
>
> . . . .
>
> **(3)** . . . any condition or requirement under an applicable implementation plan relating to . . . air quality maintenance plans . . . ; or
>
> **(4)** any other standard, limitation, or schedule established under any permit issued . . . under any applicable State implementation plan approved by the Administrator [of the USEPA], any permit term or condition, and any requirement to obtain a permit as a condition of operations.

which is in effect . . . under an applicable implementation plan.

42 U.S.C. § 7604(f).  Therefore, § 7604(a) authorizes any person to bring

an action in this Court against any person who is violating an emission

standard or limitation, and the term "emission standard or limitation"

---

[1] Section 7604(b) sets forth notice requirements before a citizen may commence an actions.  42 U.S.C. §7604(b).  Ameren does not claim insufficient notice in the Motion.

includes a schedule in a permit issued under an implementation plan, or a permit term or condition.  42 U.S.C. § 7604(a) and (f).

The Plaintiffs allege that Ameren has violated and is violating the terms and conditions of the Permit issued under the Illinois SIP, an implementation plan approved by the Administrator of the USEPA.  The Illinois SIP required the Plant to secure a permit by April 1, 1973.  35 Ill. Adm. Code § 201.144.  As of July 1, 2004, the IEPA issued these permits on an annual basis.  See Permit, at 1.  The Plaintiffs further allege that all of the parties are persons under the Act.[2]  Therefore, the Plaintiffs allege a claim under § 7604(a) for a violation of an emission standard or limitation under the Act, and this Court has jurisdiction to hear those claims. 42 U.S.C. § 7604(a).

Ameren argues that the Court lacks subject matter jurisdiction because the Permit is not "federally enforceable" under the terms of the Illinois SIP.  Ameren argues that to be federally enforceable, a permit must be subject to a public notice and comment period, and must be submitted to the USEPA for review, citing 35 Ill. Adm. Code § 252.102.  See Ameren Memorandum, at 7-8. The IEPA did not follow these steps in issuing the Permit.  Therefore, according to Ameren, this Court lacks jurisdiction to

---

[2] Ameren does not dispute this allegation.

hear claims under § 7604(a) to enforce the Permit.  This argument is not persuasive.

Section 7604(a) gives the Court subject matter jurisdiction over actions brought by any person against any person who is violating an "emission standard or limitation" under the Act.  Section 7604(f) of the Act defines "emission standard or limitation" to include a permit issued under an implementation plan or a condition or term of that permit.  Section 7604(f) does say "federally enforceable" permit, but says a "permit issued . . . under any applicable State implementation plan approved by the Administrator."  The IEPA issued the Permit under the Illinois SIP.  The Illinois SIP is an approved state implementation plan.  These allegations are sufficient to establish subject matter jurisdiction. Ameren's argument would be persuasive only if the IEPA failed to issue the Permit properly because it did not comply with required provisions of the Illinois SIP concerning "federally enforceable" permits.

The Court has carefully reviewed the portions of the Illinois SIP cited by Ameren and the Plaintiffs, and has extensively reviewed other related provisions in the Illinois SIP and cannot find a reference to a "federally enforceable" permit.  The Illinois SIP defines the term "federally enforceable."  According to the SIP, "'Federally enforceable' means

enforceable by the United States Environmental Protection Agency."  35 Ill. Adm. Code § 203.123.  The definition is in Part 203 of the SIP.  Part 203 regulates construction of new facilities or modification of existing facilities. 35 Ill. Adm. Code § Part 203, Major Stationary Sources Construction and Modification.  The Illinois SIP uses the term "federally enforceable" in relation to emission standards for new constructions or major modifications to facilities in nonattainment areas.  <u>See</u> 35 Ill. Adm. Code § 203.208(c) ("A decrease in actual emissions is creditable to the extent that: 1) It is federally enforceable at and after the time that actual construction on the particular change begins; . . . .").  The term "federally enforceable" does not appear to be used in relation to issuing operating permits to existing facilities.   Furthermore, the Plant is in an attainment area, not a nonattainment area.

Ameren correctly notes that the SIP contains procedures to approve certain permits that require public notice and comment, and submission to USEPA for review.  Section 203.150 requires notice and comment "prior to the initial issuance or revision of a permit pursuant to Subpart B" of Part 203.  35 Ill. Adm. Code § 203.150.  Subpart B of Part 203 applies to "new major sources and major modifications."  35 Ill. Adm. Code § 203.202.  This provision does not apply in this case.  The Plant is not a new major source

of pollution.  The Plant has been operating since before April 14, 1972.

The Permit also is an operating permit and does not relate to major

modifications of the Plant.  Subpart B of Part 203 does not relate to the

Permit, and the IEPA was not required to comply with § 203.150 to issue

the Permit to the Plant under the SIP.

Ameren is also correct that Part 252 of the Illinois SIP contains

permitting requirements for notice and comment, and submission to the

USEPA for review.  35 Ill. Adm. Code §§ 252.201.  Sections 252.101 and

252.102 of the SIP, however, states that the Part 252 rules apply to

construction projects under Part 203, not operating permits such as the

Permit:

> These rules are adopted to satisfy 40 C.F.R. 51.18(h) (1993)
> and 35 Ill. Adm. Code 203.150 which require a period of public
> review for permits for construction or modification of certain
> emission sources.

35 Ill. Adm. Code § 252.101; and:

> These rules apply to all permit applications filed with the Illinois
> Environmental Protections Agency (Agency) for sources subject
> to 35 Ill. Adm. Code 203 "Major Stationary Sources
> Construction and Modification."

35 Ill. Adm. Code § 252.102.

Therefore, Ameren has failed to establish that the Illinois SIP contains

any reference to a "federally enforceable" permit.  Part 203 uses the term

"federally enforceable," but that term does not relate to issuing operating permits for existing facilities such as the Plant. Parts 203 and 252 also contain procedures for notice and comment for construction permits, but not for an operating permit for the Plant. Therefore, the IEPA was not required to follow the § 203.150 or the Part 252 rules, including notice and comment and submission to the USEPA, to issue the Permit under the SIP. The Permit was allegedly properly issued under an approved state implementation plan, and its terms are "emission standards or limitations" under § 7604 of the Act.

The other authorities cited by Ameren demonstrate why Parts 203 and 252 of the Illinois SIP relate to permits for construction of proposed new facilities and major modifications of existing facilities, and not to operating permits for existing facilities such as the Plant. These authorities show that the USEPA uses the term "federally enforceable" in connection with estimating the amount of pollution that a proposed facility will emit. USEPA regulations require notice and comment and submission to the USEPA for approval of construction permits and other permits that rely on estimates of pollution from proposed facilities, but not for the Permit at issue here.

Ameren relies heavily on a final rule announced by the USEPA in 1989.  Ameren Memorandum, at 7 (citing Requirements for Preparation, Adoption and Submittal of Implementation Plans; Approval and Promulgation of Implementation Plans, 54 Fed. Reg. 27274, 27282 (June 29, 1989)).  This rule concerns construction of new facilities:

> SUMMARY:  On August 25, 1983, EPA proposed amendments to its regulations addressing the construction of new and modified stationary sources of air pollution (48 FR 38742).  The EPA proposed changes in eight areas of those regulations and provided additional guidance in three other areas.  Today's notice announces final action on that part of the August 25 proposal dealing with "Federal enforceability" of emission controls and limitations at a source.

54 Fed. Reg. 27274.  In announcing the rule, the USEPA explained that the term "federally enforceable" is primarily used in connection with evaluating an operator's planned voluntary actions to reduce emission from the proposed new facility.  The term is used in connection with the USEPA's new source review (NSR), prevention of significant deterioration of air quality (PSD), and nonattainment area regulations.  The USEPA explained:

> The five set of PSD and nonattainment regulations promulgated in 1980 aim their substantive preconstruction review requirements at "major stationary sources."  Each set of rules defines "major stationary source" as any stationary source that would have the potential to emit certain specified amounts of air pollutants.  In each case, "potential to emit" is then defined as the "maximum capacity of a stationary source to emit a pollutant under its physical and operational design," but any limitation on the capacity of a source to emit a pollutant is

> treated as part of its design only if the control or limitation is federally enforceable. The regulations then define "federally enforceable" as "enforceable by the Administrator."

54 Fed Reg. at 27275 (internal citations and footnotes omitted).  Thus, the term "federally enforceable" is used to classify a proposed voluntary limitation on the operation of a proposed new facility that the USEPA will consider in calculating the potential for the proposed facility to emit pollution.  The determination of the planned facility's potential to emit pollution determines whether the proposed facility will be considered a "major stationary source," which subjects the proposal to additional regulations related to PSD, NSR, and additional regulations in nonattainment areas.  The "federally enforceable" term is similarly used to evaluate the potential for emissions from proposed major modifications of existing facilities.  Id.

The USEPA also explained that federal regulations use the term "federally enforceable" in connection with emission of a specific pollutant from existing facilities when the amount of the actual emission of the specific pollutant cannot be determined for some reason.  In such situations, the USEPA presumes the amount of the emissions that a particular facility produces, but the USEPA allows reductions in the amount

of presumed emissions based on voluntary limitations on the operation of the facility if the voluntary limitations are federally enforceable.  Id.

In each case, the term "federally enforceable" relates to classifying the operator's voluntary limit on how a facility will be operated and whether that voluntary limitation will be taken into account when the USEPA must estimate the amount of emissions that the facility will produce:

> The general purposes of the Federal enforceability requirements were: (1) To corroborate, through the procedures for obtaining SIP revisions or federally approved construction permits, that any voluntarily imposed limits on a source's capacity to emit are, in fact, part of its physical and operational design, and that any claimed limitations will be observed; (2) to ensure that an entity with strong enforcement capability has legal and practical means to make sure that such commitments are actually carried out; and, generally, (3) to support the goal of the Act that EPA be able to enforce all relevant features of SIP's that are necessary for attainment and maintenance of NAAQS and PSD increments.

Id. (internal citations omitted).

In order to classify a voluntary limitation in a permit as federally enforceable, the permitting process must follow certain steps that include notice and comment and submission to the USEPA for review.  57 Fed. Reg. at 27282.  Thus, Parts 203 and 252 of the Illinois SIP require these procedures for approval of permits for new construction and major modifications of facilities.  If these rules are not followed, the permit may be valid, but any voluntary limitations on operations may not be federally

enforceable and may not be used to calculate the estimated emissions that the planned new or modified facilities will produce for purposes of the relevant USEPA regulations.  Id.  The term "federally enforceable" in the regulations does not relate to issuing operating permits for existing facilities, such as the Permit for the Plant.

Ameren also relies on the USEPA notice approving Illinois' NSR rules in the Illinois SIP.  Approval and Promulgation of Implementation Plans; Illinois, 57 Fed. Reg. 59928 (December 17, 1992).  The term "NSR" refers to "new source review," and so, also relates to new construction and major modifications of existing plans, not operating permits for existing facilities. The NSR rules do not apply in this case.

Furthermore, the USEPA reiterates in the December 17, 1992, notice that the term "federally enforceable" relates to voluntary limits on the operations of facilities for purposes of calculating estimated emissions:

> The term "federally enforceable," . . . is a term of art under the NSR program that serves three principal purposes. First, a permit that is federally enforceable may be used to limit voluntarily the "potential to emit" of a new source so as to keep the source's emissions below the NSR major source applicability thresholds. Second, voluntary permit limits on the potential to emit of an existing major stationary source undertaking a modification can be used to prevent, through intra-source netting, increasing its emissions above the significance levels that would trigger a major modification. . . . Third, if a new or modified source in a nonattainment area exceeds an applicability threshold and is subject to

nonattainment NSR requirements, it must obtain external emissions offsets . . . . The emissions reductions provided by the offsetting source must be federally enforceable in order to be creditable.

57 Fed. Reg. at 59929 (internal citations omitted).  This USEPA notice confirms that "federally enforceable" is a "term of art" used to classify voluntary limits on facility operations to reduce the estimated pollution that the proposed new or modified facilities will emit (or to estimate the off-set that can be applied from other facilities in non-attainment areas).   The term does not relate to issuing operating permits for existing facilities.

The regulations cited by Ameren do not affect the District Court's subject matter jurisdiction under § 7604(a).  The Amended Complaint contains no allegations regarding proposed modifications of the Plant, no allegations regarding estimates of emissions that cannot be determined, and no allegations regarding voluntary limitations on the operation of the Plant or whether any such voluntary limitations are "federally enforceable." The regulatory term "federally enforceable" and the regulations related to that term cited by Ameren, are irrelevant to the question of subject matter jurisdiction in this case. [3]

---

[3] Ameren also cites the definition of "federally enforceable" in 40 C.F.R. § 51.165(a)(1)(xiv).  See Ameren Memorandum, at 7.  Section 51.165 of the USEPA regulations sets forth the requirements for implementation plans to meet §§ 172(c)(5) and 173 of the Act, 42 U.S.C. §§ 7502(c)(5) and 7503.  40 C.F.R. § 51.165(a).  These sections of the Act pertain to "permits for construction and operation of new or modified major stationary sources anywhere in the nonattainment area . . . ."  42 U.S.C. § 7502(c)(5).

Therefore, for purposes of determining subject matter jurisdiction, the Permit is alleged to be a permit issued under an approved state implementation plan, and the terms and conditions of the Permit are within the definition of an "emission standard or limitation" in § 7604(f). Plaintiffs allege that Ameren has repeatedly violated those emission standards or limitations. The District Court has subject matter jurisdiction to hear that claim under § 7604(a). The Motion should be denied.

WHEREFORE Defendants Ameren Energy Resources Company and Ameren Energy Resources Generating Company's Motion to Partially Dismiss for Lack of Subject Matter Jurisdiction (d/e 17) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file a timely objection

---

The Plant is in an attainment area, not a nonattainment area. Section 51.165(a)(1)(xiv) also refers to permits under 40 C.F.R. § 52.21. That regulation applies to construction projects or changes in the methods of operations at stationary sources in attainment or unclassifiable areas. 40 C.F.R. §§ 52.21(a)(2)(i), 52.21(b)(52). The Plant is in an attainment area, but the Permit is neither a construction permit nor a permit relating to a change in the methods of operating the Plant. This regulation similarly is not relevant to the case.

will constitute a waiver of objections on appeal.  <u>See</u> <u>Video Views, Inc. v.</u> <u>Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  <u>See</u> <u>Local Rule</u> 72.2.


ENTER:   September 16, 2013


                              *s/ Byron G. Cudmore*
                    UNITED STATES MAGISTRATE JUDGE