# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, ENVIRONMENTAL LAW & POLICY CENTER, RESPIRATORY HEALTH ASSOCIATION, and SIERRA CLUB, INC., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.   13-cv-1181 |
| AMEREN ENERGY RESOURCES COMPANY LLC, and AMEREN ENERGY RESOURCES GENERATING COMPANY, | ) ) ) ) ) | |
| Defendants. | ) | |

## O R D E R   &   O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 17), and Magistrate Judge Cudmore's Report & Recommendation ("R&R") recommending denial of the Motion (Doc. 28). Defendants filed an Objection to the R&R (Doc. 29), and Plaintiffs filed a Memorandum in response (Doc. 31). For the reasons stated below, the disposition recommended in the R&R is accepted, the R&R is modified as explained herein, and Defendants' Motion to Dismiss is denied.

### LEGAL STANDARDS

When a district court lacks subject-matter jurisdiction over a claim, it must be dismissed. Lack of subject-matter jurisdiction may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). In ruling on such a motion, well-pleaded factual allegations must be accepted as true and all

reasonable inferences must be drawn in the plaintiff's favor. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). However, a court may look beyond the pleadings and consider submitted evidence to determine the existence of jurisdiction when it is not clear from the face of the complaint. *Id.*

As Defendants filed an Objection to the R&R, the Court reviews *de novo* those portions of the R&R to which "specific written objections" have been stated. Fed. R. Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## Background[1]

Plaintiffs, four not-for-profit organizations, filed the present case on behalf of themselves and their members complaining of violations of the Clean Air Act ("Act"), 42 U.S.C. §§ 7401-7671q (2012). They bring their claims pursuant to the citizen suit provision, 42 U.S.C. § 7604, which allows "any person" to commence a civil suit against, among others, persons alleged to be in violation of an emission standard or limitation as that term is defined in the provision. Defendants own and operate a coal-fired electricity generating facility called the E.D. Edwards Generation Plant ("Plant"), located in Bartonville, Illinois, and are thus subject to various environmental limits and regulations, including those in the Act.

In the Amended Complaint, Plaintiffs allege Defendants have violated requirements for proper operation of the Plant relating to emissions and reporting

---

[1] Unless otherwise noted, the facts are taken from Plaintiffs' Amended Complaint (Doc. 16) and all reasonable inferences are drawn in their favor, in accordance with the motion to dismiss standard.

requirements. These requirements originate from two different sources: 1) the Illinois State Implementation Plan ("SIP"), adopted pursuant to the Act and approved by the United States Environmental Protection Agency ("USEPA"), and 2) an operating permit ("Permit") issued to Defendants by the Illinois Environmental Protection Agency ("IEPA"). The first three claims allege Defendants violated emissions limits contained in both the SIP and the Permit; Claim Four is based on a failure to satisfy certain reporting requirements set forth solely in the Permit. Plaintiffs allege that violations of the limitations from both sources are actionable in a citizen suit under the Act. They seek declaratory and injunctive relief in addition to a civil penalty and costs.

In Defendants' Motion to Dismiss, they argue that the Court does not have subject-matter jurisdiction over claims that they violated the conditions of the operating Permit.[2] Accordingly, they seek to dismiss those allegations in Claims One through Three that are based on violations of the Permit conditions, as well as Claim Four in its entirety. Defendants primarily argue that because USEPA regulations have a definition for restrictions that are "federally enforceable," and that the Permit at issue does not satisfy that definition, this Court does not have jurisdiction over Plaintiffs' Permit-based claims.

The Permit, a copy of which is attached to Defendants' Memorandum in support of its Motion to Dismiss,[3] was issued by the IEPA on July 1, 2004. (Doc. 18-

---

[2] Defendants do not contest that the Court has jurisdiction over claims that they violated the SIP.

[3] Many of the facts in this paragraph go beyond the allegations of the Amended Complaint, but because these facts are relevant to a determination of whether there

1 at 1). Though the Permit purports to expire on June 30, 2005, the terms remain in effect pursuant to 415 Ill. Comp. Stat. 5/39.5(4)(b). (Doc. 16 at ¶ 26; Doc. 18 at 5). The Permit allows for operation of the Plant subject to attached standard conditions as well as the enumerated special conditions. (Doc. 18-1 at 1). The special conditions include the emissions limits and reporting requirements Plaintiffs allege Defendants violated. (Doc. 18-1 at 1-3). There does not appear to be any dispute that the Permit was issued without notice to the public or solicitation of public comment. (*See* Doc. 18-2 at 2).

In the R&R, Judge Cudmore recommended denying Defendants' Motion to Dismiss. He concluded that Plaintiffs' allegations come within the plain language of the citizen suit provision and the Court thus has jurisdiction. He found Defendants' argument, that the regulatory definitions for "federally enforceable" operate to limit federal court jurisdiction over citizen suits, to be without merit.

### DISCUSSION

The central question in this matter is whether Plaintiffs can sue Defendants under the citizen suit provision of the Act for violations of Permit conditions. The Court has thoroughly reviewed the R&R, the briefs, and the sources cited by both sides. As explained below, the Court finds the conclusion reached in the R&R is correct. Thus, the recommended disposition, denial of Defendants' Motion to Dismiss, is accepted. However, the Court takes note of Defendants' less substantive

---

is subject-matter jurisdiction over claimed violations of the Permit conditions, they may be considered by the Court. *See Long*, 182 F.3d at 554. Unless otherwise noted, the facts related to the Permit are undisputed.

objections to certain statements in the background section and other imprecise generalizations, and modifies the R&R accordingly.

## I.   *Objections*

Defendants objected generally to the recommended disposition, as well as to some particular statements in the R&R. (Doc. 29 at 1-2). As made clearer in the Memorandum accompanying the Objection,[4] Defendants primarily object to Judge Cudmore's conclusion that the term "federally enforceable" is a term of art that does not operate to limit the jurisdiction granted in § 7604. (Doc. 30 at 6-11). Defendants also seem to argue that the Permit is not in effect under the SIP, and thus the claims do not come under § 7604. (Doc. 30 at 6). Finally, Defendants make numerous specific objections to particular statements in the R&R that they believe to be incorrect statements of fact, factual statements that should be labeled as allegations, and improper legal conclusions. (Doc. 30 at 11-13). Below, the Court first explains the reasoning for adopting the recommended disposition of the R&R, addressing Defendants' substantive objections as they arise in the discussion, then considers the more specific and superficial objections thereafter.

## II.   *Plain Language of Citizen Suit Provision*

Under the plain language of the citizen suit provision of the Act, 28 U.S.C. § 7604, Plaintiffs have jurisdiction to bring claims for Defendants' alleged violations of the Permit. The provision states, in relevant part:

---

[4] As Plaintiffs point out in their Memorandum in response to the objections, Defendants did not technically comply with Rule 72(b) of the Federal Rules of Civil Procedure or Local Rule 72.2(b), as they failed to specifically list all of the objections in the Objection itself. (Doc. 31 at 3). The Court overlooks this violation because the objections are made adequately clear in the accompanying Memorandum.

[A]ny person may commence a civil action on his own behalf--
> (1) against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

. . . .

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order . . . and to apply any appropriate civil penalties . . . .

42 U.S.C. § 7604(a). The parties are primarily arguing about whether the Permit conditions satisfy the definition of "emission standard or limitation under this chapter," which is a defined term in the statute.[5] The definition gives four possible categories, only one of which is arguably applicable:

> For purposes of this section, the term "emission standard or limitation under this chapter" means--
> . . . .
> > **(4)** any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.[sic]
>
> which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

*Id.* § 7604(f).

This Court agrees with the conclusion reached in the R&R that applying the plain meaning of these provisions, taken together, the Court has jurisdiction over

---

[5] The Court notes that in the Amended Complaint, Plaintiffs allege that the Permit condition is both an "emission standard or limitation" under § 7604(a)(1)(A), as well as an "order issued by . . . a State" under § 7604(a)(1)(B). (Doc. 16 at ¶¶ 37, 40, 46, 51, 54). However, because Plaintiffs did not make this argument in opposition to the Motion to Dismiss, and the Court finds there is jurisdiction over the claim because the Permit term is an "emission standard or limitation," the Court does not consider this alternative alleged basis for jurisdiction.

the claims for violations of terms or conditions of the Permit. (*See* Doc. 28 at 10-13). In one of their briefs, Defendants argue § 7604(f) "does not convey blanket federal jurisdiction over all permits issued pursuant to the CAA or pursuant to a regulation that has been approved as part of a SIP." (Doc. 26 at 2). Yet that is almost precisely what the language of the statute does—it creates subject-matter jurisdiction over citizen suits for, *inter alia*, violating conditions of permits that are in effect under an SIP. Here, the Permit conditions are each "any permit term or condition," and the Permit is "in effect under [the chapter] or under an applicable implementation plan." 28 U.S.C. § 7604. Therefore, each condition is an "emission standard or limitation under this chapter." *Id.* Accordingly, under § 7604(a), Plaintiffs may commence a citizen suit for violations of the Permit terms and conditions, and the Court has jurisdiction over it.

As noted above, the only objection Defendants arguably make to this plain language conclusion is an argument that the Permit is not "in effect . . . under" the SIP, or at least that Judge Cudmore did not adequately explain why he concluded that it is. (Doc. 30 at 5-6; *see also* Doc. 26 at 2-3). However, this argument is without merit. "In effect under" naturally refers to the source of authority and conditions for issuing the permit. Here, the Permit is clearly in effect under the SIP, as some basic background information makes clear. Pursuant to the Act, Illinois created an SIP, the provisions of which are codified in multiple parts of Title 35 of the Illinois Administrative Code.[6] This SIP has been approved by the USEPA. *See* 40 C.F.R.

---

[6] Though the given citations for the SIP provisions are to the Illinois Administrative Code, where they are more readily accessible, the SIP is also available for viewing

§ 52.722. The SIP prohibits operation of new or existing emission sources without obtaining a permit from the IEPA. Ill. Admin. Code tit. 35, §§ 201.143, 201.144. It also creates numerous regulations and guidelines relating to different types of permits, including standards for issuance of permits. *E.g.*, *id.* § 201.160. Pursuant to the SIP requirement that it do so, Defendants obtained a Permit from the IEPA allowing it to operate the Plant. (Doc. 18-1). As Defendants themselves stated, "[t]he [Plant] Permit was issued under the Illinois regulations, as they existed on July 1, 2004." (Doc. 30 at 2). Though Defendants did not specify, the regulations to which they refer are clearly the applicable regulations of the SIP, codified in the Illinois Administrative Code. This is consistent with the Permit itself, which lists special and standard conditions, many of which come directly from the SIP. (*See* Doc. 18-1 at 1-6). Thus, it is plain that the Permit is in effect under the SIP, as that phrase is ordinarily understood.

Defendants point to no definition of the phrase "in effect under" that might contradict its plain meaning, yet they maintain Plaintiffs' Permit-based claims do not come within the jurisdiction of the statute. Defendants cannot possibly be arguing this Permit is not "in effect." This required Permit was issued by the IEPA and the terms have not expired. In fact, Defendants note in a brief that the Permit "continues to be in effect." (Doc. 18 at 5). To claim it is not "under" the SIP would be equally unpersuasive. The standards for the Permit originate from the SIP, and the IEPA issued the Permit under the authority of the SIP and subject to those

through the USEPA's website for air quality and radiation for this region, at http://www.epa.gov/reg5oair/naaqs/index.html (follow "Region 5 State Implementation Plans (SIPs)" hyperlink).

regulations. (*See* Doc. 30 at 2). Defendants argue that although the SIP requires sources to obtain an operating permit, that is not the authority under which the state actually issues the permit. However, Defendants do not explain an alternative authority under which the IEPA acted when issuing the operating permit, and the Court finds none. To the extent this is a fact question, Plaintiffs have alleged the Permit is in effect under the SIP, (Doc. 16 at ¶ 2), and Defendants have introduced no evidence or sources to the contrary. Defendants could have introduced evidence showing that the Permit had expired, or that the state had issued the Permit pursuant to some other provision or regulatory scheme, for example, but they did not. Plaintiffs' allegations, taken as true and without any contrary facts presented, suffice to satisfy any factual inquiry into this jurisdictional question.

One of Defendants' arguments appears to be that, in addition to the USEPA defining the phrase "federally enforceable," which is addressed at length below, the Illinois SIP also defines and creates procedures for "federally enforceable" permits, and that the failure to meet this definition and follow these procedures means the Permit is not "in effect under" the SIP. Part 252 of the SIP sets forth public participation procedures, which apply to applications for certain categories of permits, including "[p]ermits to operate sources which contain federally enforceable conditions." Ill. Admin. Code tit. 35, § 252.102(6). Notably, the SIP regulations state "'[f]ederally enforceable' means by the United States Environmental Protection Agency," without mention of citizen suits. *Id.* § 203.123.[7] Defendants seem to argue

---

[7] The state's use of the term "federally enforceable" is related to and likely a result of the USEPA's required definition and use of the phrase.

that because the Permit was not subject to the public participation in Part 252, because it is not one of the enumerated categories of permits required to use this process, the Permit is thus not "in effect under" the SIP. (*See* Doc. 18 at 9). But there are multiple types of permits that can be issued under the SIP. The citizen suit statute does not state that only certain types of state permits qualify, they simply must be "in effect under" an SIP. Whether a permit is in effect under the SIP is not the same thing as whether it comes within certain categories of state permits or whether certain procedures were followed. The Illinois SIP obviously contemplates issuing permits that do not come under the definition of "federally enforceable," and these permits are no less in effect under the provisions of the SIP. The statute is clear, and this argument is not persuasive. Accordingly, the Court finds it has jurisdiction over Plaintiffs' claims.

## III.   Applicability of the Term "Federally Enforceable"

Avoiding the plain meaning of § 7604, Defendants insist that because the Permit does not come within the definition of the phrase "federally enforceable" that is found in USEPA regulations, this Court does not have jurisdiction over Plaintiffs' Permit-based claims. This argument is mistaken for the reasons explained below.

### A. Federal Court Jurisdiction and Agency Authority

First, if the administrative definition Defendants cite attempted to limit the unambiguous statutory grant of jurisdiction as Defendants claim it does, it would be beyond the USEPA's authority. Congress has significant authority to demarcate the scope of federal court jurisdiction. Constitutionally, federal courts have broad

jurisdiction over any cases "arising under" the Constitution or laws of the United States. U.S. Const. art. III, § 2; *see Osborn v Bank of United States*, 22 U.S. 738 (1824). Congress has the power to limit the jurisdiction of lower federal courts, including preventing jurisdiction over very specific types of cases, as it has done in the past. *See, e.g.*, *Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 330 (1938). Congress is also able to affirmatively provide for federal court jurisdiction over certain types of cases, so long as these cases also come within the constitutional jurisdiction of federal courts. *See, e.g.*, *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491-92 (1983). The provision at issue here comes within the latter category. Congress explicitly created a cause of action for suits brought by citizens under the Clean Air Act, and specified that federal courts would have jurisdiction over them. 42 U.S.C. § 7604. The plain language of the section sets out precisely the claims that are included in the jurisdictional grant.

If Congress had limited the claims citizens could bring, or jurisdiction over those claims, to alleged violations of permit conditions only if the permits were issued after public participation, that would surely have been a valid restriction. But that is not the case here. In the statute, there is simply no mention of there being only certain types of permits that are subject to citizen suits for violations, except that they be "in effect under" the SIP. Because Defendants cannot use the plain language of the statute to support its Motion to Dismiss, they instead rely on regulations from an administrative agency to argue that the Court's jurisdiction is more limited than the statute explicitly provides.

Even if an administrative rule clearly stated that citizen suit jurisdiction under § 7604 did not include claims for violations of permits that did not meet certain requirements, such as having gone through public notice and comment, it would not have weight. Administrative rules and regulations interpreting ambiguous statutes are entitled to a level of deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but that is only where Congress's intent was not clear. As Plaintiffs correctly argue, a regulation cannot abrogate an unambiguous statute conferring subject-matter jurisdiction on a federal court. *See Chevron*, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). The citizen suit statute explicitly states a person can bring a claim for a violation of an emission standard or limitation, and that is defined to include any permit term or condition in effect under an SIP. The USEPA cannot create exceptions to this clear jurisdictional grant by issuing a rule to the contrary.[8] Here, the statute is clear and unambiguously provides for jurisdiction in this Court over Plaintiffs' claims, and a regulation setting forth a contrary meaning would not be entitled to weight.

### B. "Federally Enforceable" as a Term of Art

The Court need not dwell on an agency's lack of authority to limit clear statutory jurisdiction by rule, because that is not what the USEPA did. The regulations Defendants cite are not attempts to contravene the plain language of

---

[8] Of course, USEPA regulations could impact citizen suit jurisdiction in other ways, such as if a regulation limited the types of permits that could be issued under an SIP, but it could not contradict the plain language of the statute.

the statute by excluding certain claims from federal court jurisdiction. They simply define the term "federally enforceable" for specific purposes and in specific contexts. The Court concludes that the USEPA was not attempting to limit or define the scope of federal court jurisdiction over citizen suits brought pursuant to § 7604 through its regulations defining "federally enforceable." Rather, the language of the regulations, the USEPA's explanation of the purpose of the definition, and textual clues all show the phrase is used as a term of art.

### 1. Language of the Regulations

The definition of "federally enforceable" that Defendants cite, found in multiple locations in USEPA regulations, is as follows:

> Federally enforceable means all limitations and conditions which are enforceable by the Administrator, including those requirements developed pursuant to 40 CFR parts 60 and 61, requirements within any applicable State implementation plan, any permit requirements established pursuant to 40 CFR 52.21 or under regulations approved pursuant to 40 CFR part 51, subpart I, including operating permits issued under an EPA-approved program that is incorporated into the State implementation plan and expressly requires adherence to any permit issued under such program.

40 C.F.R. § 51.165(a)(1)(xiv); 40 C.F.R. § 51.166(b)(17).[9] Taking only the language of the regulations where these definitions appear, there is nothing to indicate any

---

[9] Defendants focus on the lack of public participation to show the Permit does not satisfy the definition of federally enforceable, but the regulation does not clearly require public participation on its face; rather, the rule describing an amendment to this definition explains that states should use public participation before issuing operating permits in order for them to come under this category. *See generally* Requirements for the Preparation, Adoption, and Submittal of Implementation Plans; Approval and Promulgation of Implementation Plans, 54 Fed. Reg. 27,274 (June 28, 1989). The Court assumes for purposes of this analysis, despite Plaintiffs' reasonable argument to the contrary, (*see* Doc. 24 at 15 & n.9), that the Permit does not satisfy the definition of "federally enforceable" found in the USEPA regulations.

relation to citizen suit jurisdiction. The most obvious feature of the definition is that it refers only to USEPA enforcement, and makes no mention of or reference to citizen suits or to 28 U.S.C. § 7604. The phrase "federally enforceable" does not appear in § 7604, nor does the definition of "federally enforceable" address what it means for a permit to be "in effect under" an SIP. The provisions are entirely unrelated.

Further, the definitions are buried deep in regulations pertaining to specific topics. In one appearance of this definition, it is one of a long list of definitions that states must use in their SIP provisions relating to new and modified major pollution sources, specifically in nonattainment areas. *See* 40 C.F.R. § 51.165(a)(1). In another, it is again one of many definitions that states must adopt in relation to regulations for review of new emissions sources and source modifications. 40 C.F.R. § 51.166(b). Each of the regulations containing a definition for "federally enforceable" relates specifically to the calculation of emission potential or emission offsets. *See* Requirements for the Preparation, Adoption, and Submittal of Implementation Plans; Approval and Promulgation of Implementation Plans, 54 Fed. Reg. 27,274, 27,275, 27,285-86 (June 28, 1989) [hereinafter 1989 Rule]. For all these reasons, nothing about the definition itself supports Defendants' arguments. Rather, Defendants rely on rules relating to the definition to argue the phrase "federally enforceable" applies in this context and that the Permit terms thus cannot be subject to citizen suit in this Court.

## 2.   Regulatory Purpose of the Definition

Despite Defendants' efforts, the regulatory materials Defendants cite only serve to further indicate that "federally enforceable" is used as term of art and is not a limitation on federal court jurisdiction. In fact, in one rule Defendants cite, the USEPA directly states "[t]he term 'federally enforceable,' defined at, e.g., 40 C.F.R. 51.165(a)(1)(xiv), is a term of art under the NSR[10] program." Approval and Promulgation of Implementation Plans; Illinois, 57 Fed. Reg. 59,928, 59,929 (Dec. 17, 1992). Moreover, the discussion of the purpose of the definition in the rules shows it is intended only for specific uses.

The USEPA's 1989 Rule, which Defendants repeatedly cite, introduces and explains an amendment to the definition of "federally enforceable" and gives insight into the purpose of the definition. 54 Fed. Reg. 27,274. The summary explains that the definition of "federally enforceable" is one of the areas of regulations "addressing the construction of new and modified stationary sources of air pollution" that the USEPA had previously proposed changing. *Id.* at 27,274. The amendment clarifies that state operating permits may be treated as "federally enforceable," but only if they meet certain requirements. *Id.* Throughout, the rule speaks only in terms of what the EPA is able to enforce, not citizens. *E.g.*, *id.* at 27,275, 27,285-86.

One use of this definition is in the context of making permitting decisions for construction of sources of emissions. Regulating authorities must determine a source's "potential to emit" to determine which requirements apply to the project.

---

[10] NSR stands for "new source review," relating to construction permits for new and modified pollution sources. *See, e.g.*, Approval and Promulgation of Implementation Plans; Illinois, 57 Fed. Reg. at 59,929.

*Id.* at 27,275. Using "federally enforceable" limits, the potential to emit is effectively calculated by assuming the source will emit the maximum amount possible, "unless the source were subject to a limitation on its operation that EPA could enforce directly." *Id.* There are other, similar uses of the phrase "federally enforceable," each relating to calculation of emission potential or emission offsets. *See id.* at 27,275, 27,285-86. Thus, it is clear that the term "federally enforceable" is a term of art in the context of calculating emission offsets or estimating future emissions to evaluate new or modified sources of pollutants.

Essentially, the category of "federally enforceable" limits is used to make an estimation[11] of which emission source limitations are most likely to actually be followed by sources. *See id.* at 27,279 ("EPA believes that the Federal enforceability requirement is the most appropriate and reliable way to predict maximum future emissions."). The set of "federally enforceable" permits is not coextensive with the set of all permits in effect under SIPs. The regulations allow emission sources to use only "federally enforceable" permit restrictions for their benefit, such as in showing a lower emission potential when obtaining construction permits, because the USEPA has determined the source is likely to ultimately observe them. To this end, it is an approximation only of which restrictions the USEPA feels its Administrator is able to enforce, not of restrictions that may also form the basis of citizen suits.

---

[11] It is only an approximation because the definition does not even appear to be a limit on USEPA enforcement. Because the definition is somewhat circular, stating limitations are "federally enforceable" if they are "enforceable by the [USEPA] Administrator," it is clear the USEPA's authority to enforce comes from a separate provision, and that the definition thus apparently is not intended as a direct limit on actual enforcement.

Reasonably, the USEPA may have found permits subject to its own enforcement to be those most likely to create limitations industry would follow, and that it could not rely on potential citizen suits to ensure compliance with other restrictions.

### 3. Textual Clues

Aside from the meaning evident from the context and purpose of the definition, certain grammar and word choices in the regulatory materials are also clues that the phrase is only intended to be a term of art. For example, "federally enforceable" is used as part of phrases such as "USEPA reserves the right to deem an operating permit not federally enforceable," 40 C.F.R. § 52.737, or that permits meeting certain requirements "may be treated as federally enforceable," 1989 Rule, 54 Fed. Reg. at 27274. Further, "federally enforceable" is referred to by the USEPA as a "status." *Id.* at 27,280. These words and phrases indicate it is a category created for a specific purpose rather than a jurisdictional or enforcement limitation.

Throughout the regulations, the phrase "federally enforceable" often appears in quotation marks, as in, "States are free to continue issuing operating permits that do not meet the above requirements. However, such permits would not be 'federally enforceable' for NSR and other SIP purposes." *Id.* at 27,282. It is also rare to see the phrase varied grammatically, other than occasionally being changed to the noun form "federal enforceability"—the words are seldom rearranged or modified, further indicating its unique meaning as a term of art. Additionally, the 1989 Rule refers to the USEPA expanding "its definition" of federally enforceable to specifically include limitations in certain state operating permits. *Id.* After listing

the enumerated limitations contained in the definition, the USEPA states "[i]n practice, EPA previously has declined to consider most other types of limitations as being 'federally enforceable,' including limitations that are enforceable by the Administrator under statutes other than the Clean Air Act." *Id.* at 27,275. All of these examples strongly indicate the definition of limitations that are "federally enforceable," defined to mean those that are "enforceable by the Administrator," provides a rough estimation of the boundaries of enforceability the USEPA has imposed upon itself. It is not a limit on the jurisdiction set forth in § 7604.

The primary trouble lies in the fact that the phrase "federally enforceable" as understood in plain English could be used to describe limitations that can be enforced "federally," which could arguably include enforcement through citizen suits in federal court. It would not be inaccurate English to say that emission standards or limitations are federally enforceable through citizen suits pursuant to § 7604. From that, Defendants then make the flawed leap that because the phrase "federally enforceable" could be used to describe limitations subject to citizen suit, and because that phrase is defined in the regulations, that the regulatory definition necessarily applies to the common English usage of the phrase in this context. However, this argument fails to recognize that statutes and regulations are not dictionaries—they define words and phrases for specific purposes only, not any time the word or phrase could be used. The Permit conditions may not be "federally enforceable" as defined for the specific purposes in USEPA regulations, but that does not mean they are not federally enforceable as the phrase could be used for its

normal English meaning. This is not unusual. Statutes and regulations regularly define terms in ways that differ from their ordinary meaning, hence the need for a definition, but these definitions only apply in the specified circumstances.

### 4. *Defendants' Specific Objection*

Defendants take issue with the fact that Judge Cudmore concluded the term "federally enforceable" applies only to construction of new facilities and "'does not relate to issuing operating permits for existing facilities.'" (Doc. 30 at 7 (quoting Doc. 28 at 16-17)). On some level, as Plaintiffs acknowledge, Defendants' objection on this matter is correct—the term "federally enforceable" relates to the issuance of operating permits, because operating permits must be issued in a certain manner in order for their terms to be "federally enforceable." Thus, it creates a category of permits, which includes operating permits. But the primary point Judge Cudmore was making, which is accurate, is that the term "federally enforceable" is defined for the purpose of, and only has that meaning in the context of, calculating emissions capacities and offsets and making determinations about construction or modification of sources. For all the reasons stated above, Defendants' objection to Judge Cudmore's conclusion that the phrase "federally enforceable" as defined in the regulations does not limit jurisdiction over citizen suits is denied.

## IV.    *Non-Substantive Objections*

Finally, Defendants made numerous specific objections to particular statements in the R&R that they see as inaccurate or improper. (Doc. 30 at 11-13).

These objections fall generally into three categories: factual allegations, errors, and summaries of law.

### A. Factual Allegations

Defendants complain that Judge Cudmore failed to identify which statements were factual allegations instead of factual conclusions. In their Memorandum, they provide "just one example" of such a statement, that "'[t]he Plaintiffs . . . each have members who reside near the Plant.'" (Doc. 30 at 12 (quoting Doc. 28 at 2)). In making this objection, Defendants apparently overlook the motion to dismiss standard, requiring the Court to take Plaintiffs' well-pleaded factual allegations as true. The facts in the Statement of Facts section of the R&R were given as background to aid the reader. They were not findings of fact. Though any reader of the R&R that is educated in the law would understand as much, the Court clarifies that the facts stated in Judge Cudmore's background Statement of Facts section, like the facts in the background section of the present Order, are taken from Plaintiffs' Amended Complaint, and are taken as true for purposes of considering the motion to dismiss. All inferences are taken in Plaintiffs' favor. To the extent any allegations were presented as facts rather than allegations, the Court does not bind the parties to these facts, and Defendants are certainly free to deny them in their Answer.

### B. Errors

Defendants also object to one factual "conclusion" that is not based on Plaintiffs' allegations. In what appears to be a simple misstatement with no

relevance to the analysis or the conclusion reached, the R&R referred to Defendants' Title V permit of July 1, 2005, which was actually granted on September 29, 2005. (Doc. 28 at 3; Doc. 30 at 13). The R&R then accurately stated it is stayed pending appeal; it is thus irrelevant. The R&R simply gave the wrong date of issuance. Relatedly, though not in an objection, Plaintiffs also noticed a couple of inaccurate phrases or typos in the R&R. (Doc. 31 at 9-11). In adopting the disposition recommended in the R&R, the Court is not also adopting the Statement of Facts section as its own, nor even the exact reasoning. Rather, this Order stands independently as the final Order of the Court on the Motion to Dismiss. Any imperfections in Judge Cudmore's otherwise accurate and thorough R&R are irrelevant to the disposition of the Motion, and need not be addressed.

### C. Summaries of Law

Also in the background section of the R&R, Judge Cudmore provided a summary of the legal framework for Plaintiffs' claims. For example, he set forth the emission restrictions on opacity that Plaintiffs claim Defendants violated. Defendants object to two of these statements of the law. First, Judge Cudmore, in summarizing the opacity regulations, stated "an exceedance of 30% opacity or greater violates the SIP." (Doc. 28 at 4). Defendants point out that this generalization omits the defenses and exceptions to that limit. (Doc. 30 at 12). Second, Defendants argue Judge Cudmore provided an "incomplete quotation" of a provision in the Illinois Administrative Code relating to opacity. (Doc. 30 at 12 (citing Doc. 28 at 5-6)). The Court appreciates that precise language is important,

particularly in cases that involve detailed and nuanced statutes and regulatory schemes. However, the discussion of the law related to opacity limits and emissions standards in which these two arguably erroneous statements are located is largely irrelevant to the issues presented by the Motion to Dismiss. The statements could be omitted entirely without impacting the reasoning or conclusion. The Court clarifies that these summaries of the law are not part of the Court's Order today, and the parties are not bound to these generalized statements of the legal framework of the case.

CONCLUSION

For the foregoing reasons, Magistrate Judge Cudmore's Report & Recommendation (Doc. 28) is ADOPTED IN PART, and MODIFIED IN PART, and Defendants' Motion to Dismiss (Doc. 17) is DENIED. This matter is REFERRED BACK to Magistrate Judge Cudmore for further pretrial proceedings.


Entered this 28th day of October, 2013.


                                        s/ Joe B. McDade
                                    JOE BILLY McDADE
                            United States Senior District Judge