## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC, SIERRA CLUB, INC., and RESPITORY HEALTH ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS POWER RESOURCES, LLC and ILLINOIS POWER RESOURCES GENERATING, LLC, <br><br> Defendants. | Case No. 13-cv-1181 |

## O R D E R & O P I N I O N

This matter is before the Court on Plaintiff Sierra Club and its employee Kady McFadden (together, "Movants") appeal of Magistrate Judge Tom Schanzle-Haskins's Opinion Allowing in Part and Denying in Part Movants' Motion for a Protective Order and to Modify Notice of Deposition. (Doc. 80). For the reasons that follow, the Court grants in part and denies in part Movants' request to modify Judge Schanzle-Haskins's decision.

### BACKGROUND

Movant Sierra Club is among the Plaintiffs in this action. Plaintiffs allege that Defendants Illinois Power Resources, LLC, and Illinois Power Resources Generating, LLC, operate (and their predecessors operated) the E.D. Edwards Energy Center power plant ("Edwards") in violation of opacity limits and particulate matter limits established through various interworking state and

federal air quality statutes and regulations. (*See* Second Am. Compl., Doc. 88, at 11-14). Plaintiffs also allege that Defendants and their predecessors violated the Clean Air Act's reporting requirements. (*Id.* at 15).

Each of the Plaintiffs, including the Sierra Club, is an association, and the associations allege their individual members were harmed by Defendants' violations. (*Id.* at 3-4). Plaintiff NRDC offers three standing witnesses: Robert Jorgenson, Mary Ann Schafer, and Linda Adams. (*Id.* at 3-4 and Exhs. 5-7). Sierra Club offers another three: David Pittman, Joyce Blumenshine, and Joyce Harant. (*Id.* at 4 and Exhs. 8-10). And Plaintiff Respiratory Health Association offers two: Alicia High and Tracy Fox. (*Id.* at 4 and Exhs. 11-12). Plaintiffs rely upon the alleged injuries to these individuals, which they assert were caused by Defendants' challenged misconduct, in order to establish standing to sue. (*Id.* at 4-5); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

On May 1, 2015, Defendants served a Notice of Deposition and Rider on Sierra Club Employee Kady McFadden pursuant to Federal Rule of Civil Procedure 30. (Docs. 82 at 2, 82-1). The Notice requested that McFadden bring to her deposition documents that were responsive to two requests included in the Rider:

1. Any communications with Tracy Meints Fox, Robert J. Jorgensen, Linda Andrews, Mary Ann Schafer, David Pittman, Joyce Harant, Alicia High, or Joyce Blumenshine concerning Edwards [; and]

2. Any communications or other documents from the time period January 1, 2008 to present concerning opacity or particulate matter emissions from Edwards.

(Doc. 82-1 at 2, 4).

On May 15, 2015, Movants filed a Motion to Modify the Notice of Deposition and for Protective Order. (Doc. 74). They specifically asked that the Court "modify the Notice of Deposition to limit the Rider's Document Request Paragraph 1 to communications concerning the Plant's opacity and PM air pollution, and similarly limit the scope of Ms. McFadden's deposition." (Doc. 75 at 3). They first argued that the request was not reasonably calculated to lead to the discovery of admissible evidence. (*Id.* at 4-7). They next argued that failing to modify Document Request Paragraph 1 would impermissibly chill the First Amendment rights of the Sierra Club and its members, and Defendants could not demonstrate that it is necessary to compel disclosure of the documents in light of these First Amendment concerns. (*Id.* at 7-12).

On June 17, 2015, Judge Schanzle-Haskins issued an order allowing in part and denying in part Movant's motion. (Doc. 79). Judge Schanzle-Haskins modified Document Request Paragraph 1, and required that McFadden produce:

> unprivileged documents that contain: (1) any statement made by the Named Standing Witnesses concerning Edwards; (2) any communication from McFadden to a Named Standing Witness to which the Named Standing Witness responded with a statement concerning Edwards; and (3) any response by McFadden to any statement made by the Named Standing Witnesses Concerning Edwards.

(*Id.* at 14-15). His order similarly limited the areas of inquiry that Defendants could pursue that relate to that document request. (*Id.* at 15). Throughout this Order and Opinion, the Court will refer to the second and third categories of documents that Judge Schanzle-Haskins ordered Movants to disclose as proceeding and following communications.

3

In the pending motion, Movants contest the extent to which Judge Schanzle-Haskins modified the first document request. Movants are not appealing the first part of Judge Schanzle-Haskins's decision, which requires that McFadden disclose "any statement made by the Named Standing Witnesses concerning Edwards." (*See* Doc. 82 at 4). However, they appeal his decision requiring that they disclose the proceeding and following communications. (*Id.*).

## STANDARD OF REVIEW

District judges review magistrate judges' discovery orders pursuant to Federal Rule of Civil Procedure 72. For nondispositive matters, a district judge "must consider timely objections and modify or set aside any part of [an] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (providing that a district court judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). Here, where Movants argue that Judge Schanzle-Haskins's order was clearly erroneous, "the district court can overturn the magistrate judge's ruling only if [it] is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997); *see also Westefer v. Snyder*, 472 F. Supp. 2d 1034, 1036-37 (S.D. Ill. 2006)(collecting cases).

## DISCUSSION

In the pending motion, Movants again raise their claim of First Amendment privilege. Specifically, they argue that Defendants' Notice and Rider will impermissibly chill their right of association without justification. In Judge

Schanzle-Haskins's opinion, he agreed with Movants that they had established a prima facie case that their First Amendment rights would be chilled by disclosure, but concluded the challenged documents – McFadden's preceding and following communications with the Standing Witnesses – should be disclosed in spite of the prima facie case. Movants contend that this is where Judge Schanzle-Haskins committed clear error.

Although the Seventh Circuit has not articulated a test that courts should apply in evaluating claims of First Amendment privilege, the parties agree that the test articulated in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009) should be applied here. In *Perry*, the Ninth Circuit applied a two-part framework in evaluating a party or movant's claim of First Amendment privilege. First, the person asserting the privilege "must demonstrate . . . a prima facie showing of arguable first amendment infringement." *Id.* at 1160 (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotation marks omitted)). Once the movant has made a prima facie case, the burden shifts to the party seeking disclosure. *Id.* at 1161. At this stage, that party must demonstrate "an interest in obtaining the disclosure it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *Id.* (quoting *NAACP v. Alabama*, 357 U.S. 449, 463). Doing so requires courts to "balance the burdens imposed on individuals and associations against the significance of the . . . interest in disclosure." *Id.* (quoting *AFL-CIO v. FEC*, 333 F.3d 168, 176 (D.C. Cir. 2003)). At this stage, "the party seeking the discovery must show that the information sought

5

is highly relevant to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.* It must also carefully tailor the request "to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

I. **Judge Schanzle-Haskins's Decision**

a. **Movants' Prima Facie Case**

In his decision, Judge Schanzle-Haskins concluded that Movants made a prima facie case that disclosure would chill their associational rights, which are protected by the First Amendment. (Doc. 79 at 9). Judge Schanzle-Haskins relied upon declarations submitted by Kady McFadden and Named Standing Witness Joyce Harant. (*Id.* at 7-9).[1] He explained in his decision that McFadden "communicates with 'Sierra Club members, Peoria-area volunteers, and colleagues within and outside of the Sierra Club' about Edwards." (Doc. 79 at 7 (quoting McFadden Decl., Doc. 75-2, at ¶ 17)). Principally, she communicates over email listserves, through which she sends messages that "often contain details on the Sierra Club's campaign strategies, planning, and next steps for how Sierra Club members and campaign participants can be leaders on our campaign for clean energy and reduced pollution in Central Illinois." (*Id.* (quoting McFadden Decl., Doc. 72-2, at ¶ 10)). These documents would be responsive to Defendants' unmodified document request, and McFadden states that if she was forced to disclose them, it would "interfere with her ability to plan strategies for the Sierra

---

[1] Movants have also submitted declarations from McFadden and Harant as part of the pending motion. (*See* Docs. 82-2 and 82-3).

6

Club and would interfere with the ability of the Sierra Club to pursue its goals." (*Id.* at 8 (citing McFadden Decl., Doc. 72-2, at ¶¶ 11-13)).

Judge Schanzle-Haskins explained that Named Standing Witness Joyce Harant receives emails from McFadden and the Sierra Club that "include details of the Sierra Club's strategies and tactics to pursue its goals to advocate for its position on environmental issues, including its opposition generally to the Defendants' operation at Edwards." (*Id.* (citing Harant Decl., Doc. 72-3, at ¶ 10)). Harant said that disclosure would "interfere with her ability to volunteer for the Sierra Club and so participate with other members of the Sierra Club to advocate for her position on environmental issues." (*Id.* at 8-9 (citing Harant Decl., Doc. 72-3, at ¶ 14)). Therefore, she opined that disclosure "would greatly diminish the group's ability to work and be successful in the long term." (*Id.* at 9 (quoting Harant Decl., Doc. 72-3, at ¶ 14)). For the purpose of the pending motion, the parties agree that these declarations are sufficient for Movants to establish their prima facie case. (*See* Defs.' Mem. in Opp'n to Appeal, Doc. 85 at 7 (acknowledging, and not challenging, Judge Schanzle-Haskins's decision that Movants had made a proper prima facie case)).

### b. Defendants' Interest in Obtaining Requested Documents

Having concluded that Movants provided sufficient evidence to establish a prima facie case, Judge Schanzle-Haskins then considered whether they still must disclose certain requested documents. (Doc. 79 at 10-13). He concluded first that it is "necessary to this case" for Defendants "to discover information concerning the credibility of Standing Witnesses." (*Id.* at 10). This is because Plaintiffs "present the

7

declarations of the Standing Witnesses . . . to establish an essential element of their case, standing." (*Id.* at 10-11). He concluded that, "[t]he credibility of the Standing Witnesses . . . is directly at issue on an essential element of the Plaintiffs' case." (*Id.* at 11).

From there, Judge Schanzle-Haskins determined which of the documents Defendants requested had a bearing on the credibility of the Named Standing Witnesses. First, he identified "statements made by the Standing Witnesses about Edwards," and observed that "the definition of 'communication' in the Notice is broad enough to include" such written or oral statements." (*Id.*). The parties agree, for purposes of the pending motion, that this determination was not clearly erroneous. (*See* Movs.'s Mem. in Supp. of Appeal, Doc. 82, at 3; Movs.'s Reply Mem., Doc. 86-1, at 3 (acknowledging that Judge Schanzle-Haskins "arguably drew the required *Perry* findings for the first category of documents, covering direct statements by Standing Witnesses . . . .")).[2]

Judge Schanzle-Haskins then identified two additional categories of documents that Movants must disclose: (1) "any document containing the communication to which the Named Standing Witness responded," when a Named Standing Witness made a statement concerning Edwards in response to a

---

[2] Remember, a district court only overturns a magistrate's discovery decision under the clearly erroneous standard when it is "left with the definite and firm conviction that a mistake has been made." *Weeks*, 126 F.3d at 943. Thus, "if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view." *Westefer*, 472 F. Supp. 2d at 1037 (quoting *Burns v. Am. United Life Ins. Co.*, No. 05-cv-0466-DRH, 2006 WL 1004884, at *1 (S.D. Ill. Apr. 17, 2006)). In conceding that Judge Schanzle-Haskins arguably made the required *Perry* findings, Movants are therefore conceding that this aspect of Judge Schanzle-Haskins's opinion was not clearly erroneous. *See id.*

communication from McFadden, and (2) "any documents that contain [McFadden's] responses to the Named Standing Witness's communications concerning Edwards." (Doc. 79 at 12). Judge Schanzle-Haskins concluded that "[s]uch preceding and responsive communications will provide needed context for the statement made by the Named Standing Witness." (*Id.*). Additionally, he reasoned that these "direct communications with the Named Standing Witnesses" were also "much more likely to lead to admissible evidence on the issue of credibility of those witnesses," than communications from third-parties to which the standing witnesses responded. (*Id.* at 12-13).

## II. Movants' Challenge

Movants challenge the latter two categories in the pending motion. They argue that Judge Schanzle-Haskins "failed to apply the second prong of the *Perry* test and determine whether the requested communicates are 'highly relevant,'" and instead based his holding on the fact that the documents were "at most only tangentially relevant insofar as they provide context for the Standing Witnesses' credibility." (Doc. 82 at 13-14). Movants contend that Judge Schanzle-Haskins needed to apply the *Perry* analysis independently to each category of documents he ordered that they disclose. (Doc. 86-1 at 3-4).

Under *Perry*, Defendants must "show that the information sought is highly relevant to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." 591 F.3d at

1161.[3] Movants argue that Judge Schanzle-Haskins's ruling only made this finding with respect to the Standing Witnesses' communications. This is incorrect. Judge Schanzle-Haskins's decision found that "information concerning the credibility of the Standing Witnesses . . . ." is necessary and essential to the case. (Doc. 79 at 10). The question that remains is whether McFadden's preceding and following communications with the Standing Witnesses are necessary to evaluate the Standing Witnesses' credibility. As explained below, Movants' attempt to disaggregate the categories of requested documents fails to take into account the essential ways in which some of them are related.

### a. Standing is an Essential Element of Plaintiffs' Claim

This Court cannot disagree with the conclusion that standing is an essential element of Plaintiffs' case and that discovery on the Standing Witnesses' credibility is necessary for Defendants, let alone find that the decision in this respect is clearly erroneous. As Judge Schanzle-Haskins concluded twice, Plaintiffs' standing is at issue in this case, and Plaintiffs rely upon the declarations of their Named Standing Witness to establish it. (*See* Docs. 79 at 10-11; 73 at 16).

To establish standing, individual witnesses must show they have suffered an injury-in-fact that is: first, concrete and particularized and actual or imminent; second, fairly traceable to the challenged action or conduct; and third, likely to be

---

[3] Moreover, if the information sought can be obtained in another way that is less likely to affect First Amendment rights, it is protected from disclosure. *See City of Greenville v. Syngenta Crop. Prot., Inc.*, No. 11-mc-10, 11-mc-1031, 11-mc-1032, 2011 WL 5118601, at *8 (C.D. Ill. Oct. 27, 2011) (citing *Perry*, 591 F.3d at 1161). Here, the parties do not argue over whether other manners of disclosing this information are available, they only dispute whether McFadden's preceding and following communications are highly relevant.

redressed by a favorable ruling from the court. *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These three elements are "an indispensable part of the . . . case." *Id.* (citing *Lujan*, 504 U.S. at 561). Because all of the Named Standing Witnesses submitted declarations in which they, under oath, declared that they have been injured in a concrete and particularized and actual or imminent way by Edwards' opacity violations and particulate emissions, they have put their credibility at stake on these essential elements of Plaintiffs' case. *See Sierra Club*, 546 F.3d at 925.

> **b. Judge Schanzle-Haskins Determination that McFadden's Preceding Communications with the Standing Witnesses are Necessary to Evaluate the Standing Witnesses' Credibility was not Clearly Erroneous, but his Determination that the Following Communications are Necessary Was**

Judge Schanzle-Haskins's Order, with care, attempts to identify and isolate a subset of documents within Defendants' broad request that is related to the Standing Witnesses' credibility. Movants' suggestion that the Standing Witnesses' statements alone are the only documents with any real bearing on their credibility fails to consider the ways in which people communicate.

As courts have repeatedly recognized, the meanings of words derive from context. *See, e.g., Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir. 1993) (explaining that "since context determines meaning, the same word can mean different things in different sentences – to monopolize a conversation doesn't mean the same thing as to monopolize the steel industry . . ."). This is true in the statutory context, in which words in a statute may take on distinct meanings based

11

on the broader statutory scheme. *See, e.g., United States v. Webber*, 536 F.3d 584, 593 (7th Cir. 2008)("In analyzing the language of a statute, we give the words their ordinary meaning unless the context counsels otherwise."). And it is true in contract law as well. *See, e.g., BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 830 (7th Cir. 2015).

The same is true with respect to dynamic conversations between two people. So, for example, in a drug conspiracy, words like "it," "them," and "both" could refer to a shipment of methamphetamine even though "it" has no fixed meaning. *See United States v. York*, 572 F.3d 415, 424 (7th Cir. 2009). Indeed, pronouns themselves are entirely context-dependent. Therefore, determining the meaning of one communication may well require reference to past communications. For this reason, courts considering emails produced by parties have acknowledged the unique contextual challenges that email chains can present. *See, e.g., Spice Corp. v. Foresight Mktg. Partners, Inc.*, No. Civ. 07-4767 JNE/JJG, 2011 WL 6740333, at *3 (D. Minn. Dec. 22, 2011)(discussing email communications between the parties and deciding that "the most effective way to convey what was happening is to reproduce the emails in their entirety, or with only minimal omissions," rather than "paraphrase the emails and take statements out of context"); *Weirton Ass'n v. Woodward Detroit CVS, LLC*, No. 11-14956, 2012 WL 5392264, at *1 (E.D. Mich. Nov. 2, 2012)(explaining that an email with an apparent admission was inconclusive because it "appears plucked from a longer chain, and the lack of context renders the email's meaning obscure").

Considering this, the Court cannot find that Judge Schanzle-Haskins's conclusion that the preceding communications from McFadden to the Named Standing Witnesses are needed to evaluate the Named Standing Witnesses' credibility is clearly erroneous. To see why, all one needs to do is look to McFadden's declaration. McFadden states that she shares "information about how [listserve members] can get involved with the Sierra Club, or take action with the Club," and that "the emails often contain details on the Sierra Club's campaign strategies, planning, and next steps for how Sierra Club members and campaign participants can be leaders on our campaign . . . ." (Doc. 92-2 at ¶¶ 8-10). It is easy to imagine a detailed message from McFadden, to which a Named Standing Witnesses responded in a terse manner that would be devoid of all meaning without reference to the original communication. For example, McFadden could have sent a message over the listserve about the Sierra Club's strategies surrounding Edwards (without explicitly referencing opacity or particulate emissions), and one of the Named Standing Witnesses could have responded, "I'm not concerned, but I would like to help." Such a theoretical email exchange would be highly relevant to evaluating the Named Standing Witness's credibility, and its probative value is more evident when the communications are considered together than when either communication is considered alone. Therefore, the line that Movants attempt to draw, where McFadden's statements directly pertain to her credibility but only tangentially relate to the credibility of the Standing Witnesses, is one that makes little sense.

In light of this, Movants' concession for the purpose of this appeal – that Judge Schanzle-Haskins's conclusion that the statements of the Standing Witnesses

13

related to Edwards are highly relevant to the Standing Witnesses' credibility was not clearly erroneous – is dispositive. If those communications are highly relevant to the Standing Witnesses' credibility, then the preceding emails from McFadden are as well.

The same logic, however, does not apply as strongly to McFadden's following communications to the Named Standing Witnesses' responses. As discussed above, Judge Schanzle-Haskins's decision requiring that Movants disclose the following communications was based on his holding that standing is an essential element of the case and discovery on the Standing Witnesses' credibility is necessary. Although McFadden's preceding communications are required to place any of the Standing Witnesses' responses into the appropriate context, these preceding communications should do the required heavy lifting in this regard. McFadden's following responses do little to place the Standing Witnesses' communications into context, and instead are more likely to relate to McFadden's gloss on the situation (and therefore, McFadden's credibility). Because McFadden's credibility is not at issue, the Court finds that this discovery is not highly relevant to an essential element of the case. Therefore, Defendants have not made the showing required here. *See Perry*, 591 F.3d at 1160.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Movants' Appeal of the Magistrate Judge's Order Compelling Disclosure of Certain Communications. (Doc. 80). The order entered by Magistrate Judge Tom Schanzle-Haskins on June 17, 2015 (Doc. 79) is MODIFIED AS FOLLOWS:

Document Request No. 1 in the Notice is modified to require that McFadden produce unprivileged documents that contain: (1) any statement made by the Named Standing Witness concerning Edwards; and (2) any communication from McFadden to a Named Standing Witness to which the Named Standing Witness responded with a statement concerning Edwards. McFadden need not produce the third category of documents: any response by McFadden to any statement made by the Named Standing Witnesses concerning Edwards.

IT IS SO ORDERED.

Entered this 17th day of August, 2015.

                                                  s/Joe B. McDade
                                                  JOE BILLY McDADE
                                        United States Senior District Judge