## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC, SIERRA CLUB, INC., and RESPITORY HEALTH ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS POWER RESOURCES, LLC and ILLINOIS POWER RESOURCES GENERATING, LLC, <br><br> Defendants. | Case No. 13-cv-1181 |

## **O R D E R & O P I N I O N**

This matter is before the Court on Plaintiff Sierra Club and its employee Kady McFadden's (together, "Movants") Motion for Clarification and/or Relief from the Court's Order as Applied to Communications with Former Sierra Club Declarants Joyce Blumenshine and Joyce Harant. (Doc. 94). In the pending motion, Movants ask the Court to clarify that its August 17, 2015 Opinion and Order (Doc. 90) only applies to *currently* designated Named Standing Witnesses, and conclude that Movants therefore do not need to produce communications from McFadden to two women whom Sierra Club had previously designated but recently withdrew as standing witnesses. Defendants Illinois Power Resources, LLC and Illinois Power Resources Generating, LLC have filed a response in opposition to the motion (Doc. 97), and it is now ready for decision. For the reasons that follow, the Court grants Movants' motion.

## BACKGROUND

Movant Sierra Club is one of the plaintiffs in this action. Plaintiffs allege that Defendants Illinois Power Resources, LLC, and Illinois Power Resources Generating, LLC, operate (and their predecessors operated) the E.D. Edwards Energy Center power plant ("Edwards") in violation of opacity limits and particulate matter limits established through various interworking state and federal air quality statutes and regulations. (*See* Second Am. Compl., Doc. 88, at 11-14). Plaintiffs also allege that Defendants and their predecessors violated the Clean Air Act's reporting requirements. (*Id.* at 15).

Each of the plaintiffs, including the Sierra Club, is an association, and the associations allege their individual members were harmed by Defendants' violations. (*Id.* at 3-4). Until September 17, 2015, Sierra Club offered three standing witnesses: David Pittman, Joyce Blumenshine, and Joyce Harant. (*Id.* at 4 and Exhs. 8-10). Sierra Club relied upon the alleged injuries to these individuals, which the individuals assert were caused by Defendants' challenged misconduct, in order to establish standing to sue. (*Id.* at 4-5); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). On September 17, 2015, Sierra Club filed with the Court a notice to withdraw both Joyce Blumenshine and Joyce Harant as standing witnesses. (Doc. 93). The notice stated in relevant part that Sierra Club "will not call either Ms. Blumenshine or Ms. Harant for testimony for any reason whatsoever in this lawsuit, including to provide organizational standing to the Sierra Club." (*Id.*).

Sierra Club's decision to withdraw Joyce Blumenshine and Joyce Harant as standing witnesses is the latest episode in an extended dispute involving Sierra Club's discovery obligations with respect to its standing witnesses. The dispute began on May 1, 2015, when Defendants served a Notice of Deposition and Rider on Sierra Club Employee Kady McFadden pursuant to Federal Rule of Civil Procedure 30. (Docs. 82 at 2, 82-1). The Notice requested that McFadden bring to her deposition documents that were responsive to two requests included in the Rider, including a request for "[a]ny communications with Tracy Meints Fox, Robert J. Jorgensen, Linda Andrews, Mary Ann Schafer, David Pittman, Joyce Harant, Alicia High, or Joyce Blumenshine concerning Edwards." (Doc. 82-1 at 2, 4).

On May 15, 2015, Movants filed a Motion to Modify the Notice of Deposition and for Protective Order. (Doc. 74). They specifically asked that the Court "modify the Notice of Deposition to limit that document request to communications concerning the Plant's opacity and PM air pollution, and similarly limit the scope of Ms. McFadden's deposition." (Doc. 75 at 3). Movants first argued that the request was not reasonably calculated to lead to the discovery of admissible evidence. (*Id.* at 4-7). They next argued that failing to modify Document Request Paragraph 1 would impermissibly chill the First Amendment rights of the Sierra Club and its members. (*Id.* at 7-12).

On June 17, 2015, Magistrate Judge Schanzle-Haskins issued an order allowing in part and denying in part Movant's motion. (Doc. 79). Judge Schanzle-Haskins modified Document Request Paragraph 1, and required that McFadden produce:

3

unprivileged documents that contain: (1) any statement made by the Named Standing Witnesses concerning Edwards; (2) any communication from McFadden to a Named Standing Witness to which the Named Standing Witness responded with a statement concerning Edwards; and (3) any response by McFadden to any statement made by the Named Standing Witnesses Concerning Edwards.

(*Id.* at 14-15). His order similarly limited the areas of inquiry that Defendants could pursue that relate to that document request. (*Id.* at 15). At the time that Defendants made the discovery demand (and, at the time that Judge Schanzle-Haskins issued his order), Plaintiffs had indicated that they intended to rely upon each of the witnesses listed in the deposition rider to establish standing, so Judge Schanzle-Haskins used the term "Named Standing Witnesses" to refer to them.

Movants were not satisfied with Judge Schanzle-Haskins order, and appealed it to this Court. (Doc. 80). In their appeal, Movants argued that Judge Schanzle-Haskins erred by giving inadequate consideration to Sierra Club's First Amendment interests. Although Movants did not challenge Judge Schanzle-Haskins's conclusion that McFadden must disclose communications that the Named Standing Witnesses made to McFadden concerning Edwards, they argued that McFadden's communications with the Named Standing Witnesses were protected by the First Amendment privilege.

The Court modified Judge Schanzle-Haskins' order. In doing so, it adopted the shorthand that the parties and Judge Schanzle-Haskins had used, and referred to the individuals listed in the first document request as "Named Standing Witnesses." The Court ordered that McFadden produce unprivileged documents that contain: (1) any statement made by the Named Standing Witness concerning Edwards; and (2) any communication from McFadden to a Named Standing Witness

4

to which the Named Standing Witness responded with a statement concerning Edwards. (Doc. 90 at 15).

Rather than producing responsive documents with respect to Harant and Blumenshine, Plaintiff Sierra Club withdrew Harant and Blumenshine one month after the Court's order. (Doc. 93). This withdrawal gives rise to the current dispute.

## DISCUSSION

Movants argue that they should not have to disclose McFadden's communications with Harant and Blumenshine because the Court's previous order should be understood to only require disclosure of McFadden's communications with individuals who Plaintiffs will offer to establish standing. (Doc. 94 at 4). Defendants, on the other hand, argue that the order is clear on its face and requires production of McFadden's communications with Harant and Blumenshine. (Doc. 97 at 2). Defendants argue that they listed Harant and Blumenshine, among others, in the first document request on the rider to the deposition notice, and the Court used "Named Standing Witnesses" as shorthand to refer to the group of individuals listed in the document request. Therefore, they argue that the Court's order encompasses McFadden's communications with Harant and Blumenshine even if Sierra Club no longer intends to offer either as standing witnesses.

The Court concludes that Movants need not disclose McFadden's communications with Harant and Blumenshine pursuant to its August 17, 2015 order if Harant and Blumenshine will not serve as standing witnesses. This conclusion is compelled by the logic of the Court's earlier opinion.

5

In its earlier opinion, the Court applied the test articulated in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009) to evaluate Movants' claim that McFadden's communications with all Named Standing Witnesses (including at the time Harant and Blumenshine) are protected by First Amendment privilege. In *Perry*, the Ninth Circuit applied a two-part framework to evaluate claims of First Amendment privilege. First, the person asserting the privilege "must demonstrate . . . a prima facie showing of arguable first amendment infringement." *Id.* at 1160 (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349-50 (9th Cir. 1988) (internal quotation marks omitted)). Once the party seeking protection has made a prima facie showing, the party seeking the discovery can only overcome it by showing "that the information sought is highly relevant to the claims or defenses in the litigation – a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.* The party seeking discovery must also carefully tailor the request "to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

The Court accepted Judge Schanzle-Haskins' unchallenged conclusion that Movants made a prima facie showing under the *Perry* test. (Doc. 90 at 6-7). It then concluded that certain of McFadden's communications with the Named Standing Witnesses were discoverable in spite of the prima facie showing because of the importance of standing in this litigation.

The Court reasoned first that standing is an essential element of Plaintiffs' claims against Defendants. It explained that in order to get to the merits of their claims, Plaintiffs must present witnesses who can show they have suffered an

6

injury-in-fact that is (1) concrete and particularized and actual or imminent; (2) fairly traceable to the challenged action or conduct; and (3) likely to be redressed by a favorable ruling from the court. *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These three elements are "an indispensable part of the . . . case." *Id.* (citing *Lujan*, 504 U.S. at 561).

The Court also concluded that the Named Standing Witnesses put their credibility at stake on these essential elements of Plaintiffs' case by submitting declarations for use in establishing standing for Plaintiffs, and that the Named Standing Witnesses' own statements were highly relevant to their credibility. The Court then concluded that McFadden's communications to Named Standing Witnesses that generated a response from the Named Standing Witnesses were discoverable because they put the Named Standing Witnesses' statements in necessary context. (Doc. 90 at 10-14).

All of this, the Court decided, made the discovery requested highly relevant to Plaintiffs' claim of standing, and was enough to overcome Movants' prima facie showing of First Amendment Privilege. *See Perry*, 591 F.3d at 1160.

If the Sierra Club is not going to offer Harant and Blumenshine as standing witnesses, the justification that the Court articulated for requiring that McFadden produce her communications with Harant and Blumenshine does not apply. Harant and Blumenshine will no longer be offered to establish an essential aspect of Sierra Club's case against Defendants. That means jurors will no longer need to make a credibility determination with respect to Harant and Blumenshine's declared

7

injuries or the cause of those injuries, because the existence those injuries is no longer relevant to the litigation. Absent these circumstances Defendants cannot overcome Movants' prima facie claim of First Amendment Privilege.

Defendants offer a number of reasons that they believe the McFadden's communications with Harant and Blumenshine remain highly relevant First, Defendants say that they may call Harant and Blumenshine to testify at trial because they are former standing witnesses (a distinction that Defendants say makes them different than any other Sierra Club member who was never offered to help establish standing). Second, Defendants argue that McFadden's communications with Harant and Blumenshine may be relevant to the credibility of the Standing Witnesses as a group, or to the credibility of other Standing Witnesses who have not been withdrawn.

Neither offered justification convinces the Court that Movants must disclose the currently-withheld documents. In its earlier order, the Court made it very clear that was ordering disclosure of McFadden's preceding communications with the Named Standing Witnesses because those preceding communications put the Named Standing Witnesses' own statements into the appropriate context. The Court declined to order disclosure of McFadden's following communications because it concluded that they were unnecessary for that purpose. (Doc. 90 at 14). Indeed, the Court wrote that the statements are "more likely to relate to McFadden's gloss on the situation (and therefore, McFadden's credibility) . . . [which] is not at issue." (*Id.*).

8

In light of this, each of the proffered reasons that Defendants provide runs into the same problem. To the extent that McFadden's communications with Harant and Blumenshine relate to the other Standing Witnesses, these communications are more likely to relate to McFadden's gloss on the situation and are insufficient to overcome the prima facie case that Movants made. *See id.* And, Defendants' potential interest in calling Harant and Blumenshine as witnesses cannot serve as justification for requiring disclosure. Defendants very well may wish to call McFadden at trial, but their interest in doing so does not justify disclosure of all of her communications in light of the First Amendment issues at stake. Indeed, the Court held that it is the unique nature of individuals presented to establish standing and the importance of standing in this litigation that justifies disclosure, and not the fact that a party intends to call a witness.

## CONCLUSION

In response to Movants' motion, Defendants attempt to portray themselves as victims of Movants' gamesmanship. This attempt overlooks the pain that the Sierra Club incurred in withdrawing Harant and Blumenshine as standing witnesses. In earlier disputes, Defendants sought information from Movants in effort to challenge Plaintiffs' standing. By withdrawing two-thirds of their potential standing witnesses rather than disclosing certain documents, the Sierra Club has weakened its hand with respect to standing. In demanding that Movants disclose certain documents protected by the First Amendment privilege, Defendants seem to be spinning what could be seen as a tactical victory as an act of victimization.

Movants' decision to withdraw Harant and Blumenshine as standing witnesses relieves them of their need to produce McFadden's communications with Harant and Blumenshine under the Court's August 17, 2015 order. IT IS SO ORDERED.


Entered this 13th  day of October, 2015.

    s/ Joe B. McDade
    JOE BILLY McDADE
    United States Senior District Judge