IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION; and SIERRA CLUB, INC., | |
| Plaintiffs, | Case No. 13-cv-01181 |
| | United States District Judge |
| v. | Joe Billy McDade |
| ILLINOIS POWER RESOURCES GENERATING, LLC, | Magistrate Judge |
| | Thomas P. Schanzle-Haskins III |
| Defendant. | |

**[PROPOSED] REPLY IN SUPPORT OF MOTION TO COMPEL**

The improper deposition behavior described in Plaintiffs' December 6 Motion to Compel obstructed discovery of a key defense witness at a critical time in the discovery schedule. The Motion seeks to remedy the damage done during that deposition as soon as possible, and to prevent IPRG from obstructing future deposition testimony.

IPRG's Opposition, ECF No. 164, largely fails to respond to the law and transcript references Plaintiffs included in their Motion and supporting papers, to illustrate why counsel's conduct was improper. IPRG's complaints about a handful of Plaintiffs' deposition questions and exhibits are inconsequential to and do not excuse its Rule 30 violations. IPRG's claim that Plaintiffs did not take their normal seven hours with the witness on November 30 does not square with timekeeping records taken during the deposition and is immaterial to Plaintiffs' request for additional uncoached questioning time and costs, to remedy counsel's behavior. IPRG's references to other discovery matters are also immaterial.

It is true that Plaintiffs did not try to meet and confer with IPRG's counsel about the

specific relief their Motion seeks before filing the Motion. Any such effort would have been prejudicial and likely futile, for reasons Plaintiffs included in the Motion and elaborate on below. Courts considering similar circumstances have found that normal meet and confer requirements either do not apply or were excused. And the normal remedy for an unexcused meet and confer failure—dismissal without prejudice to refiling, to see if the parties can agree without Court intervention—also would not help here. IPRG since confirmed that it will not voluntarily give Plaintiffs any substantial part of the relief their Motion seeks, and further delays in resolving the Motion will prejudice Plaintiffs.

## I.     IPRG's deposition behavior violated Rule 30 and obstructed testimony

IPRG's citation to specific places in the November 30 Lindenbusch transcript where counsel made a specific objection it asserts was "necessary and appropriate" misses the forest for the trees. Depositions are supposed to be a dialogue between the questioning lawyer and the witness—not between the questioning and defending lawyers, and certainly not between the defending lawyer and the witness. Dec. 6 Mot., ECF No. 160, at 5-6 (citing authorities).  That is why all proper objections must be concise, nonsuggestive, and nonargumentative, Fed. R. Civ. P. 30(c)(2), and why "[t]he making of an excessive number of unnecessary objections may itself constitute sanctionable conduct." Advisory committee's note (1993 amdts., subdiv. (d)).

Although the substance of some of defense counsel's individual form objections was proper, his objections and other commentary were *cumulatively* improper. Defense counsel broke up and consumed deposition time with repetitive, long, and/or unnecessary objections and other comments. *See* Mot. to Compel, ECF No. 160, at 3-4 (time estimate and objection counts). Many of his individual objections were also suggestive. *Id.* at 6-7 (discussing and citing cases on various categories of suggestive objections and comments); Dec. 6 Fisher Decl., ECF No. 160-2, ¶¶ 6-11 (examples). Plaintiffs' good-faith efforts to respond to and try to limit these

disruptions—by asking defense counsel to stop making speaking objections (Dec. 6 Fisher Decl.

Ex. A (Nov. 30 Lindenbusch Tr., filed under seal) 34:17-18, 221:2-6), by referring to Rule 30

(*id.* 292:22–293:2), by offering standing objections, and by occasionally choosing to rephrase a

question or request the basis for an objection, *see* IPRG Opp., ECF No. 164, at 6-7—do not

excuse the disruptions.[1]

Because IPRG's Response does not specifically address most of the categories of

improper objections and other comments Plaintiffs discussed in their Motion, Plaintiffs do not

revisit that material here.[2] Lawyers can debate the necessity and propriety of individual

objections. If IPRG's counsel had just made a few objections Plaintiffs thought were

substantively questionable, and the behavior had not interfered with testimony, Plaintiffs would

not have filed their Motion. The Motion responds to a pattern of unduly long, frequent, or

otherwise unnecessary objections, combined with other interjections and instructions that

interfered with or suggested the substance of the witness's responses to Plaintiffs' questions. In

addition to telling the witness "you don't need to answer" without invoking privilege, and

refusing to allow the witness to answer a question because it had been "asked and answered,"

Dec. 6 Fisher Decl., ECF No. 160-2, ¶ 8, counsel repeatedly interrupted the witness's responses

to questions, or counsel's follow-up questions, without making any colorable form objection or

---

[1] There was nothing improper about Plaintiffs' use of the two deposition exhibits IPRG refers to at pages 7-8 of its Opposition (and for one of which Plaintiffs offered defense counsel a standing objection he refused, *see* 108:4-5). Even if there had been, it would not excuse counsel's Rule 30 violations. Objectionable questions may be asked. They must be answered unless the answer would violate a privilege. And objections must always be made in a concise, nonsuggestive, and nonargumentative manner. Fed. R. Civ. P. 30(c)(2).

[2] IPRG asserts that counsel's foundation objections on two exhibits discussed in the preceding would have been waived if not made, but even assuming that were true, it would not explain or excuse suggestive or unduly verbose and repetitive use of such objections.

privilege claim. *See* Dec. 10, 2017 Supp. Fisher Decl. in Supp. of Mot. to Compel ("Supp. Fisher Decl.") ¶ 16 (additional transcript excerpts).

That some of the conduct described in published opinions on deposition practice may have been worse, *see* IPRG Opp., ECF No. 164, at 10-12, hardly excuses defense counsel's conduct on November 30. The behavior documented in the transcript and summarized in Plaintiffs' declarations in support of their Motion is similar to the behavior described in orders within this Circuit on Rule 30 violations.[3] The behavior violated Rule 30 and obstructed testimony. The obstruction should be remedied, and the behavior should stop.

## II.    IPRG's claim that Plaintiffs did not use their full seven hours with the obstructed witness is irrelevant and inaccurate

Plaintiffs' counsel kept time during the deposition, confirming the accuracy of their time-keeping with the court reporter during both post-lunch breaks, and their records show that it went just over seven hours. Supp. Fisher Decl. ¶¶ 10-14. Even if Plaintiffs inadvertently stopped

---

[3] In a Northern District of Illinois case, the court awarded questioning counsel's costs for taking a deposition and barred the witness (an expert) from testifying where, throughout the deposition, "[counsel] made 'speaking objections,' with the apparent intention of, at times, testifying for [the witness], and, at other times, signaling to [the witness] that he should testify (or not testify) in a particular manner." *Heiraud v. Transp. Serv.*, No. 03 C 0289, 2005 WL 2230199, at *1 (N.D. Ill. Sept. 8, 2005). Counsel gave only one instruction not to answer, but his "constant interruptions and interjections, which began at the earliest opportunity, impeded the flow and progress of the deposition." *Id*. at *2. They included requests that questions be clarified, that answers or questions be read back, and "accusatory objection[s] for vagueness." *Id.* The court found that counsel had failed to "simply state the basis for his objections and allow the deposition to continue" and "consistently inserted himself into the process by giving lengthy soliloquies as to how counsel's performance and questions were lacking." *Id.* at *4.

In a Southern District of Indiana case, the court granted an additional four hours to depose a witness after counsel "impeded efficient use of the presumptive seven-hour deposition by leveling numerous objections (240 by [defendants'] count), some of which were lengthy speaking objections, and many of which lacked merit." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 13-CV-01316-JMS, 2015 WL 4458903, at *5 (S.D. Ind. July 21, 2015). "This repeated use of meritless objections bordered on inappropriate and frustrated the efficient use of the allotted deposition time." *Id.* This case did not involve any instructions not to answer; the lengthy speaking objections and numerous objections were sufficient grounds for awarding additional time.

questioning earlier than they could have at "approximately 6.5 hours" as IPRG asserts, *see* IPRG

Opp., ECF No. 164, at 3, the point is immaterial. Plaintiffs ended their questioning based on a

good-faith understanding that their normal allowable deposition time had elapsed. Supp. Fisher

Decl. ¶ 10. They had no reason to expect that, had they pressed on into the evening, defense

counsel would suddenly abandon the obstructive behavior that began early in the day and that

they had repeatedly and unsuccessfully asked to stop. They certainly had no reason to believe

(and IPRG never says) that counsel would have allowed them to take the additional 3.5 hours of

unobstructed testimony their Motion seeks.

III.    **The meet and confer requirement should be waived or construed not to apply, because the damage has been done, Plaintiffs could not have held their Motion without risking further obstruction and delay, and IPRG's conduct shows that further attempts to resolve the issue informally would have been futile**

Plaintiffs acknowledge that Rule 37(a)(1) requires litigants to either meet and confer or

attempt to do so before moving to compel, and that they did not try to confer with IPRG about

the specific relief the Motion seeks before filing it. "Courts have excused a failure to meet and

confer where: (1) under the circumstances, the parties do not have time to attempt to reach an

agreement; or (2) an attempt to compromise would have been clearly futile." *Care Envtl. Corp.*

*v. M2 Techs. Inc.*, No. CV-05-1600 (CPS), 2006 WL 1517742, at *3 (E.D.N.Y. May 30, 2006)

(internal quotation marks omitted); *see also Houston v. C.G. Sec. Servs., Inc.*, 302 F.R.D. 268,

270 (S.D. Ind. 2014), *aff'd*, 820 F.3d 855 (7th Cir. 2016) ("The Court also notes that some of the

complained of conduct, i.e., deposition behavior, is not necessarily a "discovery dispute" for

which a meet and confer is warranted; since the distasteful behavior already occurred, it is

unlikely that the issue would be resolved by meeting and conferring with opposing counsel.")[4]

Both factors were present here.

### A.    Urgency and risk of prejudicial delay

The issues presented in the Motion to Compel were urgent, and Plaintiffs risked prejudice by delaying its filing. They were scheduled to, and did, begin the deposition of another IPRG witness the next morning.[5] Supp. Fisher Decl. ¶ 19. They will depose another IPRG witness this Wednesday, December 13, and a third—Mr. Lindenbusch in his capacity as an IPRG Rule 30(b)(6) witness—on December 21. *Id*. ¶ 29. Plaintiffs have also had trouble getting IPRG to hold deposition dates it has offered for Mr. Lindenbusch, after Plaintiffs confirmed those dates. *Id*. ¶¶ 2-8; Dec. 9 Kyle Decl. in Supp. of Mot. to Extend, ECF No. 165-1, ¶¶ 15-16.

Plaintiffs feared that if they did not move for the requested additional half day with Mr. Lindenbusch as soon as possible, this questioning time (if awarded) would end up falling even farther from this past Friday's fact-discovery cutoff than the other outstanding fact depositions. *See also* Dec. 9 Mot to Extend, ECF No. 165, at 2-4 (background on the December 13 and 21 dates for depositions of IPRG). These and other delays discussed in Plaintiffs' other recent submissions to this Court are forcing Plaintiffs to make ever more prejudicial tradeoffs

---

[4] *Cf. In re NASDAQ Market-Makers Antitrust Litig.*, No. 94 Civ. 3996 (RWS), 1996 WL 187409, at *2 (S.D.N.Y. Apr. 18, 1999) (deciding motion to compel on merits despite movant's arguable failure to comply with meet and confer requirements of Rule 37(a) and a local rule, in part because of "the imminence of the [related] deadlines . . . and by the fact that the goal of encouraging compromise on this discovery dispute is unlikely to be achieved"); *Presicent Partners, L.P. v. Fieldcrest Cannon, Inc*., No. 96-civ-7590(DAB)JCF, 1998 WL 67672, at *4 (S.D.N.Y. Feb. 18, 1998) (considering whether a failure to confer was "excusable due to temporal exigencies or because efforts at informal compromise would have been clearly futile").

[5] Although the lawyer whose conduct prompted Plaintiffs' Motion did not appear at the March 7 deposition, Plaintiffs assume that IPRG is free to choose which of its counsel will defend each deposition. Plaintiffs' Motion responds to behavior that would violate Rule 30 no matter who the lawyer was. It requests (inter alia) "[a]n order directing *IPRG* to refrain from making speaking objections and other improper comments like those described in the motion during future depositions." Mot. to Compel, ECF No. 160, at 10 ¶ 3 (emphasis added).

between being prepared for trial and changing the schedule.[6] *Id.* at 5-6; *see also* Pls' Nov. 20

Opp. to Mot. for Protective Order, ECF No. 156, at 1, 10-11. Courts have excused failures to

confer on motions to compel in similarly pressing circumstances. *See Modern Eng'g, Inc. v.*

*Peterson*, No. CIV. 07-CV-1055, 2007 WL 2680563, at \*2 (C.D. Ill. July 16, 2007) (addressing

substance of motion to compel despite plaintiff's failure to satisfy meet and confer requirements

"because of the short time frame allowed for [the] discovery" requested).

### B.    Futility

Before Plaintiffs took the November 30 deposition of Mr. Lindenbusch, IPRG moved for

a protective order that would have denied Plaintiffs the normal allowable seven hours of time for

that deposition. ECF No. 155 (Nov. 17 Mot.). Plaintiffs opposed the protective order, and the

Court denied it.[7] ECF Nos. 157 (Nov. 21 Opp.), 158 (Nov. 21 Order).

Defense counsel began interfering with Mr. Lindenbusch's testimony during Plaintiffs'

background questioning. Dec. 6 Fisher Decl. Ex. A (Nov. 30 Lindenbusch Tr., filed under seal)

---

[6] IPRG's claim that Plaintiffs have unjustifiably delayed discovery with late document and deposition requests, IPRG Opp., ECF No. 164, at 2, is irrelevant to and does not excuse the Rule 30 violations presented in the Motion to Compel. To the extent the Court wishes to entertain this claim and to avoid duplicative briefing, Plaintiffs respectfully refer to the additional context included in their December 9 Motion to Extend All Parties' Expert-Report Deadlines by Two Weeks, ECF No. 165, their November 20 Opposition to IPRG's Motion for Protective Order (concerning the same Lindenbusch deposition), ECF No. 156, and supporting papers. For example, Plaintiffs noticed most of their depositions of IPRG witnesses, including those of Mr. Lindenbusch and most of their 30(b)(6) deposition topics for IPRG, in early August. Dec. 9 Mot. to Extend, ECF No. 165, at 2-3. The November 21 supplemental 30(b)(6) notice (for topic 6) and duces tecum request were prompted by testimony at a November 10 deposition. Dec. 9 Kyle Dec. in Supp. of Mot. to Extend ¶ 11. Plaintiffs also respectfully disagree that none of the documents in the duces tecum request had been "previously requested," *contra* IPRG Opp., ECF No. 164, at 2. Supp. Fisher Decl. ¶ 28.

[7] The two earlier Lindenbusch depositions IPRG's opposition references, IPRG Opp., ECF No. 164, at 3, were in the bifurcated liability phase of this case, during which IPRG counsel objected to and instructed witnesses not to answer questions about remedy issues. *See* ECF No. 157, at 2-3 (Opp. to Mot. for Protective Order). They have nothing to do with giving Plaintiffs more time with Mr. Lindenbusch now, to help compensate for IPRG's obstruction of his November 30 deposition.

(6:7-22, 16:6-13). Plaintiffs made their first request that defense counsel end his speaking objections early on (*id*. 34:17-18), and later referred to Rule 30(c)'s requirement that objections be concise and nonsuggestive (*id*. 292:22–293:2). They also warned counsel that they might seek more time with the witness if the behavior continued. (*Id*. 220:4-6); IPRG Opp., ECF No. 164, at 4 (quoting this part of the transcript).[8] The behavior did continue. *See, e.g.*, Dec. 6 Fisher Decl. ¶¶ 6, 8, 9 & Supp. Fisher Decl. ¶ 17 (referencing and excerpting examples from parts of the transcript that follow the warning).

Their experience during the deposition, and IPRG's earlier request for a protective order that would have limited the same deposition, led Plaintiffs to believe that IPRG would not agree to the additional questioning time and costs needed to remedy the obstructions on November 30, or to forgo similar behavior at future depositions, without a Court order. Courts considering meet and confer requirements in similar circumstances have excused or relaxed them. *See Rainey v. Metro. Water Reclamation Dist.*, No. 11 C 2594, 2012 WL 2192241, at *2 (N.D. Ill. June 14, 2012) (addressing plaintiffs' motion to compel on the merits even though plaintiff failed to satisfy meet and confer requirement, because defendant had "steadfastly refused to provide information [requested]" and "cannot seriously argue that it would have changed its position after an additional conference"); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 357 (N.D. Ill. 2005) (concluding that "the absence of perfect compliance with [Rule 37's and Local Rule's] certification requirements [was] not a bar to consideration of [motion to compel]" because parties earlier "exchange of letters and the exchange at the . . . deposition show that a

---

[8] In response to IPRG's comment at the top of page 4 of its Opposition, IPRG Opp., ECF No. 164, Mr. Lindenbusch's testimony suggested that IPRG has not yet produced the most recent Plant budget documents responsive to Plaintiffs' document requests. Plaintiffs wrote to IPRG after the deposition to follow up on this issue, counsel are still conferring about it, and it has no bearing on the Rule 30 violations the Motion to Compel discusses.

meet and confer session regarding [the requested discovery] would have been . . . unavailing").[9]

IPRG has now confirmed that it will not agree to provide Mr. Lindenbusch for an additional half day of individual testimony, as soon as possible and no later than December 19, or to give Plaintiffs the other relief their Motion requests. Supp. Fisher Decl. ¶¶ 23, 26. Plaintiffs acknowledge that this more recent confirmation could not excuse an otherwise inexcusable meet and confer failure. But IPRG's confirmation, combined with the urgency of the relief Plaintiffs seek, does help explain why it would be futile for Plaintiffs either to withdraw their Motion or for it to be dismissed without prejudice to refiling (the normal remedy for a meet and confer failure), to see if the parties can still resolve their dispute without this Court's intervention.[10] The parties have now discussed the specific relief the Motion seeks, and IPRG has confirmed that it will not agree to it or anything substantially similar.

---

[9] *See also White v. Hodge*, 3:13-CV-1212-NJR-DGW, 2017 WL 2640260, at *2 n.2 (S.D. Ill. May 19, 2017), *report and recommendation adopted sub nom.*, *White v. Baylor*, No. 3:13-CV-1212-NJR-DGW, 2017 WL 2633190 (S.D. Ill. June 19, 2017) (deeming meet and confer requirements satisfied where movant attempted to resolve the issue at deposition and opposing party's "contumacious conduct . . . would have rendered further negotiations pointless").

IPRG tries to distinguish *White* by noting that the plaintiff refused to answer *any* substantive questions, in defiance of a court order directing him to do so, *see* IPRG Opp., ECF No. 164, at 2-3; *White*, 2017 WL 2640260, at *1-2, but that plaintiff was self-represented. Counsel can be expected to know and ensure that witnesses they defend at deposition give testimony in accordance with Rule 30.

[10] *See, e.g., J.M. Smith Corp. v. Ciolino Pharmacy Wholesale Distributors, LLC*, No. CV 10-1483, 2012 WL 13001456, at *3 (E.D. La. Dec. 28, 2012) (excusing movant's failure to certify that it had met and conferred, referring to impending discovery deadlines and past disputes that had delayed the litigation, and finding that "interests of pragmatism weigh heavily in favor of finding any non-compliance with the certification requirement irrelevant"); *Care Envtl. Corp.*, 2006 WL 1517742, at *3 (noting that parties had conferred since filing of a motion to compel filed without the requisite certification, and that "because the remedy when a plaintiff has not submitted a certification is to deny the motion without prejudice, . . . had the Magistrate dismissed plaintiff's motion on this ground, plaintiff could have and presumably would have refiled the motion with the proper certification since the plaintiff had in that time in fact met and conferred with the defendant. Because it would have been a waste of judicial resources and the time of all involved to deny the motion only to have it immediately refiled, the Magistrate was not clearly erroneous in choosing to grant the motion.")

IV.   **IPRG's latest claims about Mr. Lindenbusch's availability confirm the importance of an expedited ruling on the Motion to Compel**

IPRG's claim that Plaintiffs "requested an additional half-day of deposition on December 19, a date Plaintiffs' counsel knows Mr. Lindenbusch is not available," IPRG Opp., ECF No. 164, at 14, is inaccurate in two ways that matter here. First, Plaintiffs have requested an additional half-day "as soon *as possible and no later than* December 19," Mot. to Compel, ECF No. 160, at 8 (emphasis added)—not on December 19 exclusively. The distinction matters because Plaintiffs want to minimize further prejudicial discovery delays. Second, Plaintiffs' counsel did not "know" that Mr. Lindenbusch was unavailable on December 19 when they filed their Motion, and had reason to believe that he would be available on that date, because IPRG had recently offered it for his 30(b)(6) testimony.[11] The mounting scheduling conflicts for this witness underscore the urgency of Plaintiffs' request for a Court ruling on additional time with him.

**CONCLUSION**

The Court should consider the Motion on its merits, and grant it.

Respectfully submitted December 11, 2017,

s/ *Selena Kyle*
Natural Resources Defense Council
Selena Kyle (IL Bar No. 6311573)
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 651-7906
skyle@nrdc.org
Claire Woods (by leave, CA Bar No. 282348)

---

[11] December 19 was one of the dates IPRG had recently offered for the 30(b)(6) topics 1 and 6 deposition of Mr. Lindenbusch (as IPRG's designee). Dec. 6 Kyle Decl. in Supp. of Mot. to Compel, ECF No. 160, ¶¶ 9-10. Plaintiffs agreed to move the 30(b)(6) deposition to December 21, the other date IPRG had offered, after Plaintiffs tried to confirm December 19 and IPRG represented one of its *counsel* was now unavailable. *Id.* ¶¶ 10-12; *see also* Dec. 9 Kyle Decl. in Supp. of Mot. to Extend ¶¶ 14-17. Plaintiffs were unaware of any conflict for the witness on that particular date until they received IPRG's Opposition on Friday night. Supp. Fisher Decl. ¶ 27.

Ann Alexander (IL Bar No. 6278919)
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6143
cwoods@nrdc.org
(415) 875-6190
aalexander@nrdc.org

*Counsel for Plaintiff Natural Resources Defense Council*

s/ *Jeffrey Hammons*
Jeffrey Hammons (IL Bar No. 6324007)
Justin Vickers (IL Bar No. 6305129)
Scott Strand (MN Bar No. 147151)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
jhammons@elpc.org
jvickers@elpc.org

Scott Strand (MN Bar No. 147151)
Environmental Law & Policy Center
15 South Fifth Street, Suite 500
Minneapolis, MN 55402
(312) 673-6500
sstrand@elpc.org

*Counsel for Plaintiffs Sierra Club and Respiratory Health Association*

s/ *Faith E. Bugel*
Faith E. Bugel (IL Bar No. 6255685)
Attorney at Law
1004 Mohawk Road
Wilmette, IL 60091
(312) 282-9119
fbugel@gmail.com

Gregory E. Wannier (CA Bar No. 275349)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94110
(415) 977-5646
greg.wannier@sierraclub.org

11

*Counsel for Plaintiff Sierra Club*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2017, I caused the following to be served all

parties' counsel via the Court's CM/ECF system:

**[PROPOSED] REPLY IN SUPPORT OF MOTION TO COMPEL**
**SUPPLEMENTAL FISHER DECLARATION**
**MOTION FOR LEAVE TO FILE**
**[PROPOSED] ORDER GRANTING LEAVE**

*s/ Selena Kyle*
Selena Kyle

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION; and SIERRA CLUB, INC., | |
| Plaintiffs, | Case No. 13-cv-01181 |
| | United States District Judge |
| v. | Joe Billy McDade |
| ILLINOIS POWER RESOURCES GENERATING, LLC, | Magistrate Judge |
| | Thomas P. Schanzle-Haskins III |
| Defendant. | |

**SUPPLEMENTAL DECLARATION OF IAN FISHER
IN SUPPORT OF MOTION TO COMPEL ADDITIONAL
DEPOSITION TIME AND COSTS**

1.      My name is Ian Fisher. I represent the Natural Resources Defense Council, one of the Plaintiffs. This statement is based on my personal knowledge and review of the deposition transcripts discussed and excerpted below.

2.      On September 21 IPRG attorney Bina Joshi wrote a letter to Plaintiffs that provided dates IPRG counsel and noticed deponents would be available for depositions. The three dates given for Ted Lindenbusch were November 29, 30, and December 1. Ms. Joshi also requested that Mr. Lindenbusch's deposition take place in Peoria, IL.

3.      On September 22, Plaintiffs' counsel Jeffrey Hammons emailed Ms. Joshi confirming that Plaintiffs would take Mr. Lindenbusch's individual deposition on December 1 in Peoria.

4.      On October 11 IPRG sent a letter to Plaintiffs that designated Ted Lindenbusch to testify regarding Plaintiffs' Rule 30(b)(6) deposition notice topic 1.

1

5.      Plaintiffs' counsel Selena Kyle sent a letter to IPRG on November 6 confirming that Plaintiffs would take the Rule 30(b)(6) topic 1 deposition of Ted Lindenbusch on November 29 and the individual deposition of Ted Lindenbusch on December 1, both in Peoria. The only other day IPRG had said counsel and Mr. Lindenbusch were available, November 30, had been occupied by the deposition of William Henning and was one of only two dates IPRG represented he would be available.

6.      IPRG did not object to the chosen dates.

7.      IPRG moved to limit the testimony of Ted Lindenbusch to one day for both Rule 30(b)(6) topic 1 on November 17, ECF No. 155, which this court denied on November 21, ECF. No. 157.

8.      On November 21 Ms. Joshi sent Plaintiffs an email stating "As follow up to today's court order, Ted Lindenbusch is available to be deposed on November 30 and December 1."

9.      I attended the deposition of Ted Lindenbusch on November 30.

10.     During the deposition I noted the start and stop time of questioning, noted off the record breaks of a minute or more, and tracked how much time of questioning was remaining. I asked the court reporter how much questioning time was left during both breaks after lunch – I confirmed that my count was consistent with hers. I passed notes to Ms. Kyle as she took the deposition informing her when she had, based on my records, about twenty-five minutes, under ten minutes, and six minutes left of questioning time. Ms. Kyle's questioning continued after the final six minutes had expired.

11.     My notes show that the deposition started at 8:54 a.m. and went to 10:12, I noted about two minutes were off the record during this time. Questioning started again at 10:21 and

went to 11:21, when we took a one minute break for IPRG's counsel to confer with Mr.

Lindenbusch about a privilege question. At 11:22 questioning began until 12:20 p.m. when we

took a lunch break. Questioning restarted at 1:21 and went to 2:34. During this break I asked the

court reporter how much time had been used and confirmed my records were accurate.

Questioning resumed at 2:44 and went until 3:33. During this break I again confirmed my timing

records were accurate based on the court reporter's. Questioning began again at 3:44 and went

until 5:30, at which point Ms. Kyle asked for "a moment to confer." I did not note when we went

back on the record but the transcript showed the deposition closed at 5:35.

12.     Aside from the six breaks I noted, I believe there were only two other times the

deposition went off the record that I did not note. The transcript also shows only eight times off

the record and confirms this belief. See Dec 6 Mot. to Compel, Fisher Decl. Ex. A at 40, 58, 75,

129, 176, 239, 283, and 369. I believe that both of these non-noted breaks lasted less than 30

seconds.

13.     Based on my notes, I believe Ms. Kyle questioned Mr. Lindenbusch for

approximately seven hours and two minutes.

14.     I believe IPRG counsel is wrong to declare that Ms. Kyle "terminated the

deposition after asking questions of Mr. Lindenbusch for approximately 6.5 hours" because:

> a.   The deposition did not begin at "approximately 9:00 a.m." but rather 8:54.
>
> b.   Our second afternoon break began at 3:33 p.m. not 3:30.
>
> c.   The questioning of Mr. Lindenbusch ended at 5:30 p.m. not "around 5:20."
>
> d.   Even using IPRG counsel's times, which add up to 6 hours and 45 minutes,
>      the instances Ms. Kyle asked to go off the record did not take up the 15

3

minutes required for their assertions to make sense. IPRG's counsel has not

explained how they came up with this number.

15.     At the deposition Ms. Kyle questioned Mr. Lindenbusch about publicly available

news articles that referred to the Edwards Plant and its environmental record. Dec 6 Mot. to

Compel, Fisher Decl. Ex. A at 99:11-112:7; 297:3-303:20. The first article discusses an

agreement with Illinois EPA about air pollution from the Plant. Although Mr. Lindenbusch did

not recognize the article, he testified that its reference to a variance "rings a bell" for him, and

that he had attended a hearing on the variance. Dec 6 Mot. to Compel, Fisher Decl. Ex. A at

106:7-106:10; 110:3-112:7. The other article is an op-ed published under Ted Lindenbusch's

name that commented on the Plant's environmental performance. Mr. Lindenbusch testified that

the article had been submitted on his behalf. Dec 6 Mot. to Compel, Fisher Decl. Ex. A at 298:9-

299:16.

16.     During the deposition, IPRG's counsel prevented the witness from answering

questions multiple times. *See* Dec 6 Mot. to Compel, Fisher Decl. ¶ 8. IPRG's counsel also

repeatedly interrupted the witness's responses to questions, or counsel's follow-up questions,

without making any colorable form objection or privilege claim. For example (15:19-16:13):

> Q. All right.  After -- so how long were you at the Fossil Power headquarters?  Did I get that right?
>
> A.   You were close.
>
> MR. HYMAN:  I think he called it the Illinois Power headquarter.
>
> BY MS. KYLE: Q.   The Illinois Power headquarters.
>
> A.   A couple of years.  I don't remember exactly.
>
> Q.   Okay.  Where did you go after that job?
>
> A.   We were -- Illinois Power was in evolution --
>
> MR. HYMAN:  Just where did you go.
>
> THE WITNESS:  I went to another building in Decatur, and I was in -- it wasn't called Fossil Business Center, but it was a similar department.  I was Director.

4

(64:19-65:17):

> Q.   So just using this one as an example, this was for day shift on September 9 -- sorry, September 4, 2016.
>
> MR. HYMAN:  Is that a statement or a question?
>
> BY MS. KYLE: Q.   The heading says, Sunday Day Shift, September 4, 2016. Did Mr. Larimore write this?
>
> MR. HYMAN:  Excuse me, is that a statement or a question? I am not trying to be difficult, but you made a statement.  I don't know if you are asking him if that is right or wrong or whether you are just --
>
> BY MS. KYLE: Q.   Based on the heading of the exhibit, do you have an understanding when this was created?
>
> MR. HYMAN:  Thank you.
>
> THE WITNESS:  Based on this heading, looks likes it was written by Ivan Larimore on September 4, 2016.

(170:8-171:1):

> Q.   Okay.  So, you say, By my calculations the opacity derate on ED3, which is Unit 3, tomorrow of 15 megawatts will cost nearly $15,000. Do you see that?
>
> A.   Right.
>
> Q.   Can you explain to me how you calculated that figure?
>
> A.   I don't remember that calculation. Do you want me to walk you through that?
>
> MR. HYMAN:  We want her to ask you a question.
>
> THE WITNESS:  Do you want to ask me a question?
>
> MR. HYMAN:  You want to – wait until she asks you another question.  That's how it works.  Thank you.

(216:23-217:11):

> Q.   Okay.  Do you have copies of the final capital plans?
>
> A.   Probably not.
>
> Q.   Okay.  Who would have those?
>
> A.   I don't know.  I don't know if anybody would.
>
> Q.   You don't know if anybody would?
>
> MR. HYMAN:  Objection.  Was that a
>
> question?
>
> BY MS. KYLE: Q.   Yes.  I am just trying to understand --
>
> MR. HYMAN:  Then ask a question.

(237:11-237:17):

5

Q.   Okay.  Earlier you mentioned your boss is now Bob Kipp, is that right?

A.   Yes.

Q.   Who does he work for?

A.   Marty Daley.  What group?  I don't know.

MR. HYMAN:  Are you asking who his boss is or what company?

(250:11-251:1):

Q.   Okay.  I may have misunderstood something you said earlier, but I thought you said that was an instance of there being more money for precipitator work in a final budget. Can you explain what you meant by that?

A.   Yes.  I may have misstated the budget term -- the term budget.

Q.   I see.

A.   My forecast for 2017 is higher than my budget.

Q.   Okay.

A.   So does that make sense?

MR. HYMAN:  Don't care if it makes sense.  She will ask you a question.


17.     Even though Ms. Kyle explained to IPRG's counsel that his objections and

instructions were improper, they continued. *See* Dec 6 Mot. to Compel, Fisher Decl. ¶ 13. For

example, towards the end of the deposition, IPRG's counsel repeatedly interrupted Ms. Kyle's

questioning and the witness's answer (362:22-364:3):

Q.   Okay.  So, as of December 16, 2013, would you agree that the plant was continuing to have far too many six minute exceedances? Would you agree with that statement?

MR. HYMAN:  Objection, foundation you are talking about a plant that he arrived at two weeks before this was written.

MS. KYLE:  Yes.

MR. HYMAN:  Okay.

THE WITNESS:  I don't know if I would phrase it the same way.

BY MS. KYLE: Q.   How would you phrase it?

MR. HYMAN:  Objection, foundation, vague, ambiguous.

THE WITNESS:  I would phrase it saying we strive for.

MR. HYMAN:  You are asking him about this point in time when this was written?

6

MS. KYLE:  Please let the witness finish his answer.

MR. HYMAN:  I want to make sure I understand the question.  You are asking him about an e-mail that was written two weeks after he arrived at the plant about the past history of this facility?  Is that what you are asking him?

MS. KYLE:  That's right.

MR. HYMAN:  Okay.

Ms. Kyle also explained that "Asked and answered is not an appropriate objection to testimony" (40:7-40:8). Nevertheless IPRG's counsel objected on that basis at least 12 more times (149:5, 157:14, 193:1, 207:11, 234:23, 242:9, 247:23, 275:10, 287:2, 300:23, 358:6, 360:21), including attempting to stop questioning on that basis (357:18-358:11):

Q. How many key performance indicators does the Edwards Plant use today that have to do with the opacity?

A. One.

Q. What is that?

A. The running total of six minute average excursions.

Q. Okay.

A. In a percent like this.

Q. Okay.  Running total of six minute average opacity excursions, is that correct?

MR. HYMAN: Objection, asked and answered.  The transcript says what it says.

BY MS. KYLE: Q.  Is that correct?

MR. HYMAN: Why don't you read back his answer?

18.     On December 7 at 7:28 a.m., my co-counsel and I received an email stating that Barry Hyman, IPRG's counsel that defended Mr. Lindenbusch's deposition, would not be attending the scheduled 30(b)(6) and individual deposition of Bill Ackerman on that day. The email asked for confirmation that IPRG could have until the next day to respond to Plaintiffs' Motion. At 7:48 a.m. my co-counsel, Selena Kyle, responded that IPRG "can make this representation about response time."

7

19.    I attended the deposition of Bill Ackerman on December 7. That deposition was taken by my co-counsel, Natural Resources Defense Council attorney Claire Woods. Francis Lyons defended the deposition for IPRG. Bina Joshi also attended for IPRG.

20.    At 4:05 p.m. on December 7, my co-counsel and I received a letter from Ann MacDonald, counsel for IPRG (the letter is attached as Exhibit A). The letter asked Plaintiffs to withdraw their December 6 Motion and requested that Plaintiffs let IPRG know by 7:00 p.m. The letter represented that Ms. Kyle chose to conclude Ted Lindenbusch's November 30 deposition after roughly 6.5 hours on the record. In the letter, IPRG agreed to provide Mr. Lindenbusch for the remaining 30 minutes of time that was not used if Plaintiffs withdraw their motion.

21.    At 6:55 p.m., Ms. Kyle, Ms. Woods, and I called Ms. MacDonald. Because there was no answer, Ms. Kyle left a voicemail stating that we could not agree to withdraw the Motion at that time because we had more information we needed to examine. Ms. Kyle sought confirmation that IPRG was not willing to offer another half day with Mr. Lindenbusch by December 19, as requested in the Motion. Ms. Kyle also asked for the basis of their estimate that Ms. Kyle used only 6.5 hours of deposition questioning.

22.    At 7:03 p.m. Ms. Kyle sent an email to Ms. MacDonald stating that she had left a substantive voicemail message.

23.    Ms. MacDonald sent an email at 7:36 p.m. stating that she understands from the voicemail Plaintiffs would not withdraw their Motion. She confirmed that IPRG was only offering thirty minutes of testimony from Mr. Lindenbusch on December 21.

24.    Ms. Kyle responded at 8:31 p.m. explaining that the voicemail also mentioned we wanted to look at more information and asked again for the basis of IPRG's time estimate.

25.     At 5:14 p.m. the next day, December 8, Ms. Kyle and I called Ms. MacDonald. Because there was no answer, Ms. Kyle left a voicemail stating that we wanted to discuss questions related to the Motion and another scheduling issue.

26.     Ms. MacDonald and Ms. Joshi, returned our call minutes later. Ms. MacDonald confirmed that IPRG was "absolutely not" willing to provide Mr. Lindenbusch for a half-day deposition, pay for any of Plaintiffs costs, or agree to stop the complained of behavior. Ms. MacDonald stated that IPRG hoped for a middle ground, which was an additional thirty minutes time.

27.     Until receiving IRPG's response in opposition on December 8, I and the rest of Plaintiffs' counsel believed Mr. Lindenbusch was available on December 19. IPRG had previously told Plaintiffs that Mr. Lindenbusch and counsel would be available that date but later told Plaintiffs that one of IPRG's attorneys had a conflict on that date. *See generally*, Dec. 9 Kyle Decl. in Supp. of Mot. to Extend ¶¶ 14-16.

28.     On November 21 Plaintiffs served IPRG with a supplemental Rule 30(b)(6) deposition notice and accompanying duces tecum request. *See* Dec. 9 Kyle Decl. in Supp. of Mot. to Extend ¶ 11. The request asked for seven subsets of documents stemming from new information revealed during the November 10 Davis deposition. Three of the document requests fell within Plaintiffs' Remedy Requests for Production and 1 of the requests Plaintiffs later informed IPRG they no longer need. *See* Exhibit B, November 21 Woods Letter.

29.     The next deposition in this case is scheduled for December 13 in Houston, Texas. The deposition on topics 1 and 6 of Plaintiff's 30(b)(6) notice in which IPRG has designated Mr. Lindenbusch to testify, is scheduled for December 21 in Chicago.

I swear under penalty of perjury that the foregoing is true and correct.

9

Evanston, Illinois, December 11, 2017,

/s Ian Fisher
*Counsel for Plaintiff Natural Resources Defense*
*Council*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; RESPIRATORY HEALTH
ASSOCIATION; and SIERRA CLUB, INC.,

Plaintiffs,

v.

ILLINOIS POWER RESOURCES
GENERATING, LLC,

Defendant.

Case No. 13-cv-01181

United States District Judge

Joe Billy McDade

Magistrate Judge

Thomas P. Schanzle-Haskins III

**Exhibit A**



Schiff Hardin LLP
233 South Wacker Drive
Suite 7100
Chicago, IL  60606

T 312.258.5500
F 312.258.5600

schiffhardin.com

December 7, 2017

**VIA E-MAIL**

Ann Alexander (aalexander@nrdc.org)
Jeffery Hammons (jhammons@elpc.org)
Scott Strand (sstrand@elpc.org)
Selena Kyle (skyle@nrdc.org)
Greg Wannier (greg.wannier@sierraclub.org)
Justin Vickers (jvickers@elpc.org)
Faith Bugel (fbugel@gmail.com)
Claire Woods (cwoods@nrdc.com)

Re:     *Natural Resources Defense Council, Inc., et al. v. Illinois Power Resources Generating, LLC*
        **(No. 13-cv-01181)**

Selena:

        I write in response to the Motion to Compel Additional Deposition Time and Costs In Response to Improper and Obstructive Objections; Expedited Ruling Requested (Doc. 160) (the "Motion") that you filed last night at 11:04 p.m. to request that you withdraw the Motion.  If you refuse to withdraw the Motion, then IPRG hereby notifies all Plaintiffs' counsel that Defendant Illinois Power Resources Generating, LLC ("IPRG") may seek its costs pursuant to Federal Rule of Civil Procedure 37 incurred in responding to the Motion.

        As an initial matter, the Motion utterly failed to comply with the requirements for conferring in advance of filing.  At no time did you notify IPRG's counsel of your intention to file this motion, that you planned to challenge IPRG's counsel's conduct at Mr. Robinson's November 16 deposition (which happened over two weeks ago), or your intention to seek a monetary sanction pursuant to Federal Rule of Civil Procedure 37.  *See, e.g., Tallman v. Freedman Anselmo Lindberg LLC*, No. 11-CV-3201, 2012 WL 1108641, at *1 (C.D. Ill. Apr. 2, 2012) ("A party must attempt to resolve a discovery dispute without court action and provide certification of such before filing a motion to compel.").  Your claim that your discussion with IPRG's counsel on the record in Mr. Lindenbusch's deposition satisfies your conference obligation is misplaced.  The only case you rely on for support, *White v. Hodge*, involved a deponent who refused to answer questions after the court compelled him to do so, refused to provide any rationale as to why he was refusing to answer questions, and behaved in such an outrageous manner as to "render[] further negotiations pointless." *See White v. Hodge*, 3:13-CV-1212-NJR-DGW, 2017 WL 2640260, at *2 n.2 (S.D. Ill. May 19, 2017), *report and recommendation adopted sub nom.*, *White v. Baylor*, No. 3:13-CV-1212-NJR-DGW, 2017 WL 2633190 (S.D. Ill. June 19, 2017).  Your declaration reveals ongoing, productive negotiations and compromises between the two of us, totally belying any

argument that further negotiations would be pointless. *See* Decl. of Selena Kyle ¶¶ 10-13. As such, the Motion should be stricken outright and we plan to ask the Court to do just that.

Moreover, your Motion incorrectly characterizes the substance of the deposition questioning and objecting, as well as the legal rules that govern those activities. For example, contrary to your claim that it is improper to object to foundation at a deposition, objections as to foundation are waived if "they could have been obviated or removed if raised at deposition." *Daubach v. Wnek,* No. 00 C 0459, 2001 WL 290181, at *2 (N.D. Ill. Mar. 16, 2001). In addition, you identified only one instance wherein IPRG's counsel actually instructed a witness not answer one of your questions. Throughout the relevant depositions, the witnesses answered the questions posed.

In addition, you did not even use all the available time for Mr. Lindenbusch's deposition. IPRG's counsel did not cut off your questioning. You chose to conclude the deposition after roughly 6.5 hours on the record, and actually said "we have no further questions." *See* Doc. 160, Ex. A at 369-370. You did not leave the deposition open. You did not indicate that you had questions that had not been answered at a time when the witness and counsel were there, as scheduled, to answer your questions. To the contrary, it appears you left the deposition and only afterwards decided you would need more time with Mr. Lindenbusch, perhaps given all the new documents you have requested IPRG collect and produce. To refresh your recollection, the relevant portion of the transcript is copied below:

| | |
|---|---|
| 15 | Q.   Okay.  What about for 2014 at the end of |
| 16 | the calendar year, what was the key performance |
| 17 | indicator value for opacity? |
| 18 | A.   I don't recall. |
| 19 | Q.   Okay.  All right. |
| 20 | Let me take a moment to confer.  I don't |
| 21 | know if I have much left. |
| 22 | |
| 23 | |

Page 370

| | |
|---|---|
| 1 | (Whereupon an off the |
| 2 | record discussion was |
| 3 | held.) |
| 4 | |
| 5 | MS. KYLE:  Back on the record. |
| 6 | We are back from the break.  The |
| 7 | witness is not in the room but his counsel is, and |
| 8 | we have discussed closing the deposition.  We have |
| 9 | no further questions, nor does opposing counsel. |
| 10 | MR. HYMAN:  We will reserve and read |
| 11 | and sign.  Thank you. |
| 12 | |
| 13 | (Deposition concluded at 5:35 p.m.) |
| 14 | |
| 15 | WITNESS FURTHER SAYETH NOT; |
| 16 | BY AGREEMENT, SIGNATURE NOT WAIVED. |
| 17 | |

But what is perhaps most disappointing about your Motion is the total lack of courtesy that it reflects. IPRG's counsel has bent over backwards to work with Plaintiffs' counsel who have repeatedly

requested documents that have already been produced or requested documents that were not requested in accordance with the scheduling order. IPRG's counsel has repeatedly sat on the phone with you to identify specific bates numbers of documents you could not locate and that you incorrectly claimed had not been produced in depositions. We have been understanding, given that certain of Plaintiffs' counsel are new to the matter, but it is clear that effort was in vain and entirely unappreciated.

The Motion now forces IPRG's counsel to take time away from our efforts to search for, review and prepare for production the other documents that you belatedly requested. Given those tasks, and the tight schedule you note in your motion, IPRG suggests it is not a good use of any party's time to continue to litigate the deposition issues you detail in your Motion. As such, we propose, to finally settle the issues in the Motion, that IPRG will offer Mr. Lindenbusch on December 21 for the remaining 30 minutes of time that was not used in his prior deposition if Plaintiffs will withdraw their Motion. If you have any other suggestions as to how to settle this issue without further briefing or Court involvement, we would be happy to discuss. But given the time constraints, please let us know by 7 p.m. tonight if you agree to our proposal and you will withdraw the Motion.

Sincerely,

*/s/ Ann H. MacDonald*

Ann MacDonald

cc:    Barry S. Hyman (bhyman@schiffhardin.com)
       Francis X. Lyons (flyons@schiffhardin.com)
       Bina Joshi (bjoshi@schiffhardin.com)

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; RESPIRATORY HEALTH
ASSOCIATION; and SIERRA CLUB, INC.,

Plaintiffs,

v.

ILLINOIS POWER RESOURCES
GENERATING, LLC,

Defendant.

Case No. 13-cv-01181

United States District Judge

Joe Billy McDade

Magistrate Judge

Thomas P. Schanzle-Haskins III

**Exhibit B**

# NRDC

November 21, 2017

**By email to Counsel for Defendant IPRG:**
Bina Joshi, bjoshi@schiffhardin.com
Barry Hyman, bhyman@schiffhardin.com
Francis Lyons, flyons@schiffhardin.com
Molly Wiltshire, mwiltshire@schiffhardin.com
Ann H. MacDonald, amacdonald@schiffhardin.com

Re:    **1:13-cv-01181,** *NRDC et al. v. IPRG*—production of documents concerning Excess
       Emissions Reports (Plaintiffs' remedy Request for Production 40)

Counsel,

        I am writing regarding IPRG's response to Plaintiffs' Request for Production
Relating to Remedy No. 40 (March 10, 2017), which seeks "each Shift Report and
Excess Emissions Report referencing or pertaining to that event (since 2014)" "[f]or
each event of Excess Emissions reported in a Quarterly Report." Plaintiffs'
Request Definition No. 16 defined "Excess Emissions Report" to mean "a report concerning
Excess Emissions generated using the form contained at IPR-IPRG-079170
(Operations Procedure Attachment A) or the form contained at IPR-IPRG-079171-
72 (Operations Procedure Attachment B), or any *comparable forms* that may have
replaced the identified forms at the Company." (emphasis added). Operations
Procedure Attachment A is titled Excess Emissions Report while Operations
Procedure Attachment B is titled Excess Emission Malfunction & Breakdown
Report.

        In response, IPRG agreed to produce "each Shift Report and Excess
Emissions Report referencing or pertaining to any event of Excess Emissions
reported in a Quarterly Report created on or after January 1, 2014." Def. Resp. to
Pl. RFP No. 40 (May 1, 2017). IPRG did not state that it was withholding any
responsive documents, nor have Plaintiffs received a privilege log identifying any
such withholdings.

        During Mark Davis's deposition on Friday, November 10, Mr. Davis testified
that he does not believe the Edwards Plant uses the Attachment B Excess Emission
Malfunction & Breakdown Report Form. Davis Dep., Rough Tr. at 120:23 – 122:7.
Instead, Mr. Davis explained, the Edwards Plant uses a new "Malfunction and
Breakdown Procedure." *Id.* at 122:9 – 127:3. Mr. Davis testified that the Environmental

**NATURAL RESOURCES DEFENSE COUNCIL**

20 N WACKER DRIVE  |  SUITE 1600  |  CHICAGO, IL  |  60606  |  T 312.663.9900  |  NRDC.ORG

Support Group developed the new procedure and that he has an electronic and hard copy of it. *Id.* at 128:20 – 129:12. He also testified that the Edwards Plant recently began using a Notification by Telephone Form, which Edwards Plant staff complete after reporting excess emissions to Illinois Environmental Protection Agency. *See id.* at 80:4 – 81:9. According to Mr. Davis, he emails the completed Notification by Telephone Forms to the Environmental Support Group, *id.* at 89:13 – 90:8, and he could search for records of these forms, *id.* at 93:11 – 93:18. Mr. Davis also explained that records of opacity exceedances attributable to malfunctions or breakdowns since 2014 could be found in written documentation, *id.* at 94:3 – 94:19, and in email correspondence following the telephone notification of an exceedance to Illinois Environmental Protection Agency, which he titled "the malfunction/breakdown notification e-mail," *id.* at 335:18 – 338:6.

Based on Mr. Davis's testimony and our follow-up review, it appears that IPRG has not produced a complete set of Excess Emissions Reports that are within the scope of Plaintiffs' Request for Production No. 40. This includes, but is not limited to, the Notification by Telephone Form, the Malfunction and Breakdown Procedure, as well as emails and written documentation that have replaced the Attachment B Excess Emission Malfunction & Breakdown Report Form.

If IPRG has, in fact, produced a complete set of all non-privileged documents requested in Plaintiffs' Request for Production No. 40, please provide the Bates ranges where those documents (other than Operations Procedure Attachment A) may be found. If IPRG has not yet produced all such documents, please do so immediately, so that Plaintiffs' counsel have a fair opportunity to review them before the remaining depositions of IPRG fact witnesses, and Plaintiffs' experts have an adequate opportunity to refer to and analyze any relevant material in their initial reports on remedy.

Regards,

Claire Woods

Claire Woods
cwoods@nrdc.org
(415) 875-6143
Counsel for NRDC

Cc (via email): Other parties' counsel