IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 13-cv-1181 |
| ILLINOIS POWER RESOURCES GENERATING, LLC, | ) ) ) ) | |
| Defendant. | ) | |

# OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiffs Motion to Compel Additional Deposition Time and Costs in Response to Improper and Obstructive Objections; Expedited Ruling Requested (d/e 160) (Motion). On November 30, 2017, Plaintiffs took the personal deposition of Ted Lindenbusch, Plant Manager of the Edwards Power Plant operated by Illinois Power. Plaintiffs will also depose Lindenbusch as a representative of Illinois Power in a Rule 30(b)(6) deposition later in December 2017. Plaintiffs assert that Defense counsel obstructed the November 30 deposition. Plaintiffs ask the Court to direct Defendant Illinois Power Resources Generating, LLC (Illinois Power), to make Lindenbusch

available for an additional half-day (3.5 hours) of individual deposition in Chicago, Illinois no later than December 19, 2017; pay $2,130 for the expected court reporting costs for the additional deposition, and for the incremental costs the Plaintiffs incurred to obtain a rush transcript for this Motion; and order Illinois Power's counsel to refrain from improper objections and comments during depositions. For the reasons set forth below, the Motion is ALLOWED IN PART.

Depositions are generally limited to 7 hours, but can be lengthened if additional time if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination. Fed. R. Civ. P. (d)(1). Opposing counsel may object during a deposition. An objection must be stated concisely in a non-argumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a court ordered limitation, or to present a motion to terminate or limit an examination. Fed. R. Civ. P. 30(c)(2). See Specht v. Google, Inc., 268 F.R.D. 596, 599 (N.D. Ill. 2010).

The Plaintiffs argue that defense counsel improperly made argumentative and suggestive objections that impeded the deposition. Plaintiffs further complain that defense counsel improperly directed

Lindenbusch not to answer a question. The Court has carefully reviewed the 370-page transcript of the deposition attached to the Motion. Motion, attached Declaration of Ian Fisher, Exhibit A, Final Transcript of Deposition of Ted Lindenbusch dated November 30, 2017 (Transcript) (d/e 162) (filed separately under seal). The Court identified six instances in which defense counsel made improper argumentative objections. Plaintiffs' counsel was Ms. Kyle, and Defendant's counsel was Mr. Hyman. On page 32, defense counsel Hyman made the following argumentative objection:

```
 2     Q.   The annual budgeting process.
 3           If there is different processes for
 4   different kinds of budgets, let me know and we
 5   can talk about --
 6           MR. HYMAN:  Don't let her know.
 7           You need to ask him questions that he
 8   can understand and answer directly, please.
 9           So, I think there is a question
10   pending that seemed like one those.
11           If you could read it back, I would
12   appreciate it.
13
14                  (Record read as
15                   requested.)
16
17           MR. HYMAN:  So, the question that
18   you asked, what's the annual budgeting process,
19   is that what you want to know?
20           MS. KYLE:  Yes.
21           MR. HYMAN:  Thank you.
```

Transcript, at 32:21. Counsel continued his argumentative objections on pages 33 and 34:

15    Q.   I mentioned earlier that I realize there
16  may be different budgets or categories within
17  budgets at the plant.  So, for example, does the
18  plant have a capital budget?
19            MR. HYMAN:  Objection, form of the
20  question.
21            What you realize isn't important.
22  Please ask him a question without the commentary.
23
1  BY MS. KYLE:
2    Q.   Sir, I realize that you know more about
3  this budgeting process than I do.  So, if I am
4  asking about something that has several
5  components, I just want to make sure that you
6  know that, like --
7            MR. HYMAN:  No.  Excuse me, that's
8  not how it works.
9            If you have a question, ask him a
10  question.  But what I'm objecting to is the
11  predicate to some of the questions imposes upon
12  him an opinion or a statement that may or may not
13  be true and is not part of the record.
14            I think what you should do, and would
15  prefer, if you just ask him a question without the
16  commentary.
17            MS. KYLE:  I would prefer there to
18  be an end to speaking objections.
19            MR. HYMAN:  It is not a speaking
20  objection.  It's a suggestion that would make
21  this go more smoothly.  And I think you know that
22  leading into a question with a predicate or an
23  opinion or a suggestion is an improper question.

<u>Transcript</u>, at 33:15-22, 34:1-23.

Defense counsel made additional argumentative objections on pages 39-40:

```
 8      Q.  Okay.  So you mentioned after people,
 9   including those two people, look at the budget it
10   comes back to you, you refine it, and you
11   resubmit it, is that fair?
12              MR. HYMAN:  Objection, form of the
13   question.  His testimony is what it is.  We don't
14    need to confirm or not an artificial summary of
15   what he said.
16              If you want to know what he said, we
17   can have it read back.
18              MS. KYLE:  You can answer.
19              MR. HYMAN:  No, it's been asked and
20    answered.  He doesn't need to acknowledge whether
21   that's fair or not.  He said what he said.
22              MS. KYLE:  I am trying to understand
23   your testimony and make sure I am getting a
 1   correct summary of the budget process.
 2              MR. HYMAN:  Then ask him a question.
 3   You know what he said.  You can read back the
 4   testimony when the transcript is ready or you can
 5   ask the court reporter to read it back now, but
 6   it is not an appropriate question.
 7              MS. KYLE:  Asked and answered is not
 8   an appropriate objection to testimony.
 9              MR. HYMAN:  I have an appropriate
10   objection to the question that you just asked.
11              He has no obligation to respond to a
12   statement of summary when the testimony is clearly
13   in the record.  You just asked the questions, he
14   gave you direct answers.
15              So I'm objecting to the question,
16   which I think you know is improper.
17              MS. KYLE:  Off the record.
```

<u>Transcript</u>, at 39:8-23, 40:1-17.

Counsel made an argumentative objection on page 60.

```
 6      Q.  Okay.  So, as best you can recall, the
 7   first time you saw it was during your
```

```
8    preparation?
9           MR. HYMAN:  Objection, misconstrues
10   his testimony.
11          He said he didn't recall if he had
12   seen it before.
13          So, next question, please.
14          THE WITNESS:  I don't recall seeing
15   it before that.
```

Transcript, at 60:6-15.

Counsel made an argumentative objection on pages 106-07:

```
7    Q.  Does any of that ring a bell for you?
8           MR. HYMAN:  Same objections.
9    Requires a legal conclusion.
10          THE WITNESS:  It rings a bell. 11
12 BY MS. KYLE:
13   Q.  Okay.  What's the Multi-Pollutant
14   Standard Air Emissions Rule? What's your
15   understanding?
16          MR. HYMAN:  Objection.  Requires a
17   legal conclusion, vague and ambiguous.
18          Are you looking for a legal
19   dissertation analysis of -- if so, could you be
20   more specific?
21 BY MS. KYLE:
22   Q.  You said it rings a bell.  What do you
23   know about –
1           MR. HYMAN:  That misconstrues his
2    testimony.
3           He said in response to a long
4    question, it rings a bell.  That doesn't mean he
5    said that he has done a legal analysis of the
6    Multi-pollutant Standard For Air Emissions Rule.
7    And he's not a lawyer, which you know.
```

Transcript, at 106:7-23, 107:1-7.

Finally, counsel made an argumentative objection on page 234-36:

```
 8      Q.  I realize you don't know the precise
 9   number, but can you give me your best estimate of
10   the plant's power sales revenue for 2016?
11             MR. HYMAN:  Objection, foundation.
12             THE WITNESS:  I don't even have an
13   idea.
14  BY MS. KYLE:
15     Q.  Okay.
16     A.  I could find it, but I don't have it.
17     Q.  How would you find that out if you wanted
18   to?
19     A.  The right reports that report that.
20     Q.  You can't give me even a ballpark number
21   for how much money the Edwards Plant made selling
22   power in 2016?
23             MR. HYMAN:  Objection, asked and
 1   answered.
 2             THE WITNESS:  I can't.
 3
 4  BY MS. KYLE:
 5     Q.  Okay.  Is that not an important
 6   consideration in your position?
 7             MR. HYMAN:  Objection,
 8   argumentative. Don't -- you don't need to answer
 9   that.
10             If you want to ask him if it is part
11   of what he does, that's fine.  Don't argue with
12   him, please. Please rephrase.  Thank you.
13  BY MS. KYLE:
14     Q.  You know, I know from this e-mail, for
15   example, that from time to time you have looked
16   at questions like how much a certain amount of
17   power would be worth to the Edwards Plant.
18     A.  Uh-huh.
19     Q.  So, is that part of your job?
20     A.  Yes.
21     Q.  Okay.  What information would you look at
22   if you wanted to figure out what the plant made
```

```
23   selling power in 2016?
1    A.  It would be hard to find the report that
2    had that number, but I would look through the
3    reports that are available to me.
4    Q.  Why would that number be hard to find?
5    A.  It's not in my -- O&M, it's not in my --
6    my bailiwick.
7    Q.  Okay.  If you wanted to ask someone what
8    that number was, who would you ask?
9    A.  Alan Padget.
```

Transcript, at 234:8-23, 235:1-23, 236:1-9.

Three times, Defense counsel also effectively told Lindenbusch that he did not have to answer. Transcript, at 40 ("He has no obligation to respond to a statement of summary when the testimony is clearly in the record."). Lindenbusch did not answer the question; Transcript, at 60 ("He said he didn't recall if he had seen it before. So, next question, please."); Transcript, at 234 ("Objection, argumentative. Don't -- you don't need to answer that."). The last two times, Lindenbusch answered the questions anyway. Transcript, at 40 ("I don't recall seeing that before."); Transcript, at 236 ("It's not in my -- O&M, it's not in my--my bailiwick.").

Defense counsel made numerous other objections. The Court reviewed those objections and found no improprieties. The objections were generally concise and directed to the point. Defense counsel sometimes asked for clarification, but the comments were not overly argumentative and generally the request for clarification was reasonable. Plaintiffs argue

that the objections were suggestive designed to coach Lindenbusch. The transcript reveals no coaching. Lindenbusch answered the questions and appeared to do so honestly without regard to the objections. Defense counsel also refused a request for a continuing objection on one line of questions, but only made two more objections after declining the offer. Transcript, at 108:1-23, 109:21-22, 110:18-19. The refusal of the standing objection did not impede the deposition. The Court sees no impropriety under Rule 30(c)(2) in defense counsel's objections in the rest of the 370 page transcript.

    Plaintiffs also complain about the depositions of Christopher Robinson. Robinson was also deposed individually and as a corporate representative under Rule 30(b)(6). Plaintiffs cite similar argumentative objections in those depositions. Plaintiffs do not ask any relief with respect to Robinson's deposition. Plaintiffs cite the deposition as evidence of a pattern of improper conduct.

    The Court finds that some extension of Lindenbusch's deposition is appropriate to fairly examine him. Fed. R. Civ. P. 30(d). The six improper argumentative objections impeded the deposition slightly, and defense counsel improperly indicated that Lindenbusch did not have to answer three questions, which violated Rule 30(c)(2). Therefore, the Court will

authorize an additional hour of deposition time for the personal deposition of Ted Lindenbusch.  The Court suggests that the parties arrange for the additional deposition time to occur in conjunction with the Rule 30(b)(6) deposition of Lindenbusch scheduled for later this month. The Court will not require the deponent Lindenbusch to travel to Chicago for the additional hour of deposition.

The Plaintiffs argue for a longer extension of the deposition.  The cases on which the Plaintiffs rely, however, involved much more egregious behavior and have no application to this situation.  See e.g., Hall v. Clifton Precision, a Div. of Litton Sys., Inc., 150 F.R.D. 525 (E.D. Pa. 1993) (attorney instructed witness to confer with him before answering questions); LM Ins. Corp., v. ACEO, Inc., 275 F.R.D. 490 (N.D. Ill. 2011) (attorney repeatedly interrupted and stopped witness from answering questions, and sometime conferred with the deponent before allowing her to answer questions); Alford v. Aaron Rents, Inc., 2010 WL 2765260 (S.D. Ill. May 17, 2010) (extensive improper conduct by opposing counsel throughout the discovery process).  The Court will not extend the deposition further.

The Court also will not impose any additional sanction for the six argumentative objections and the three improper statements that Lindenbusch did not have to answer a particular question.  Lindenbusch

answered two of the three questions.  The six improper argumentative objections impeded the deposition only slightly.  The Court believes the additional hour of deposition is a sufficient remedy under the circumstances.  The cases cited by Plaintiffs, again, involved more egregious behavior.  <u>See</u> <u>e.g.</u>, <u>Specht</u>, 268 F.R.D. at 601 (Counsel made "many improper speaking objections" and many improper assertions of privilege.  The conduct was "deliberately evasive and calculated to thwart discovery.").  A further sanction is not appropriate in this case.

      THEREFORE, IT IS ORDERED that Plaintiffs Motion to Compel Additional Deposition Time and Costs in Response to Improper and Obstructive Objections; Expedited Ruling Requested (d/e 160) is ALLOWED in part and DENIED in part.

ENTER:   December 14, 2017

                                                   *s/ Tom Schanzle-Haskins*
                                               TOM SCHANZLE-HASKINS
                                      UNITED STATES MAGISTRATE JUDGE