**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| NATURAL RESOURCES | ) | |
| DEFENSE COUNCIL, INC.; | ) | |
| RESPIRATORY HEALTH | ) | |
| ASSOCIATION; AND | ) | |
| SIERRA CLUB, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 13-cv-1181 |
| | ) | |
| ILLINOIS POWER | ) | |
| RESOURCES | ) | |
| GENERATING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

   This matter comes before the Court on Plaintiffs' Motion to Compel

Answers to Questions on IPRG's Consideration of Measures to Control

Opacity or Particulate Matter Pollution from the Edwards Power Plant (d/e

171) (Motion).  Plaintiffs ask the Court to compel Defendant Illinois Power

Resources Generating, LLC (Illinois Power or IPRG) to answer certain

questions that were posed at the Rule 30(b)(6) deposition of Ted

Lindenbusch.  For the reasons set forth below, the Motion is DENIED.

The District Court found Illinois Power liable for violations of the Clean Air Act because the smoke stack emissions from the Edwards Power Plant (Plant) exceeded the limits on opacity caused by particulate material (sometimes referred to as PM) in the emissions.  <u>Opinion and Order entered August 23, 2016 (d/e 124)</u>, at 49.  The matter is set for a trial on remedies on March 4, 2019.  <u>Text Order entered December 14, 2017</u>.  The parties are engaged in discovery for the remedy phase of the matter.

Plaintiffs noticed a Rule 30(b)(6) deposition of Illinois Power.  The first topic of inquiry for the deposition (Topic 1) was:

> Steps considered, analyzed, or evaluated (and whether or not those steps were taken or rejected) that would have the effect of controlling or otherwise reducing opacity or [particulate matter] emissions at the Facility, including, by way of example repairs or other improvements to existing ESPs, installation of new or supplemental ESPs (a/k/a/ helper ESPs), and/or installation of a baghouse.

<u>Motion, attached Declaration of Ian Fisher in Support of Motion to Compel Answers to Questions of IPRG's Consideration of Measures to Control Opacity or Particulate Matter Pollution from the Edwards Power Plant (Fisher Declaration)</u> ¶ 4. The Edwards Plant used electrostatic precipitators (ESPs) to remove particulate pollution from the smoke stack emissions from the Edwards Plant.  <u>See</u> <u>Motion</u>, at 4.

Illinois Power designated Lindenbusch to be its representative to testify regarding Topic 1.  Lindenbusch has been manager of the Plant since 2013.  Plaintiffs' counsel questioned Lindenbusch about efforts to control particulates.  As part of these inquiries, Plaintiffs' counsel asked about Illinois Power's capital spending plans (Spending Plans) used in its regular budgeting process.  Plaintiffs asked about a Spending Plan formulated in 2013 for 2014-2018, one formulated in 2014 for 2015-2019, one formulated in 2015 for 2016-2020, and one formulated in 2016 for 2017-2021.  Fisher Declaration, ¶ 3 and Exhibit A, see Transcript of Rule 30(b)(6) Deposition Ted Lindenbusch dated December 21, 2017 (filed under seal d/e 173) (Deposition), at 179.

The 2016-2020 Spending Plan included a total of $2.3 million in capital spending in 2017 and 2018 on upgrades to particulate pollution controls on Unit 2 of the Edwards Plant and $8.9 million in upgrades to particulate pollution controls on Unit 3 of the Edwards Plant, all to be completed in 2017 and 2018.  Fisher Declaration, ¶ 13.[1]  The $2.3 million upgrade on Unit 2 included an estimate of $200,000 in removal costs.  Deposition, at 128, 135-36.  The $8.9 million in upgrades on Unit 3 included

---

[1] The $2.3 million in upgrades on Unit 2 were identified in the 2016-2020 planning budget as 53357-EDWe Electrostatic Precip Upg," and the $8.9 million in the 2016-2020 budget as 53356-ED 3 Electrostatic Pr SPID3149.  Deposition, at 135-36; Fisher Declaration, Exhibit B, Illinois Power Five-Year Capital Spending Planning Budgets (filed under seal d/e 173), at 5.

$800,000.00 in removal costs.  Id.  The 2017-2021 Spending Plan included a total of $1.1 million of spending in upgrades on Unit 2 and $4.00 for Unit 3.  The $4.00 were four $1.00 entries that Lindenbusch described as placeholder entries.  Id. ¶ 18.  He put the placeholder sums of $1.00 in these line items to keep the budget lines in the planning budget for future consideration.  Deposition, at 190-93.

During the course of the Lindenbusch Rule 30(b)(6) deposition, Lindenbusch refused to answer questions regarding line items that set forth the $2.3 million and $8.9 million in the 2016-2020 spending plan and the $1.1 million and $4.00 in 2017-2021 spending plan (Line Items).  The questions included whether the Line Items contemplated installation or upgrades to various means to reduce particulate pollution and why the plans changed.  The questions asked about consideration of upgrades to the existing ESPs, installation of additional ESPs, and about adding a baghouse to the Plant.  A baghouse is another means to limit particulate pollution.  See Motion, at 4.  Lindenbusch refused to answer most of the Plaintiffs' questions regarding the Line Items.  He and his counsel asserted attorney-client and work product privileges.  See e.g., Deposition, at 153-54.

The Plaintiffs asks the Court overrule Illinois Power's claims of privilege and order Illinois Power to provide written answers to the following questions (Questions) that Lindenbusch refused to answer:

a. "What about the option of moving a baghouse; what is the last time that IPRG considered the option of moving a baghouse to the Edwards plant?" <u>Motion</u>, Exhibit A <u>Transcript of Rule 30(b)(6) Deposition of Ted Lindenbusch(Exhibit A)</u>, at 30:5-9. "When was that?" *Id.* at 32:20.

b. "When was that step, the complete rebuild of the units two and three precipitators, last considered by IPRG?" *Id.* at 35:13-15.

c. "Has IPRG ever considered adding specific collection area to any of the precipitators at the Edwards plant?" *Id.* at 36:16-18.

d. "Since . . . February 10th, 2015; has IPRG received any proposals to install new equipment that could help to reduce opacity or PM emissions at Edwards?" *Id.* at 60:13-17.

e. [Referring to the $2.3 million and $8.9 million entries in the Line Items] "And why did you come up with that concept of the two-year project?" *Id.* at 135:1-2.

f. [Referring to the $2.3 million and $8.9 million entries in the Line Items]: "What accounts for the difference in the figures for the unit two precipitator upgrade and the unit three precipitator upgrade on this page of the exhibit?" *Id.* at 136:3-6. "What other factors are you aware of?" *Id.* at 137:1-2. "What other factors are you aware of besides the one you just mentioned which is the different size of the two units?" *Id.* at 137:8-10. "What would be different about the scope?" *Id.* at 137:19-20.

g.  [Referring to the $2.3 million and $8.9 million entries in the Line Items]: "What kind of work needed to be done to the unit two precipitator?" *Id.* at 138:14-15.

h.  "Going back to the numbers that you put into the 2016 to 2020 capital forecast. . . . How did you come up with these figures?  And we can go one unit at a time. So how did you come up with a total of $2.3 million in capital spending for 2017 through 2018 for the unit 2 ESP upgrade?" *Id.* at 183:3-11. "What was that scope?" *Id.* at 183:24.

i.  [Referring to the $2.3 million and $8.9 million entries in the Line Items]: "Why did the scope change?" *Id.* at 187:5. "How did the scope change?" *Id.* at 188:13.

j.  "Did the 2016 to 2020 capital forecast for 2017 capital spending on the ESP unit 2 upgrade, did that include all the same work that you just described that was done?" *Id.* at 190:10-14.

k.  [Referring to the removal costs included in the $8.9 million for Unit 3 in the Line Items]: "So let's back up to the $800,000 figure. Same row under 2017 total removal. What money does that include for work that was not forecasted at the direction of counsel in anticipation of this litigation?" *Id.* at 228:21-229:2.

l.  "Can you tell me anything more about the $200,000 figure for total removal costs in 2017 in the [Line Items for the $2.3 million for Unit2]." *Id.* at 231:3-5.

Fisher Declaration, ¶ 22; Motion, at 13-14.

Counsel for Illinois Power stated that the answers to the questions about the Line Items were privileged because counsel directed Lindenbusch to put those numbers in the Line Items.  Counsel stated that

the reasons behind counsel's decision to insert those numbers were privileged attorney work product and attorney-client communications. See e.g., Deposition, at 212-13. Counsel explained that the parties were engaged in settlement negotiations from November 2015 to May 2016. The $2.3 million and the $8.9 million were placed in the 2016-2020 budget as placeholders in the event that settlement was reached. The numbers were removed once the settlement talks ended without resolution of this case. Illinois Power Resources Generating, LLC's Response to Plaintiffs' Motion to Compel Production of Attorney Work Product and Attorney-Client Communications (d/e 174) (Response), attached Declaration of Francis X. Lyons (Lyons Declaration), ¶ 6; Deposition, at 212-14, 218-31. The $2.3 million and the $8.9 million figures came from information that Illinois Power attorneys directed Illinois Power upper management to obtain and develop (Research). Illinois Power's counsel wanted the Research to aid in settlement negotiations and the remedy phase of the case. Outside experts developed some of the Research. The experts were retained "for the sole purpose of developing information to aid with the settlement negotiations and remedy phase trial." Lyons Declaration, ¶ 5. Illinois Power asserts that the information underlying the Line Items is privileged under both the attorney-client and work product privileges. Illinois Power

also claims that the information provided by the outside consultants is not discoverable pursuant to Federal Rule of Civil Procedure 26(b)(4)(D).

ANALYSIS

To establish the attorney-client privilege, Illinois Power must show that the Questions seek (1) a confidential communication; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship. United States v. BDO Seidman, LLP, 492 F.3d 806, 815 (7th Cir. 2007). The privilege only extends to "those communications which 'reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance' fall within the privilege." Id. (quoting United States v. Frederick, 182 F.3d 496, 500 (7th Cir. 1999)). The privilege further "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. 383, 395 (1981).

The work product privilege is set forth in Federal Rule of Civil Procedure 26(b)(3):

 **(3)** *Trial Preparation: Materials.*

**(A)** *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant,

surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

>**(i)** they are otherwise discoverable under Rule 26(b)(1); and

>**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**(C)** *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

>**(i)** a written statement that the person has signed or otherwise adopted or approved; or

>**(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

Fed. R. Civ. P. 26(b)(3).  The work-product privilege "protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case."  <u>Sandra T.E. v. South Berwin School District 100</u>, 600 F.3d 612, 618 (7th Cir. 2010).  The purpose of the privilege is to "protect an attorney's mental impressions and opinions

against disclosure and to limit the circumstances in which attorneys may piggy-back on the research and thinking of their more diligent adversaries." United States v. Dean Foods Co., 2010 WL 3980185, at *2 (E.D. Wis. October 8, 2010). The Supreme Court explained when it adopted this privilege, that "under ordinary circumstances, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to dangers of inaccuracy and untrustworthiness." Hickman v. Taylor, 329 U.S. 495, 513 (1947).

The Supreme Court, however, also said that the underlying facts, themselves, are not protected, "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, a party may compel the other to disgorge whatever facts he has in his possession." Hickman, 329 U.S. at 507. The work product privilege, therefore, extends to any documents prepared by an attorney in anticipation of litigation that contain statements by individuals that are responsive to this Interrogatory, or to recitations of statements contained in those documents.

Rule 26(b)(4)(D) provides, in relevant part:

**(D)** *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation

or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

> **. . . .**

> **(ii)** on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D).

The Court has carefully reviewed the submissions of the parties. The Court finds that the Questions sought information contained in the Research used to establish the Line Items. Some of the questions do not directly ask about the Line Items, but Lindenbusch's responses show that the answer would require revealing information related to the Line Items. Lindenbusch discussed plans for changes to the particulate pollution controls before the end of 2015 and after 2016, but would not answer questions related to that limited period. See Deposition, at 21-30, 38-60,64-134, 142-53, 154, 157-83, 189-90, 193-209. Lindenbusch's responses indicate that he did not answer because the response would have disclosed information contained in the Research or some aspect of counsel's settlement negotiating strategy.

The Court finds that the Research is protected by the work product privilege. The Research was developed to assist in the litigation of this case. The Research, therefore, reflects the thought processes and mental

impression of Illinois Power's attorneys. The work product privilege protects the documents containing the Research and recitations of statements in the documents. <u>Hickman</u>, 329 U.S. at 513. The Questions effectively asked Lindenbusch to recite information from the Research documents, and so, sought information protected by work product. Those portions of the Research prepared by outside experts retained to assist in litigation, but not testify, is also protected by Rule 26(b)(4)(D).

The Plaintiffs argue that the Research is not covered by the work product privilege because the Research was not prepared for litigation. The Plaintiffs argue that Illinois Power used the Research for routine business purposes. Illinois Power used the Research both to establish the Line Items and for this litigation. The Line Items were part of Illinois Power's routine budgeting process. The Plaintiffs argue that the Research, therefore, was prepared for a business purpose, not just for this litigation. The Plaintiffs argue that such dual-purpose documents are not covered by the work product privilege.

The Court disagrees. "Where a document is prepared because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection because it is also created in order to assist with a business decision. <u>Caremark, Inc. v. Affiliated Computer Services, Inc.</u>,

195 F.R.D. 610, 614 (N.D. Ill. 2000); <u>see</u> <u>Jaffe Pension Plan v. Household</u> <u>Int'l, Inc.</u>, 237 F.R.C. 176, 182 (N.D. Ill. 2006) ("'work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision.'") (quoting <u>United States v. Adlman</u>, 134 F.3d 1194, 1199 (2<sup>d</sup> Cir. 1998)).

Plaintiffs rely on <u>Valero Energy Corp. v. United States</u>, 569 F.3d 626 (7th Cir. 2009); <u>United States v. Frederick</u>, 182 F.3d 496 (7th Cir. 1999); and <u>Loctite Corp. v. Fel-Pro, Inc.</u>, 667 F.2d 577 (7th Cir. 1981), to support their position "dual purpose" documents are not protected by work product. These cases do not apply here.   In <u>Valero</u> and <u>Frederick</u>, the parties tried to extend the work product privilege to documents that contained non-attorney work.  In <u>Valero</u> and <u>Frederick</u>, the attorney was giving tax accounting advice and tax preparation services.  The Seventh Circuit held that the accounting work for tax preparation was not privileged because no accountant-client privilege exists.  The Court held that a party could not transform non-privileged accounting documents into privileged material just by having an attorney perform those functions,

> Accounting advice, even if given by an attorney, is not privileged.
>
>      . . . For starters, the preparation of tax returns is an accounting, not a legal service, therefore information transmitted so that it might be used on a tax return is not

privileged. On the other side of the spectrum, communications about legal questions raised in litigation (or in anticipation of litigation) are privileged. Of course, there is a grey area between these two extremes, but to the extent documents are used for both preparing tax returns and litigation, they are not protected from the government's grasp.

Valero Energy, 569 F.3d at 630 (internal citations omitted); accord Frederick, 182 F.3d at 500-01. The Research in this case was not tax accounting. The Research was information collected and created to assist them in negotiating settlement and litigating this case. Valero Energy and Frederick do not apply.

The Loctite case was a patent infringement case. The plaintiff in Loctite refused to produce "the data and test results on which Loctite based its infringement charges." Loctite Corp., 667 F.2d at 579. The Loctite court denied work product privilege claims because factual test results and data are not protected by the work product privilege. Id. at 582; see Hickman, 329 U.S. at 507 (underlying facts in a privileged document are not protected). The Questions here did not seek underlying technical factual data on which Illinois Power bases its defenses. The Questions ask when did Illinois Power last consider certain changes to the Plant's pollution control equipment, such as adding a baghouse; and what changes did Illinois Power consider making that are reflected in the Line Items. Illinois Power's counsel has shown that Illinois Power considered the changes

responsive to the Questions as part of its settlement strategy in 2015 and 2016, and the changes were made because settlement was not reached. The details of settlement strategy are exactly the kind of attorney mental impressions and opinions that the work product privilege is designed to protect. The <u>Loctite</u> case does not apply. The information sought by the Questions is protected attorney work product.[2]

The Plaintiffs may secure answers to the Questions if the Plaintiffs show a "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(a)(ii).[3] The Plaintiffs argue that they need this information to prove issues relevant to the remedies trial. Plaintiffs argue they need the information to respond fairly to Illinois Power's arguments about technical feasibility of additional pollution controls to stop future violations:

> Plaintiffs need the information to fairly anticipate and prepare to respond (including through their own experts' reports) to IPRG arguments and testimony concerning the relative cost and technical feasibility of various pollution-control measures. These include measures IPRG has yet to take, or did not take in time to avoid the Edwards Plant's illegal pollution during the liability period. Technical and other factual information about IPRG's consideration of possible pollution controls for opacity

---

[2] The portion of the Research performed by outside experts who will not testify is also protected by Rule 26(b)(4)(D).
[3] Any portion of the Research protected by Rule 26(b)(4)(D) may only be discoverable under exceptional circumstances when the Plaintiffs are unable to obtain opinions on the same subjects by other means.

and particulate matter is directly relevant to the question of what injunctive relief the Court should order to ensure that the Edwards Plant does not continue violating its opacity and particulate-matter limits.

Motion, at 11. The Court disagrees. The Plaintiffs have technical information about the Plant. See Lyons Declaration, ¶ 8. The Plaintiffs have their own experts who can analyze this data and provide opinions on measures to stop future violations. Furthermore, the Plaintiffs will receive Illinois Power's expert reports in due course. See Text Order entered December 14, 2017. The Plaintiffs' experts will be able to review those materials, including the basis for their opinions. Plaintiffs' experts will be able to respond to Illinois Power expert opinions and the basis for those opinions.

Plaintiffs also argue that answers to the Questions are relevant to determining the appropriate civil penalty, if any. Illinois Power's good faith efforts to comply with the Clean Air Act is a factor in determining a civil penalty. See 42 U.S.C. §7413(e)(1). The Plaintiffs argue that the planned improvements represented by the Line Items are directly relevant to Illinois Power's good faith efforts at compliance. The Court disagrees. The Line Items represent Illinois Power's strategies for settlement of this action in 2015 and 2016. When the parties did not settle in 2016, the numbers were removed from the Spending Plans. The Line Items, and the information

underlying them, do not relate to good faith efforts at compliance.  The

Plaintiffs have failed to show a need for the Research.  Illinois Power's

claims of privilege are sustained.

THEREFORE, IT IS ORDERED:  Plaintiffs' Motion to Compel

Answers to Questions on IPRG's Consideration of Measures to Control

Opacity or Particulate Matter Pollution from the Edwards Power Plant (d/e

171) is DENIED.

ENTER:   January 22, 2018

_____s/ *Tom Schanzle-Haskins*_____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE