IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; RESPIRATORY HEALTH
ASSOCIATION; and SIERRA CLUB, INC.,

Plaintiffs,

v.

ILLINOIS POWER RESOURCES
GENERATING, LLC,

Defendant.

Case No. 13-cv-01181
United States District Judge
Joe Billy McDade

Magistrate Judge
Thomas P. Schanzle-Haskins III

**PLAINTIFFS' OPPOSITION TO DEFENDANT ILLINOIS POWER
RESOURCES GENERATING, LLC'S MOTION TO STRIKE
THE DECLARATION OF IAN FISHER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INDEX OF EXHIBITS ...................................................................................................... iv

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 5

I.      The Fisher Declaration's explanations of how Plaintiffs determined the number of
        violations amenable to summary judgment are admissible .................................... 5

        A.      The Fisher Declaration's explanations of how Plaintiffs compiled their summary
                exhibits are admissible under Federal Rule of Evidence 1006 .............................. 5

        B.      IPRG has shown that it does not need discovery to understand Plaintiffs' violation
                counts ................................................................................................................. 10

II.     The Fisher Declaration properly authenticates the exhibits IPRG challenges, many of
        which are also self-authenticating .................................................................................. 12

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ameropan Oil Corp. v. Monarch Air Serv.*,
No. 92-cv-3450, 1994 WL 86701 (N.D. Ill. Mar. 16, 1994) ...............................7

*C. States, S.E. & S.W. Areas Pension Fund v. Transport Serv. Co.*,
No. 00-cv-6181, 2009 WL 424145 (N.D. Ill. Feb. 17, 2009) .............................6

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*,
686 F. Supp. 2d 663 ...................................................................................2

*Deere & Co. v. Ohio Gear*,
462 F.3d 701 (7th Cir. 2006) ................................................................ 11-12

*Dreiling v. Am. Express Co.*,
458 F.3d 942 (9th Cir. 2006) ...................................................................13

*Fenje v. Feld*,
301 F. Supp. 2d 781 (N.D. Ill. 2003) .........................................................14

*Hennessy v. Penril Datacomm Networks*,
69 F.3d 1344 (7th Cir. 1995) ...................................................................13

*Hood v. Dryvit Sys., Inc.*,
No. 04-cv-3141, 2005 WL 3005612 (N.D. Ill. Nov. 8, 2005) .........................14

*SEC v. Gorsek*,
222 F. Supp. 2d 1099 (C.D. Ill. 2001) ........................................................14

*Smith v. Shawnee Library Sys.*,
60 F.3d 317 (7th Cir. 1995) .....................................................................13

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ...................................................................12

*United States v. All Assets & Equip. of W. Side Bldg. Corp.*,
58 F.3d 1181 (7th Cir. 1995) ...................................................................11

*United States v. B&W Inv. Prop.*,
38 F.3d 362 (7th Cir. 1994) ......................................................................1

ii

*United States v. Brown,*
    688 F.2d 1112 (7th Cir. 1982) .......................................................................13

*United States v. Dish Network, LLC,*
    75 F. Supp. 3d 942 (C.D. Ill. 2014) ...........................................................14

*United States v. Hamaker,*
    455 F.3d 1316 (11th Cir. 2006) .......................................................................7

*United States v. Harvey,*
    117 F.3d 1044 (7th Cir. 1997) ................................................................. 12-13

*United States v. White,*
    737 F.3d 1121 (7th Cir. 2013) .........................................................................8

**Regulations**

35 Ill. Admin. Code § 212.123(b)...........................................................................4

**Rules**

Fed. R. Civ. P. 56(d) .......................................................................................11, 12

Fed. R. Evid. 901 .................................................................................................12

Fed. R. Evid. 1006 ...........................................................................1, 5, 7, 8, 10

## INDEX OF EXHIBITS

| Exhibits | Letter |
|---|---|
| PDF image of excerpt from Microsoft Excel spreadsheet reflected in Ex. A to Plaintiffs' Motion for Partial Summary Judgment, ECF No. 184-4 | FA |
| *COUNTA Function*, Microsoft, https://support.office.com/en-us/article/counta-function-7dc98875-d5c1-46f1-9a82-53f3219e2509 (accessed Oct. 2, 2018) | FB |
| *SUM Function*, Microsoft, https://support.office.com/en-us/article/sum-function-043e1c7d-7726-4e80-8f32-07b23e057f89 (accessed October 2, 2018). | FC |
| Pl. Second Suppl. Obj. & Resp. to Certain of Def. First Set of Interrog. Related to Remedy (Sept. 21, 2017) | FD |
| PDF image of Microsoft Excel spreadsheet entitled "Dates of Opacity Violations Spreadsheet" | FE |
| PDF image of Microsoft Excel spreadsheet entitled "Dates of PM Violations Spreadsheet" | FF |
| Pl. Seventh Suppl. Obj. & Resp. to Def. First Set of Interrog. Related to Remedy (Mar. 14, 2018) | FG |
| PDF image of tabs in Microsoft Excel spreadsheet entitled "2018-03-14-Reported Exceedances Pls. Currently Believe Dont Fall in the Am. Compl. Par. 29 Categories" | FH |

iv

## INTRODUCTION

With their motion for partial summary judgment on remedy, Plaintiffs attached summary exhibits listing and enumerating the instances in which the undisputed facts show that Edwards violated its permit during the liability- and post-liability periods. These exhibits are nearly identical to the exhibits Plaintiffs submitted, Illinois Power Resources Generating, LLC (IPRG) did not dispute, and the Court accepted during the summary judgment proceedings on liability. In addition to explaining how they compiled these exhibits in their summary judgment remedy brief, Plaintiffs also submitted for the Court's convenience a declaration explaining in more detail how they applied their legal theory to the undisputed facts to reach the violation counts on which they based their motion. *See* Decl. of Ian Fisher (Fisher Decl.), ECF No. 184-2.

Rather than provide their own violation counts, or genuinely dispute Plaintiffs', IPRG seeks to strike substantial portions of the Fisher Declaration that describe Plaintiffs' process. IPRG also seeks to strike parts of the Declaration that authenticate, among others, documents IPRG itself produced in discovery. IPRG's motion is baseless. The summary exhibits, and the Fisher Declaration's description of those exhibits, are admissible under Federal Rule of Evidence 1006 as summary evidence that compiles and counts violations based on the application of Plaintiffs' legal theories to undisputed facts provided by IPRG. The Declaration properly authenticates all the documents it describes, many of which are also self-authenticating. IPRG's motion to strike is little more than an attempt to needlessly delay until trial the adjudication of issues as to which there is no factual dispute, including thousands of self-reported violations during the liability and post-liability periods. The Court should deny the motion.

## BACKGROUND

The Clean Air Act is a strict liability statute. *United States v. B&W Inv. Prop.*, 38 F.3d 362, 367 (7th Cir. 1994). Summary judgment is an appropriate and ideal mechanism for

adjudicating violations of the Act when the evidence for those violations is—as is the case here—based entirely on self-reported exceedances of a permit. *See Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 680 (E.D. La. 2010) (collecting cases). As this Court explained in its summary judgment decision on liability, "[i]f IPRG cannot produce evidence that would allow it to prove an affirmative defense for these [self-reported] exceedances, summary judgment for Plaintiffs is appropriate." Op. & Order, ECF No. 124, at 24. The Court then granted summary judgment for Plaintiffs "on all opacity exceedances in Counts One and Two for which they ha[d] moved for summary judgment" and "on all exceedances for which they have moved for summary judgment with respect to Count Three except for those opacity exceedances that occurred while the relevant unit was off-line." *Id.* at 49.

With their motion for summary judgment on liability, Plaintiffs attached two summary exhibits listing all the opacity exceedances and particulate matter exceedances for which they sought summary judgment. *See* ECF Nos. 104-4, 104-5. Plaintiffs explained the contents and meaning of those summary exhibits in their summary judgment brief on liability. ECF No. 104-1, at 7-8 & n.8 (explaining that Plaintiffs were not seeking summary judgment for self-reported exceedances in highlighted rows). After the Court issued its summary judgment decision on liability, the parties submitted corrected, stipulated lists of opacity and particulate matter exceedances during the liability period. *See* ECF Nos. 135-1, 135-2; *see also* Stip. of Dismissal, ECF No. 135, at 2 (cross-referencing explanation of the lists in Plaintiffs' summary judgment brief on liability).

To narrow the issues for the upcoming remedy trial, Plaintiffs moved for summary judgment on the maximum civil penalty available for the liability-period violations for which the Court has already found IPRG liable, and summary judgment on some of the times IPRG has

2

violated the Clean Air Act since the end of the liability period. Pl. Opening Mem. Supp. Partial Summ. J. on Remedy (Pl. Summ. J. Remedy Br.), ECF No. 184-1, at 17-20, 29-32. Plaintiffs again submitted summary exhibits, filed under letters A and U, listing the self-reported exceedances on which they based their motion. *See* Ex. A, ECF No. 184-4 (liability-period violations); Ex. U, ECF No. 184-30 (post-liability violations). The first page of each exhibit includes total counts of the number of six-minute violations and violating "events" (continuous periods of violation longer than six minutes) reflected in the lists. *See* Ex. A, ECF No. 184-4, at 1; Ex. U, ECF No. 184-30, at 1. For the liability-period violations, Plaintiffs also included a conservative summation of the maximum civil penalty. *See* Pl. Summ. J. Remedy Br. 18-19 & n.4 (explaining civil-penalty calculation); Ex. A, ECF No. 184-4, at 1.

Plaintiffs explained in their summary judgment brief how they applied their legal theory to undisputed facts to reach the violation counts in these summary exhibits. Pl. Summ. J. Remedy Br. 18-19 (liability-period violations and potential civil penalty), 30-32 (post-liability violations). Upon request, Plaintiffs also provided IPRG with a copy of each summary exhibit in its native Microsoft Excel format. *See* ECF No. 203-1, at 1-2.

The Fisher Declaration authenticates various exhibits to Plaintiffs' summary judgment motion and provides, for the Court's convenience, some additional detail on how Plaintiffs compiled the summary exhibits. Fisher Decl. ¶¶ 5-16 (liability-period violations), ¶¶ 47-69 (post-liability violations).

For the liability-period violations, Plaintiffs began with the parties' stipulated lists of opacity and particulate matter exceedance events, *see* ECF Nos. 135-1, 135-2, and removed events for which Plaintiffs had not sought summary judgment, *see* Fisher Decl. ¶¶ 3, 6, 12. The remaining events are those for which the Court found IPRG liable in 2016. Plaintiffs took those

3

events, determined how many six-minute violations they reflected (by adding the length of all the exceedance events and dividing by six), and tallied the number of days on which there was an opacity violation and the number of days on which there was a particulate matter violation. *See* Pl. Summ. J. Remedy Br. 18-19; Ex. A, ECF No. 184-4, at 1 (listing number of opacity and particulate exceedance events, six-minute violations, and days with violations); Fisher Decl. ¶¶ 6-7, 9, 13-14. Plaintiffs then multiplied the number of days of each kind of violation by the relevant statutory maximums to calculate a maximum civil penalty. Pl. Summ. J. Remedy Br. 18-19; Ex. A, ECF No. 184-4, at 1; Fisher Decl. ¶¶ 9-10, 14. Rather than do this counting, addition, division, and multiplication for thousands of exceedances by hand, Plaintiffs used formulas in Microsoft Excel. Fisher Decl. ¶¶ 6-7, 13-14.

For the post-liability-period violations, Plaintiffs compiled into Excel workbooks (the basis for Exhibit R to Plaintiffs' summary judgment motion) all the opacity exceedances listed in IPRG's self-reported excess emission reports for July 2014 through June 2018. *See* Pl. Summ. J. Remedy Br. 30; Fisher Decl. ¶¶ 47-49; Ex. R, ECF No. 184-28. Plaintiffs then used a combination of Excel formulas and manual review to remove those exceedances that are excused by the 8-minute exemption in 35 Illinois Administrative Code § 212.123(b), using the same rules they applied, IPRG did not dispute, and the Court accepted, for the liability-period exceedances. Pl. Summ. J. Remedy Br. 30; Fisher Decl. ¶ 50, 64; *see also* Op. & Order, ECF No. 124, at 4 n.8. Plaintiffs next excluded all exceedances from July 2014 through December 2017 that IPRG's expert had opined were attributable to startup, and all that IPRG's expert had opined were attributable to malfunction or breakdown and for which IPRG had provided required notification to Illinois EPA. Pl. Summ. J. Remedy Br. 30-32; Fisher Decl. ¶¶ 58, 60; *see also* Op. & Order, ECF No. 124, at 39-46 (describing the affirmative defense for startup, malfunction, and

4

breakdown). Plaintiffs also excluded all exceedances from January 2018 through June 2018 for which there was evidence that the exceedance may have been attributable to startup or for which there is some record that IPRG provided notification of a malfunction or breakdown to Illinois EPA. Pl. Summ. J. Remedy Br. 32; Fisher Decl. ¶¶ 65, 68. Plaintiffs then counted the total number of remaining, unexcused exceedance events for the post-liability period through June 2018 and determined how many six-minute violations those events reflected (by adding the length of all the exceedance events and dividing by six). *See* Pl. Summ. J. Remedy Br. 32; Fisher. Decl. ¶¶ 62 & n.3, 69 & n.5; *see also* Ex. U, ECF No. 184-30, at 1. Once again, rather than do this counting, addition, subtraction, and division for thousands of exceedances entirely by hand, Plaintiffs relied on formulas in Microsoft Excel. *See, e.g.*, Fisher Decl. ¶ 50.

IPRG has moved to strike parts of the Fisher Declaration, including its explanations of Plaintiffs' summary exhibits, but not the exhibits themselves or the parts of Plaintiffs' summary judgment brief that also explain the exhibits. *See* IPRG's Mot. to Strike (Mot.), ECF No. 203, at 1-2 n.1. IPRG has not provided the Court with any alternative maximum civil penalty figure for its liability-period violations, or any alternative count for its post-liability violations. *See generally* Mot.; Def. Resp. to Pl. Partial Summ. J. Mot. (Def. Summ. J. Resp.), ECF No. 200.

## ARGUMENT

### I. The Fisher Declaration's explanations of how Plaintiffs determined the number of violations amenable to summary judgment are admissible

#### A. The Fisher Declaration's explanations of how Plaintiffs compiled their summary exhibits are admissible under Federal Rule of Evidence 1006

The Fisher Declaration, like the summary exhibits it describes, is admissible under Federal Rule of Evidence 1006 as a summary or calculation "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Plaintiffs

provided the declaration for the Court's convenience, so the Court could understand how they identified the violations included in their summary exhibits (A and U) and upon which they base their partial summary judgment motion on remedy. These summary exhibits are similar to the ones Plaintiffs submitted with their liability-phase briefing and that the Court accepted in granting summary judgment on liability, as well as to the summary exhibits stipulated to after the Court's liability-phase decision. *Compare, e.g.*, ECF No. 135-1 (stipulated list of opacity exceedances), *with* Ex. A, ECF No. 184-4, at 2-64 (liability-period opacity violations). The difference is that this time Plaintiffs included a declaration, for the Court's convenience, explaining how they compiled the lists of IPRG's self-reported violations.

IPRG does not dispute that summary evidence is an appropriate basis for adjudication of its Clean Air Act violations. IPRG did not object to nearly identical summary evidence during summary judgment briefing on liability, and stipulated to nearly identical evidence following the Court's liability decision. IPRG concedes that at least some of the data Plaintiffs summarized in their motion for partial summary judgment on remedy is "voluminous." *See* Mot. 5. IPRG also does not—and could not—question either the admissibility or reliability of that data, which consists of its own quarterly excess emission reports, its own notifications to Illinois EPA, and the opinions of its own expert.[1] *See C. States, S.E. & S.W. Areas Pension Fund v. Transport Serv. Co.*, No. 00-cv-6181, 2009 WL 424145, at *4 (N.D. Ill. Feb. 17, 2009) (admitting

---

[1] Plaintiffs similarly do not need "personal knowledge" of Edwards' inner workings to compile "the number of times the Plant 'reported' six-minute opacity exceedances . . . and 'notified' [Illinois] EPA of exceedances attributable to malfunctions and breakdowns." Mot. 7 (citing Fisher Decl. ¶¶ 49, 52, 73). The compiled information was self-reported by IPRG, and Plaintiffs can provide the Court with summary counts of those exceedances and notifications under Rule 1006.

plaintiff's summary evidence of defendant's records after finding the underlying evidence admissible as business records and statements made by defendant).

The summary exhibits, and thus the Fisher Declaration, are also representative of the records they summarize. *See United States v. White*, 737 F.3d 1121, 1136 (7th Cir. 2013) (requiring that summary evidence be "representative"). The Fisher Declaration provides, for the Court's convenience, additional detail on how Plaintiffs applied relevant law on maximum penalties and exemptions to undisputed facts to create their summary exhibits listing and tallying IPRG's Clean Air Act violations. Because Plaintiffs' exhibits and the Fisher Declaration "catalogued instances of objective characteristics and added those instances together to create totals," they constitute appropriate summary evidence under Rule 1006. *See id.*; *see also Ameropan Oil Corp. v. Monarch Air Serv.*, No. 92-cv-3450, 1994 WL 86701, at *3-4 (N.D. Ill. Mar. 16, 1994) (admitting attorney affidavit explaining and authenticating summary exhibits).

Neither Plaintiffs' compilation of the information reflected in the summary exhibits and explained in their opening brief, nor the Fisher Declaration, required technical expertise. *Contra* Mot. 5-6. The Declaration merely confirms how Plaintiffs applied the law of the case and their legal theory to the undisputed facts. For the liability-period violations, the universe of exceedances was already set by stipulation. *See* ECF Nos. 135-1, 135-2. Plaintiffs simply removed the exceedances for which they had not sought summary judgment during the liability phase, and then counted the number of days with an opacity violation and the number of days with a particulate matter violation. *See* Fisher Decl. ¶¶ 3-4, 9, 13-14. This act of counting does not require expert testimony. *United States v. Hamaker*, 455 F.3d 1316, 1331 (11th Cir. 2006) (act of "simply add[ing] and subtract[ing] numbers" does not require expert testimony); *Nat'l Exch. Bank & Tr. v. Petro-Chem. Sys., Inc.*, No. 11-cv-134, 2013 WL 12180537, at *4 (E.D.

Wis. Oct. 7, 2013) ("This is a simple mathematical calculation involving the application of readily accessible historical data. As such, an expert was not required."). And counting is a quintessential type of "summary evidence" admissible under Rule 1006. *See White*, 737 F.3d at 1136.

Plaintiffs' tallying of post-liability period violations, while requiring a few more steps, is similarly just a matter of counting, addition, and subtraction. Plaintiffs began by compiling all of IPRG's self-reported opacity exceedances. *See* Fisher Decl. ¶ 48. Plaintiffs then removed those exceedances for which Plaintiffs concede the 8-minute exemption applies.[2] *Id.* ¶¶ 50, 64. Next, Plaintiffs excluded all exceedances for which there is evidence that could potentially create a triable issue of fact regarding the availability of an affirmative defense.[3] *Id.* ¶¶ 58, 60, 65, 67. Finally, Plaintiffs summed the remaining exceedances to get the total post-liability period violation count on which they moved. *Id.* ¶¶ 62, 69; *see also* Ex. U, ECF No. 184-30, at 1. This is compilation, followed by subtraction, followed by counting.

---

[2] The Fisher Declaration's recitation of Plaintiffs' legal interpretation of the 8-minute exemption, *see* Fisher Decl. ¶ 50, is descriptive, not argumentative. *Contra* Mot. 3-4. Plaintiffs' opening summary judgment brief and summary judgment reply (filed contemporaneous with this opposition) present argument as to why Plaintiffs' interpretation is right and IPRG's is wrong. Pl. Summ. J. Remedy Br. 30. The Fisher Declaration merely sets forth Plaintiffs' legal position and explains how Plaintiffs applied that interpretation to compile the list of post-liability violations in Exhibit U.

[3] While evaluating the legitimacy of IPRG's startup, malfunction, and breakdown claims requires technical expertise, it does not require any expertise to—as Plaintiffs did here—simply remove from a list of post-liability exceedances all exceedances for which IPRG or its experts have *claimed* such a defense and (for the malfunction/breakdown defense) for which there is evidence that IPRG sent a timely notification to Illinois EPA. *See* Pl. Summ. J. Remedy Br. 31-32; Fisher Decl. ¶¶ 58, 60, 65, 67. The act of identifying alleged violations for which there is a potential triable issue of fact is a legal determination squarely within the litigating lawyer's domain. The Fisher Declaration explains how Plaintiffs applied that legal determination to remove exceedances from the list of undisputed violations ultimately reflected in Exhibit U. Plaintiffs should not be penalized for explaining how they removed, for summary judgment purposes, violations they acknowledge may be subject to a genuine factual dispute.

One does not need to be an engineer to do this work. *Contra* Mot. 6. Nor is live testimony about it needed. The source documents—exhibits listing stipulated liability-period violations, IPRG's post-liability-period quarterly excess emission reports, IPRG's notifications to Illinois EPA, and IPRG's own expert testimony—are admissible against IPRG. One need only be able to count, add, and subtract to identify from those documents the violations on which Plaintiffs moved. The Fisher Declaration explains for the Court's convenience how Plaintiffs did that work. That Plaintiffs used Microsoft Excel formulas to expedite some of the calculations they did to create their summary exhibits does not turn a basic arithmetic exercise into expert opinion testimony. Each step could have been done by hand by anyone with a pencil, a calculator, and the time to manually review the voluminous records at issue.[4]

In responding to Plaintiffs' summary judgment motion, IPRG was free to try to dispute the factual accuracy of Plaintiffs' counts.[5] It was also free to present its own counts, using

---

[4] Plaintiffs' use of Excel streamlined the summation work, while also removing the additional risk of human error inherent in counting, adding, or cross-referencing, by hand, thousands of exceedances. For instance, rather than manually counting how many of the over 2,600 opacity exceedance events for which the Court found IPRG liable fell within each of the date intervals specified in the EPA regulation on statutory maximum civil penalties, Plaintiffs used the "COUNTA" function in Excel. *See* Decl. of Selena Kyle Ex. FA (showing formulas in cells J4, K4, and L4). The "COUNTA" function counted each exceedance event noted in Column A within each regulatory date range, *see* Ex. FB ("The COUNTA function counts the number of cells that are not empty in a range."), the results of which are reflected in Exhibit A, *see* Ex. A, ECF No. 184-4, at 1 (showing results in middle three columns of "Total events" row). Rather than adding those exceedance event totals manually, Plaintiffs used the "SUM" function in Excel. *See* Kyle Decl. Ex. FA (showing formula in cell M4); *id.* Ex. FC ("The SUM function . . . adds values."). The total opacity exceedance event count is similarly reflected in Exhibit A. *See* Ex. A, ECF No. 184-4, at 1 (showing result in last column of "Total Events" row). IPRG has not identified any errors in Plaintiffs' use of Excel formulas.

[5] While IPRG claims the Fisher Declaration is "riddled with errors," Mot. 2, its motion identifies only *seven* alleged "errors" among the *thousands* of exceedance events compiled in Plaintiffs' summary exhibits, *see id.* at 3 n.3, 6 n.5, 7 n.6.

The first set of alleged errors, concerning double listing of five liability-period violations, *see id.* 3 n.3, is a relic of the fact that those violations were included twice on the stipulated list of exceedances the parties submitted to the Court following its summary judgment ruling on

9

whatever compilation methods it chose. That IPRG would apparently prefer not to take a

position on the maximum civil penalty available for its liability-period violations, or the number

of post-liability violations that are not in genuine dispute, does not make Plaintiffs' submissions

improper. The Fisher Declaration paragraphs that concern Plaintiffs' preparation of their

summary exhibits and that IPRG has moved to strike (paragraphs 2-4, 6, 9, 12-13, 49-50, 52, 56-

62, 64-69, 71, and 73) are admissible under Federal Rule of Evidence 1006.

### B.    IPRG has shown that it does not need discovery to understand Plaintiffs' violation counts

IPRG's suggestion that it needs a deposition or other discovery to understand Plaintiffs'

violation counts, *see* Mot 2, 5 n.4, is belied not only by the substance of those counts, but also by

IPRG's own conduct.

---

liability. *See* ECF No. 135-1, at 16, 57 (November 3, 2010 violation at 17:18); *id.* at 14 (January 16, 2011 violation at 13:48); *id.* at 1, 49 (January 27, 2014 violation at 12:30); ECF No. 135-2, at 16, 57 (November 3, 2010 violation at 17:18); *id.* at 1, 49 (January 27, 2014 violation at 12:30). This mistake did not affect the maximum civil-penalty figure on which Plaintiffs seek summary judgment, because Plaintiffs—in a significant concession to IPRG—disregarded multiple violations of the same permit condition on a given day when calculating the maximum. *See* Pl. Summ. J. Remedy Br. 18-20; *contra* Mot. 4 (suggesting these errors amount to "tens of thousands of dollars" in additional civil penalties). Nonetheless, to clarify the record, with their reply brief on summary judgment, Plaintiffs are submitting a revised Exhibit A that corrects for this double counting.

The second alleged error—that Plaintiffs included one exceedance in the post-liability period for which there is a material dispute over whether the startup defense applied, Mot. 6 n.5—is well-taken. As fact response paragraph 37 of their reply brief explains, Plaintiffs have removed that exceedance from the violation count on which they seek summary judgment and are submitting a revised Exhibit U that removes the exceedance.

The third alleged error, *see* Mot. 7 n.6, is not Plaintiffs' mistake at all: the e-mail notification IPRG sent to Illinois EPA for exceedances on June 30, 2018 does not include the exceedance at 1:00. *See* ECF No. 192-4, at 79. It is not Plaintiffs' fault that IPRG misreported the time of its alleged malfunction in its e-mail to Illinois EPA. In any event, to minimize disputes and as fact response paragraph 38 of their reply brief explains, Plaintiffs have also removed that exceedance from the violation count on which they seek summary judgment and are submitting a revised Exhibit U that removes the exceedance.

With respect to the liability-period violation count, which underlies Plaintiffs' summary judgment request on a maximum civil penalty figure, IPRG has had the stipulated lists of liability-period exceedances at least since the parties filed them with the Court in March 2017. ECF Nos. 135-1, 135-2. IPRG has also known since a September 2017 interrogatory response that Plaintiffs planned to seek a maximum civil penalty of over $40 million, based on the more than 650 days of opacity violations and around 600 days of particulate matter violations reflected in those lists. *See* Kyle Decl. Ex. FD, at 5; *id.* Ex. FE, at 1 (tallying days with opacity violations); *id.* Ex. FF, at 1 (tallying days with particulate violations). With respect to the post-liability violation count Plaintiffs moved on, Plaintiffs produced a list of post-liability exceedances that they *did not* believe were violations—that is, the inverse of the list Plaintiffs submitted as Exhibit U—to IPRG with an interrogatory response in March. *See* Kyle Decl. Ex. FG, at 6-7; *id.* Ex. FH.

IPRG did not seek a deposition or other discovery in response to any of this information. The first time it suggested any discovery was needed was in a demand letter a week after Plaintiffs moved for summary judgment on a maximum penalty figure and post-liability violation count. Even assuming that earlier discovery would have been warranted, the letter was too late. *Cf. United States v. All Assets & Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995) (affirming denial of a continuance for additional discovery at the summary judgment stage when movant had been "dilatory in conducting discovery and had failed to review the documents at issue"). Although Plaintiffs refused IPRG's unnecessary and intrusive discovery demands in its letter, as a courtesy and in an effort to minimize unnecessary disputes, they provided IPRG with the native Excel versions of their summary exhibits. *See* ECF No. 203-1, at 1, 2.

IPRG also did not invoke Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)) before responding to Plaintiffs' summary judgment motion. *See Deere & Co. v. Ohio Gear*, 462

11

F.3d 701, 706 (7th Cir. 2006) ("When a party thinks it needs additional discovery in order to oppose a motion for summary judgment . . . , [Rule 56[d]] provides a simple procedure for requesting relief: move for a continuance and submit an affidavit explaining why the additional discovery is necessary."). IPRG had the burden to show why discovery was necessary to respond to Plaintiffs' motion, *see Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014), and never even tried to make that showing. IPRG's conclusory assertion that it should have gotten additional discovery it never timely sought further undermines its motion to strike.

IPRG's briefing also illustrates that it does understand how Plaintiffs reached their violation counts for both the liability and post-liability periods. IPRG's motion, by plucking a few alleged "errors" from the thousands of violations included in Plaintiffs' liability and post-liability violation counts, shows that IPRG already knows how Plaintiffs applied the law and undisputed facts to reach those counts. *See* Mot. 3 n.3, 6 n.5, 7 n.6; *supra* note 5 (responding to the error claims). And IPRG's summary judgment response brief shows that it understands the parties' differing interpretations of the 8-minute exemption. *See* Def. Summ. J. Resp. 74-77.

In other words, IPRG seeks to drag through trial the final adjudication of thousands of violations, even though there are no genuinely disputed material facts and the only question of law is the proper application of the 8-minute exemption to the post-liability exceedances. IPRG's motion to strike, and concurrent refusal to provide the Court with any alternative violation counts or maximum penalty figure in response to Plaintiffs' summary judgment motion, is an improper and wasteful attempt to delay that adjudication.

## II.    The Fisher Declaration properly authenticates the exhibits IPRG challenges, many of which are also self-authenticating

IPRG's challenges to the authentication of more than a dozen exhibits discussed in the Fisher Declaration, *see* Mot. 7, are baseless. Federal Rule of Evidence 901 "requires only a

prima facie showing of genuineness" for authentication. *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997). Authentication is "not synonymous to vouching for the accuracy of the information contained in those records." *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982). To the extent IPRG wishes to dispute the content of any otherwise-authenticated and admissible document, it "must come forward with evidence of a genuine factual dispute." *See Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

Mr. Fisher does not need "personal knowledge" to authenticate excerpts from filings that IPRG's current and former corporate parents submitted to the SEC. *See* Fisher Decl. ¶¶ 34-35, 37 (discussing Exhibits I, J, and K). Filings submitted to government agencies are subject to judicial notice. *See Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).[6] The Fisher Declaration's provision of the relevant SEC (for Exhibit I) or Vistra (for Exhibits J and K) web addresses and the date on which the documents were accessed was also more than sufficient to authenticate the excerpts. *See* Fisher Decl. ¶¶ 34-35, 37; *see also infra* 14. IPRG filed comparable excerpts with its opposition to Plaintiffs' summary judgment motion, without any authenticating declaration. *See* ECF No. 200-10 (excerpt from Vistra's quarterly report for the second quarter of 2018); ECF No. 200-7 (excerpt from Dynegy's 2017 annual report).

---

[6] IPRG's citations to *Hennessy v. Penril Datacomm Networks*, 69 F.3d 1344 (7th Cir. 1995), in its opposition to Plaintiffs' summary judgment motion, *e.g.*, Def. Summ. J. Resp. 25, are inapposite. In *Hennessy*, the court declined to take judicial notice of an SEC filing because the question at issue was "not capable of accurate and ready determination by resort" to the filing. 69 F.3d at 1355. The filing applied to three divisions of a corporation, but only one of those divisions was defendant in the case, so the significance of the filing's total employee count to the defendant was contested. *Id.* Here, there is no dispute about to whom the information that Plaintiffs cite in the SEC filings refers. IPRG cannot avoid judicial notice by simply saying it disputes the significance of its parent companies' statements in government filings: it must—as the defendant in *Hennessy* did—provide contrary evidence calling into question the statements' accuracy. IPRG did not do so any of the times it cited *Hennessy*. *See, e.g.*, Def. Summ. J. Resp. 14, 22, 25, 26, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39.

IPRG's assertion that the Fisher Declaration fails to authenticate documents IPRG produced in discovery (Exhibits AF, AG, AH, AI, AJ, AK, AS) is also specious. *See* Fisher Decl. ¶¶ 22-25, 27-28, 31. The "very act of production" in discovery implicitly authenticates a document. *Brown*, 688 F.2d at 1116; *see also United States v. Dish Network, LLC*, 75 F. Supp. 3d 942, 965 (C.D. Ill. 2014) ("Documents produced by the opposing party during discovery may be treated as authentic."); *SEC v. Gorsek*, 222 F. Supp. 2d 1099, 1105 n.3 (C.D. Ill. 2001) (explaining that documents produced by a party self-authenticate). Exhibits AF, AH, AI, AJ, AK, and AS each contain the Bates numbers provided by IPRG when it produced the document. *See* Kyle Decl. ¶¶ 10-11. Exhibit AG does not contain a Bates number on the face of the document, but the Fisher Declaration explains that it was produced by IPRG in discovery (in an Excel format, necessitating its conversion to a PDF for filing) and provides the Bates number IPRG assigned to the Excel file. Fisher Decl. ¶ 23; *see also* Kyle Decl. ¶ 12.

A party acts in bad faith when it challenges the authenticity of documents it knows are authentic. *See Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003). Unless IPRG plans to admit that it knowingly produced false documents to Plaintiffs in discovery, it cannot now challenge those documents' authenticity. A similar principle applies to documents Plaintiffs retrieved from IPRG's corporate parents' websites: unless IPRG "denies that the exhibits represent the contents of [the] website" or "argues that [its parent company's] own website is unreliable," all that is required to authenticate the exhibits is a prima facie showing that they are authentic. *Hood v. Dryvit Sys., Inc.*, No. 04-cv-3141, 2005 WL 3005612, at *2 (N.D. Ill. Nov. 8, 2005). A web address and date on which the exhibit was retrieved make that showing. *Id.* Plaintiffs accordingly properly authenticated Exhibits L, M, N, O, and P. Fisher Decl. ¶¶ 41-45.

## CONCLUSION

IPRG's motion to strike should be denied.

14

Respectfully submitted October 5, 2018,

s/ *Jared E. Knicley*
Jared E. Knicley (DC Bar No. 1027257)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6242
jknicley@nrdc.org

Selena Kyle (IL Bar No. 6311573)
Ian Fisher (CO Bar No. 47858)
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 651-7906
skyle@nrdc.org
(312) 995-5903
ifisher@nrdc.org

Ann Alexander (IL Bar No. 6278919)
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6190
aalexander@nrdc.org

*Counsel for Plaintiff Natural Resources Defense
Council*

s/ *Gregory E. Wannier*
Gregory E. Wannier (CA Bar No. 275349)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94110
(415) 977-5646
greg.wannier@sierraclub.org

Faith E. Bugel (IL Bar No. 6255685)
Attorney at Law
1004 Mohawk Road
Wilmette, IL 60091
(312) 282-9119
fbugel@gmail.com

*Counsel for Plaintiff Sierra Club*

15

s/ *Jeffrey Hammons*
Jeffrey Hammons (IL Bar No. 6324007)
Justin Vickers (IL Bar No. 6305129)
Scott Strand (MN Bar No. 147151)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
jhammons@elpc.org
jvickers@elpc.org

*Counsel for Plaintiffs Sierra Club and Respiratory Health Association*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2018, I caused the following to be served on all

parties' counsel via the Court's CM/ECF system:

**PLAINTIFFS' OPPOSITION TO DEFENDANT ILLINOIS POWER
RESOURCES GENERATING, LLC'S MOTION TO STRIKE
THE DECLARATION OF IAN FISHER**

**DECLARATION OF SELENA KYLE AND EXHIBITS FA THROUGH FH**

s/ *Jared E. Knicley*
Jared E. Knicley