IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION; and SIERRA CLUB, INC., <br><br>Plaintiffs, <br><br>v. <br><br>ILLINOIS POWER RESOURCES GENERATING, LLC, <br><br>Defendant. | Case No. 13-cv-01181 <br>United States District Judge <br>Joe Billy McDade <br><br>Magistrate Judge <br>Thomas P. Schanzle-Haskins III |

**PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BY DR. ANNE E. SMITH CONCERNING CERTAIN ASPECTS OF HER ECONOMIC-BENEFIT AND IPRG ABILITY-TO-PAY DETERMINATIONS**

Plaintiffs Natural Resources Defense Council, Sierra Club, and Respiratory Health Association (collectively, "Plaintiffs") move to preclude defense expert Dr. Anne E. Smith from offering opinions at trial about legal aspects of her ability-to-pay and economic-benefit analyses that lack foundation and fall outside her expertise. Specifically, Plaintiffs seek to preclude Dr. Smith's presentation of her legal conclusions (1) that it would be improper to consider IPRG's parent companies' finances when determining its ability to pay for any penalty or injunctive remedy, and (2) that the economic-benefit calculation should be limited to the post-2013 period when Dynegy (and later, in April 2018, Vistra) owned the Edwards plant. In both cases, Dr. Smith has failed to establish the necessary expertise to opine on these questions and has offered opinions that are unreliable. Any attempt by IPRG to elicit these opinions—or any opinions stemming from them—at trial would violate Federal Rule of Evidence 702 and should be precluded.

## BACKGROUND

The Clean Air Act lays out several factors that this Court must consider when determining the appropriate penalty for IPRG's violations. *See* 42 U.S.C. § 7413(e)(1). Among these factors are the size of the business, the economic impact of the penalty on the business, and the economic benefit the business has accrued because of its noncompliance. *See id.* In her March 21, 2018 Report, Dr. Smith offered wide-ranging opinions on how the Court might consider these penalty factors. *See* Mar. 21, 2018 Expert Report of Dr. Anne E. Smith (Smith Report), Ex. QA, at 1-4, 8-9.[1]

---

[1] Dr. Smith supplemented some of her opinions in an April 5, 2019 Supplemental Report and an April 20, 2019 Rebuttal Report. None of the supplemented opinions are relevant to this motion.

1

Dr. Smith provided insufficient foundation for two of those opinions. The first is Dr. Smith's statement that her "understanding is that IPRG is the relevant Defendant in this proceeding, and if so, . . . consideration of the financial outcomes of [IPRG's then-ultimate parent] Dynegy or the potential entity resulting from a merger of Dynegy and Vistra is irrelevant." Smith Report, Ex. QA, at 61. In making this claim, Dr. Smith provides no citations, does not explain any expertise she possesses that informs her "understanding," and does not reveal the source of that "understanding." *Id.*

The second opinion for which Dr. Smith provides insufficient support is that "[a]ny economic benefit from compliance delayed from April 2008 through December 2, 2013 . . . was reaped by the prior owners/shareholders" of the Edwards plant because IPRG only assumed ownership of Edwards on December 2, 2013. *Id.* at 58. Again, apart from observing that IPRG acquired Edwards in December 2013, Dr. Smith provides no citations to support her claim, identifies no expertise or training that helped her reach this conclusion, and provides no context for how she came to this conclusion. *See id.* Dr. Smith similarly offers no support for her later statements that "any incentive-neutralizing effect . . . based on economic benefit of delayed compliance could not have had an effect on IPRG during the period when it did not own or have a role in operating the Edwards Plant," and that "[t]he earliest compliance date for eliminating any non-exempt opacity exceedances that could reasonably or fairly be expected of IPRG would be . . . December 2, 2013." *Id.*

The ramifications of Dr. Smith's foundationless opinions ripple through her report. Her opinion that IPRG's ability to pay a penalty in this case is "exceedingly constrained," *id.* at 60, flows from her refusal to consider IPRG's parent company resources based on her unexplained "understanding" that only IPRG's finances are relevant, *id.* at 61. Similarly, Dr. Smith's

2

economic-benefit estimates exclude five years of benefits that the Edwards plant's owners reaped from refusing to install necessary pollution controls from 2008—when the violations at issue in this case began—through December 2, 2013. *Id.* at 4, 58-59.

## ARGUMENT

In challenges to the admission of expert testimony under Federal Rule of Evidence 702, the Court evaluates "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." Order & Op., ECF No. 226, at 4 (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

Expert opinions containing legal conclusions are generally inadmissible because they do not assist the trier of fact. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 n.15 (N.D. Ill. 2006); *see also West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997). Indeed, Seventh Circuit precedent "clearly indicates that expert testimony on both legal conclusions and on the meaning of . . . statutory provisions . . . is improper." *In re Ocean Bank*, 481 F. Supp. 2d 892, 899 (N.D. Ill. 2007); *accord Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900-01 (7th Cir. 1994).

The reliability of the expert's methodology is determined by considering whether "the expert is providing testimony that is based on a correct application of a [valid] methodology and [whether] the expert considered sufficient data to employ the methodology." Order & Op., ECF No. 226, at 5 (quoting *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013)). The inquiry is "fact-dependent and flexible." *Id.* (quoting *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012)). Some of the factors courts consider are "whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;" "whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;" and "whether the field of expertise claimed by the expert is known to reach reliable

3

results for the type of opinion the expert would give." *Id.* at 5-6 (quoting *Gopalratnam*, 877 F.3d at 779-80).

I.  **The Court should preclude Dr. Smith from testifying that IPRG is the only appropriate entity to consider in an ability-to-pay assessment and from presenting further testimony based on that opinion**

Dr. Smith conceded at her June 20, 2018 deposition that her "understanding" that IPRG was the only appropriate entity to consider when determining IPRG's ability to pay a penalty came exclusively from defense counsel in this case:

> Q Did defense counsel ask you to make any assumptions to guide your analysis?
> . . .
> A There is one place where I would say the issue was identified as a legal issue, and counsel identified that as such for me.
>
> Q Okay, what issue was that?
>
> A It's related to the ability to pay and who is responsible for the ability to pay.
>
> Q So, yeah, what was the assumption there then?
> . . .
> A If you turn to my report at page 61, I state that my understanding is that IPRG is the relevant defendant in this proceeding. And if so, his – meaning Mr. Shefftz's consideration of financial outcomes of Dynegy or the potential entity resulting from a merger of Dynegy and Vistra is irrelevant.
>
> Q Okay, so that understanding came from your conversations with counsel?
>
> A Correct.

June 20, 2018 Dep. of Dr. Anne Smith (Smith Dep.), Ex. QB, at 32:5–33:9. In other words, Dr. Smith did not include this statement in her report as an actual opinion reached by applying her expertise; she included it to present legal conclusions that defense counsel provided to her.

Dr. Smith's uncritical recitation of her client's party position as part of her expert opinions is inappropriate and runs afoul of Rule 702. The statement is not based on Dr. Smith's expertise. Nor is it based on any reliable analysis by Dr. Smith. The Court should therefore

4

preclude Dr. Smith from testifying at trial that IPRG is the only entity relevant to the Court's ability-to-pay analysis and from presenting any testimony based on that inadmissible opinion.

II. **The Court should preclude Dr. Smith from testifying that it is inappropriate to consider pre-2013 economic benefits from noncompliance and from presenting economic-benefit calculations reflecting that opinion**

At her June 2018 deposition, Dr. Smith admitted that despite her opinion that it is inappropriate to consider any economic benefits of non-compliance prior to December 2, 2013 in this case, she has no experience conducting economic-benefit calculations when ownership changes during a period of non-compliance:

> Q Have you ever conducted an analysis where you declined to attribute a predecessor's economic benefit or impact to a successor company? . . .
>
> A I have never done an economic-benefit calculation where ownership changed in the middle of the case or in the middle of the period of – it's not about in the middle of the case. It's about in the middle of the alleged period of non-compliance.

Smith Dep., Ex. QB, at 265:4-16. When pressed on the basis for her opinion, Dr. Smith explained that her opinion, rather than being based on her training or expertise, merely fit with her general understanding of the purpose of the economic-benefit factor under the Clean Air Act:

> Q So why do you suggest starting the economic-benefit calculation on December 2nd, 2013?
>
> A Because the point of an economic benefit of delay and using that to base a penalty on is to serve as a deterrent on plant owners to delay their compliance, to neutralize their incentive, financial incentive, to delay compliance if they're able to. And whatever delay – if the delay had started in 2008 and it's determined to have continued after 2008 through past – and past the end of 2013, any of the deterrent value and the associated – which is equated to the benefits to the owners – or the shareholders that's derived by having avoided spending money during that delay period and reinvesting it in other alternative opportunities would have gone to the Ameren shareholders before December 2nd, 2013. And so the deterrent value is not applicable to any of Dynegy's decisions or IPRG's decisions, and there's no benefit that has been shown to have accrued to the shareholders, the ultimate shareholders, of this asset.
>
> Q So –

5

> A Sorry. No benefit to the ultimate shareholders as of today – the owners today that – Nothing has been shown to have accrued to them from a period before they purchased the asset.

*Id.* at 253:16–255:2. Dr. Smith's response falls short of justifying her opinion in multiple ways. First, she does not explain her qualifications to opine as an expert on whether the pre-2013 period should be considered in an economic-benefit analysis in this case. Instead, Dr. Smith merely makes conclusory statements about the "point of" the economic-benefit factor and whether the economic benefit of noncompliance could have accrued in any way to IPRG before it acquired the plant. This discussion, as with Dr. Smith's discussion of the issue in her March 2018 Report, is devoid of any references to training or education that qualify her to opine on this matter. Dr. Smith has therefore failed to establish her qualification to give these opinions.

Moreover, Dr. Smith apparently based her opinions about the appropriateness of considering economic benefit prior to December 2, 2013 in part on the fact that Plaintiffs filed this lawsuit *after* Ameren had agreed to transfer ownership of Edwards to IPRG, without accounting for other, more pertinent facts—including that Plaintiffs filed this suit *before* IPRG actually assumed ownership of Edwards and that IPRG assumed Ameren's (or its subsidiaries') liabilities in this case.[2] At her deposition, Dr. Smith made clear her belief that the timing of the transfer agreement was important:

> Q If IPRG sold Edwards to Ameren next month, and in that transactional agreement Ameren agreed to take on all environmental liabilities associated with Edwards including this lawsuit, how would that affect your economic-benefits analysis in this lawsuit?
> . . .
> A It depends enormously on how specific the agreement was to take on the liability associated with this case which is in court at this time.
> . . .

---

[2] In their Initial Pretrial Brief, Plaintiffs explain the series of corporate formations, mergers, asset and liability transfers, and company-name changes that effectuated the transfer of ownership of the Edwards plant from AmerenEnergy Resources Generating Company (one of the original defendants in this case) to IPRG. *See* ECF No. 240 at 10 n.5.

6

> Q So if Ameren explicitly accepted all economic – or sorry, excuse me, all environmental liabilities, and that term "environmental liabilities" was defined as including all ongoing cases, then how would your economic-benefit analysis be determined?
> 
> . . .
> 
> A And if I were Ameren buying it back at this late date with the case in this stage, I would be very careful how I worded that "all liabilities" term and if they – they might carefully exclude it and carve it out in which case if Ameren became the ultimate owner, then it would be on their backs from the day they had control according to my calculation. The difference – *That is an example that's in the future with going forward from where we are today, and the difference is in 2013, this wasn't a court case.*
> 
> Q I'm sorry?
> 
> A *In 2013, I do not believe this was a court case. At the time of the agreement to purchase, I do not believe this was a court case.*

Smith Dep., Ex. QB, at 255:15–256:5, 256:13–257:21 (emphases added). As this Court is aware, Plaintiffs filed the present lawsuit against the previous owners and operators of Edwards on April 18, 2013, *see* Compl., ECF No. 1, and IPRG assumed ownership of Edwards in December that same year, *see* Stipulation of Facts, ECF No. 44, ¶¶ 7-9. "When IPRG assumed ownership of Edwards, it also assumed the prior owner's liability." Jan. 15 Op. & Order, ECF No. 235, at 2 n.2. Plaintiffs only substituted IPRG for the original defendants following a stipulation with the defendants, including a stipulation as to IPRG's assumption of liabilities in this case. *See* Pls.' Initial Pretrial Br., ECF No. 240, at 9-10; Unopposed Mot. to Substitute Defs., ECF No. 45, ¶¶ 1-4; Stipulation of Facts, ECF No. 44, ¶¶ 7-9. In doing so, Plaintiffs did not agree to curtail their remedy claims or to shorten the liability period. These basic, undisputed facts provide crucial context for any reliable and relevant economic-benefit determination in this case. Yet Dr. Smith essentially ignores them.[3] Dr. Smith's failure to account for these facts renders her opinion

---

[3] Indeed, Dr. Smith admitted at her June 2018 deposition that she did not "know what Ameren and Dynegy agreed to" regarding assumption of liabilities in this case when IPRG assumed ownership of Edwards. Smith Dep., Ex. QB, at 258:22-24.

on the appropriate start date for an economic-benefit analysis (and her economic-benefit analyses based on that opinion, *see* Smith Report, Ex. QA, at 4, 58-59) unreliable and irrelevant.

Finally, even if Dr. Smith had offered information indicating that she had both the expertise and the information to provide an opinion on this matter, her opinion on the appropriate start date for an economic-benefit analysis would be an inadmissible legal conclusion. *See Richman*, 415 F. Supp. 2d at 945 n.15; *see also West*, 114 F.3d at 652. Dr. Smith has offered no particular insight on IPRG's 2013 acquisition of Edwards or the financial relationship between IPRG and the previous owners that would underlie her opinion; she instead simply believes that the pre-2013 period should be excluded from an economic-benefit analysis.

Dr. Smith's opinions about the relevance of economic benefit before December 2, 2013 (and her economic-benefit analyses based on those opinions) fall short of meeting Rule 702's requirements. Her opinions are not based on her qualifications, but instead on flawed beliefs that render her conclusion unreliable and irrelevant. And her opinions, in any event, are in effect legal conclusions. The Court should therefore preclude Dr. Smith from offering any testimony on this topic (including any economic-benefit analyses reflecting her conclusions on the topic) at trial.

## CONCLUSION

The Court should preclude Dr. Smith from presenting any testimony that includes or relies on her opinions disclosed in her March 2018 Report and June 2018 deposition that (1) IPRG is the only corporate entity relevant to the ability-to-pay analysis and that (2) it is inappropriate to consider the period before December 2, 2013 in the economic-benefit determination.

Respectfully submitted May 17, 2019,

s/ *Jared E. Knicley*
Jared E. Knicley (DC Bar No. 1027257)

Jacqueline Iwata (DC Bar No. 1047984)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6242
jknicley@nrdc.org
(202) 289-2377
jiwata@nrdc.org

Selena Kyle (IL Bar No. 6311573)
Ian Fisher (CO Bar No. 47858)
Natural Resources Defense Council
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 651-7906
skyle@nrdc.org
(312) 995-5903
ifisher@nrdc.org

Gonzalo E. Rodriguez (CA Bar No. 322913)
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6110
grodriguez@nrdc.org

*Counsel for Plaintiff Natural Resources Defense Council*


s/ *Gregory E. Wannier*
Gregory E. Wannier (CA Bar No. 275349)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94110
(415) 977-5646
greg.wannier@sierraclub.org

*Counsel for Plaintiff Sierra Club*


s/ *Jeffrey Hammons*
Jeffrey Hammons (IL Bar No. 6324007)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601

9

(312) 673-6500
jhammons@elpc.org

*Counsel for Plaintiffs Sierra Club and Respiratory Health Association*

CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I caused the following to be served on all parties' counsel via the Court's CM/ECF system:

**MOTION *IN LIMINE* TO EXCLUDE TESTIMONY BY DR. ANNE E. SMITH CONCERNING CERTAIN ASPECTS OF HER ECONOMIC-BENEFIT AND IPRG ABILITY-TO-PAY DETERMINATIONS**

**DECLARATION OF GREGORY E. WANNIER AND ASSOCIATED EXHIBITS**

                                                                        s/ *Jared E. Knicley*
                                                                        Jared E. Knicley