IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; RESPIRATORY HEALTH
ASSOCIATION; and SIERRA CLUB, INC.,

Plaintiffs,

v.

ILLINOIS POWER RESOURCES
GENERATING, LLC,

Defendant.

Case No. 13-cv-01181
United States District Judge
Joe Billy McDade

Magistrate Judge
Thomas P. Schanzle-Haskins III

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY
OF THOMAS KEELER CONCERNING THE ADEQUACY OF IPRG'S EXISTING
OPACITY CONTROL AND NEED FOR NEW POLLUTION-CONTROL
TECHNOLOGY AT EDWARDS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

EXHIBITS ........................................................................................................................ iv

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 4

      I.      Mr. Keeler's opinion that the electrostatic precipitators at Edwards
              are "adequately sized" and "have demonstrated [the] capability" to
              meet regulatory and permit requirements should be excluded
              because it is not based on a reliable application of a valid
              methodology ........................................................................................................ 5

      II.     Mr. Keeler's opinion that IPRG's control of opacity at Edwards is
              "excellent" should be excluded because it is based on unreliable
              methodology and insufficient (or wholly undisclosed) data................................... 8

CONCLUSION................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Bragdon v. Abbott*, 524 U.S. 624 (1998) ........................................................ 5

*C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827 (7th Cir. 2015).................... 5

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743
 (7th Cir. 2004) .............................................................................................. 5

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017) ............. 4

*In re Leap Wireless Int'l, Inc.*, 301 B.R. 80 (Bankr. S.D. Cal. 2003)............... 10

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.
 (No II) MDL 2502*, 892 F.3d 624 (4th Cir. 2018) ....................................... 6

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................... 5

*Lapsley v. Xtek, Inc.*, 689 F.3d 802 (7th Cir. 2012) ........................................ 4

*Sierra Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL
 2153913 (W.D. Tex. Mar. 28, 2014).............................................................. 10

*Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir. 1983) ............................ 10

*Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753 (7th Cir. 2013)......................... 4

*Valente v. Textron, Inc.*, 931 F. Supp. 2d 409 (E.D.N.Y. 2013)...................... 9

*Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993)............................. 10

*Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790 (7th Cir. 2008)................................ 5

**Rules**

Federal Rule of Civil Procedure 26(a)(2) ............................................... 8, 10

**EXHIBITS**

| Exhibit No. | Exhibit Title |
| --- | --- |
| NA (filed under seal) | March 21, 2018 Expert Report of Mr. Thomas R. Keeler |
| NB (filed under seal) | April 15, 2019 Supplemental Expert Report of Mr. Thomas R. Keeler |
| NC (filed under seal) | April 26, 2019 Supplemental Rebuttal Expert Report of Mr. Thomas R. Keeler |
| ND (filed under seal) | June 26, 2018 Deposition of Thomas Keeler |
| NE (filed under seal) | Keeler Exhibit A13 and A14 - 2018-01-01_2018-12-31 |
| NF (filed under seal) | Tom_Keeler_Exhibit B-Post Liability Period - Operating Time - Sums |
| NG (filed under seal) | Tom_Keeler_Exhibit B-Post Liability Period - Operating Time - Unit 2 |

Plaintiffs Natural Resources Defense Council, Sierra Club, and Respiratory Health Association hereby move to exclude testimony by defense expert Thomas Keeler that Defendant Illinois Power Resources Generating, LLC's (IPRG's) control of opacity at its E.D. Edwards plant is "excellent," and that neither baghouses nor new electrostatic precipitators are needed to end or substantially reduce opacity violations and ensure that violations do not recur. The evidence that Mr. Keeler has offered for these conclusions is insufficient to support them, they are not the product of reliable methods, and much of Mr. Keeler's testimony depends upon factual material that he has refused to disclose to Plaintiffs or discuss in his deposition.

## BACKGROUND

IPRG has violated the Clean Air Act at Edwards thousands of times over the past decade. *See* Op. & Order, ECF No. 124, at 49; Op. & Order, ECF No. 235, at 10-13. IPRG violated the Act thousands of times during the liability period that ran from April 18, 2008 through June 30, 2014. *See* Op. & Order, ECF No. 124, at 49; Op. & Order, ECF No. 235, at 10-13; Pl. Initial Pretrial Br., ECF No. 240, at 7; IPRG's Trial Br. Under Doc. #236, ECF No. 243, at 8. The supplemental expert disclosures prepared by both sides in response to this Court's January 15, 2019 ruling show that the parties agree IPRG has had tens of thousands of additional opacity violations (on a one-minute basis) since that time, and that these violations have continued through the most recent timeframes for which data was available. April 26, 2019 Rebuttal Expert Report of Thomas Keeler (Supplemental Rebuttal Report), Ex. NC, at 9-12; May 5, 2019 Errata and Supplement to Supplemental and Supplemental Rebuttal Expert Reports of Dr. Ranajit Sahu, Ex. MG to Pls.' Mot. to Exclude Test. of J. Edward Cichanowicz, at 2-4.

The question now is what civil penalties and injunctive relief are appropriate to remedy IPRG's past and continuing Clean Air Act violations at Edwards. To support the Court's remedy determination, Plaintiffs will offer the testimony of Dr. Ranajit Sahu. Dr. Sahu has concluded

that IPRG must install baghouses at both of the plant's still-operating units (Units 2 and 3) to end

further violations and ensure that they do not recur, or that IPRG must install new, adequately-

sized, properly maintained electrostatic precipitators (ESPs) on both units to substantially reduce

violations. *See* April 6, 2019 Supplemental Expert Report of Dr. Ranajit Sahu (Sahu

Supplemental Report), Ex. MF to Pls.' Mot. to Exclude Test. of J. Edward Cichanowicz, at 6-7,

13, 25-26, 41-42; May 7, 2018 Rebuttal Expert Report of Dr. Ranajit Sahu (Sahu 2018 Rebuttal),

Sealed Ex. EA, ECF No. 199, at 7, 22-23, 35-43; January 17, 2018 Expert Report of Dr. Ranajit

Sahu (Sahu Initial Remedy Report), Sealed Ex. EB, ECF No. 199, at 5, 15, 39-42. Dr. Sahu has

also opined that the plant needed baghouses in place on its Units 1, 2, and 3 by the beginning of

the liability period to avoid IPRG's adjudicated violations during that period, and needed new,

adequately-sized, properly maintained ESPs in place on all three Units to substantially reduce

violations. *See* Sahu Initial Remedy Report, Sealed Ex. EB, ECF No. 199, at 42; Sahu

Supplemental Report, Ex. MF to Pls.' Mot. to Exclude Test. of J. Edward Cichanowicz, at 25-26.

One basis for Dr. Sahu's opinions is that the Edwards plant's current ESPs are too undersized to

reliably keep IPRG in compliance with its opacity limits. *See* Sahu Supplemental Report,

Ex. NH, at 6, 11-12, 40-41; Sahu Initial Remedy Report, Sealed Ex. EB, ECF No. 199, at 6, 17;

Sahu 2018 Rebuttal, Sealed Ex. EA, ECF No. 199, at 40-43.

In his March 2018 report, his first in this case, Mr. Keeler stated that "[b]ased on my

experience with plants across the country, it is my opinion that Edwards Plant's control of the

opacity events is excellent. The number of opacity events is well within the normal range of

operation for a well operated electrical power plant, and Edwards Plant's experience is consistent

with good practice for minimizing such opacity events." March 21, 2018 Expert Report of

Thomas Keeler (Report), Ex. NA, at 7; *see also id.* at 65 ("less than 2 exceedances averaged per

day would be considered infrequent and excellent operation for most of my clients."). Mr. Keeler's report did not identify any of the power plants that formed the basis for this opinion, *see id.* at 7, 65, although at other points in his report, Mr. Keeler referenced a court decision involving alleged opacity exceedances at Big Brown, a Texas plant that is now closed, *see id.* at 28, 45. When asked about the reference to other power plants at his June 2018 deposition, Mr. Keeler identified just one, Big Brown, asserting that any others were confidential. June 26, 2018 Dep. of Thomas Keeler (Keeler Dep.), Ex. ND, at 80:3–81:20.

Mr. Keeler's March 2018 report also stated, "I would argue that with the upgrades that have been made, the precipitators are adequately sized and have demonstrated that capability" to meet regulatory and permit requirements. Report, Ex. NA, at 78. His report gave three reasons for this claim: (1) "The units have operated in compliance 99.70% of [the time] since April 18, 2008," *id.*, (2) "the units have operated in compliance with one or more of the TRs [transformer rectifiers or, the power supplies that energize the sections of the electrostatic precipitators] out of service," *id.*, and (3) "[t]he [monthly] average opacity for Units 1&2 was 15% and for Units 3 was 12% for the total litigation period," and "can be clearly seen to trend downward," *id.* at 80.

IPRG's September 2018 opposition to Plaintiffs' motion for partial summary judgment on remedy attached a declaration from Mr. Keeler in which he renewed his claim that neither new ESPs nor baghouses are "needed to meet compliance under the Edwards operating permit for both opacity and PM limits." Keeler Decl., Sealed Ex. 4, ECF No. 202, ¶ 23. The declaration does not explain the basis for this statement.

Mr. Keeler submitted a supplemental report on April 15, 2019 and a supplemental rebuttal report on April 26, 2019. April 15, 2019 Supplemental Expert Report of Thomas Keeler (Supplemental Report), Ex. NB; Supplemental Rebuttal Report, Ex. NC. These reports do not

return to or provide further bases for his earlier opinions referenced above about IPRG's control

of opacity at Edwards and the equipment needed to end or substantially reduce opacity violations

and ensure that violations do not recur. To the contrary, Mr. Keeler concluded that IPRG violated

the opacity limits at Edwards tens of thousands of times based on one-minute averages from July

1, 2014 (the start of the post-liability period) through December 31, 2018. Supplemental Rebuttal

Report, Ex. NC, at 9-12 (concluding 34,891 1-minute opacity exceedances were not exempt).

These violations continued, according to Mr. Keeler, through the end of 2018, *id.*; *see also* Fisher

Decl. ¶ 6 & Ex. NE, which was the most recent period he analyzed. This period follows the ESP

"upgrades" Mr. Keeler asserted in March 2018 as one of the reasons for his opinion that "the

precipitators are adequately sized and have demonstrated that [compliance] capability." Report,

Ex. NA, at 78.

## ARGUMENT

To assess whether expert testimony is sufficiently reliable to be admissible under Federal

Rule of Evidence 702, courts consider whether "the expert is providing testimony that is based

on a correct application of a [valid] methodology and that the expert considered sufficient data to

employ the methodology." Order & Op., ECF No. 226, at 5 (quoting *Stollings v. Ryobi Techs.,

Inc.*, 725 F.3d 753, 766 (7th Cir. 2013)). The inquiry is "fact-dependent and flexible," and some

of the factors to consider are "whether the expert has unjustifiably extrapolated from an accepted

premise to an unfounded conclusion," "whether the expert is being as careful as he would be in

his regular professional work outside his paid litigation consulting," and "whether the field of

expertise claimed by the expert is known to reach reliable results for the type of opinion the

expert would give." *Id.* at 5-6 (quoting *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012);

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779-80 (7th Cir. 2017)). In assessing

reliability, the court determines whether the expert testimony has "a traceable, analytical basis in

objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). Opinion evidence that is connected to existing data only by the *ipse dixit* of the expert lacks such a basis in objective fact. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015); *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008).

**I.    Mr. Keeler's opinion that the electrostatic precipitators at Edwards are "adequately sized" and "have demonstrated [the] capability" to meet regulatory and permit requirements should be excluded because it is not based on a reliable application of a valid methodology**

Mr. Keeler's opinion that the existing ESPs that serve Units 2 and 3 at Edwards "are adequately sized and have demonstrated [the] capability" to comply with regulatory or permit requirements, Report, Ex. NA, at 78, is not based on reliable methodology. That IPRG may "have operated in compliance 99.70% of since April 18, 2008," *id.*, does not show that IPRG is capable of meeting its regulatory and permit requirements if it continues to rely on its current ESPs to control opacity and particulate matter. In fact, it establishes the opposite, by underscoring that IPRG has *not* been able to comply. *See Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 764 (7th Cir. 2004) ("Compliance means an *end* to violations, not merely a reduction in the number or size of them."). Indeed, Mr. Keeler's own analysis of non-exempt exceedances shows that IPRG is still violating its opacity standard more than ten years after the liability period began. *See, e.g.*, Supplemental Rebuttal Report, Ex. NC, at 10 (opining that IPRG violated Edwards's opacity limits 34,891 minutes or 0.74% of the total calendar time period from July 1, 2014 to December 31, 2018); Fisher Decl. ¶ 6 & Ex. NE (Mr. Keeler's Exhibits A13 and A14 row 13 columns E + G showing 1,977 (Common Stack) and

4,379 (Unit 3) non-exempt one-minute exceedances during 2018).[1] Just because Mr. Keeler

concludes IPRG is violating the Clean Air Act for a seemingly small percentage of total

operating time, does not mean IPRG is not violating.

Similarly, Mr. Keeler's assertion that IPRG has "a compliance margin within the

system," Report, Ex. NA, at 78, because IPRG has sometimes been able to operate within its

opacity limit even when one or more TR sets has failed is not a reliable basis for determining that

IPRG is capable of complying with its opacity limits without replacing its ESPs. Mr. Keeler

gives a single example of this over a four-hour period in the context of a case that involves

violations spanning more than decade. *Id.* at 78-79. And even in Mr. Keeler's one example,

IPRG exceeded its opacity limit multiple times based on 1-minute or 6-minute averages. *Id.*

at 78. "Result-driven analysis, or cherry-picking, undermines principles of the scientific method

and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable

fashion." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II)*

*MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018).

Finally, Mr. Keeler uses monthly opacity averages during the litigation period, even

though compliance must be measured in one-minute increments. Op. & Order, ECF No. 235, at

20-25. Monthly opacity averages are irrelevant to IPRG's ability to stop the thousands of

one-minute opacity violations that, according to Mr. Keeler, occur at the Edwards plant each

year. Supplemental Rebuttal Report, Ex. NC, at 10 (opining that IPRG violated Edwards's

---

[1] These non-exempt exceedance numbers and the percent of total time are based on
Mr. Keeler's interpretation exempting all exceedances he determined met the definition of
malfunction/breakdown, even when those were not reported to IEPA as attributable to
malfunction/breakdown pursuant to permit condition 5(c), Supplemental Rebuttal Report,
Ex. NC, at 10; Fisher Decl. ¶ 6 & Ex. NE. That reporting is required in order for Edwards to
satisfy the malfunction/breakdown defense. *See* Op. & Order, ECF No. 124, at 39-46.

6

opacity limits 0.74% of the total calendar time period from July 1, 2014 to December 31, 2018); Fisher Decl. ¶ 6 & Ex. NE (Mr. Keeler's Exhibits A13 and A14 showing over 6,000 non-exempt one-minute exceedances during 2018).

Mr. Keeler's application of this methodology (the use of monthly opacity averages) is also unreliable. His graphs of average monthly opacity ignore available data from 2018, an extended Unit 2 outage towards the end of 2017, and Unit 1's retirement at the beginning of 2016.

Mr. Keeler asserts that for "Stack 1 (unit 1 & 2)" the average opacity "has been steadily decreasing from 2008 to the present," which is a "good indicator that the maintenance and upgrade programs have been successful." Report, Ex. NA, at 80. But Mr. Keeler's opinion ignores Unit 1's retirement. Unit 1 was officially retired on January 1, 2016, and operated infrequently in the years before that. IPRG Resp. to Pls.' Part. Summ. J. Mot. Seeking Nine "Decls.," ECF No. 200, at 3 ¶ 6; Fisher Decl. ¶ 7 & Ex. NF (showing about 80 hours of operating time for Unit 1 from July 1, 2014 to December 31, 2017). Trendlines imposed by Mr. Keeler that ignore the retirement of one of the two units cannot be used to reliably reach his conclusion. Before Unit 1's retirement, when one of two units feeding the common stack was in an outage, the other unit generally still operated, causing opacity readings to remain high. Since Unit 1's retirement, the average monthly opacity values for Common Stack 1 will naturally trend towards zero when Unit 2 is in an outage for a significant portion of the month (or even the entire month). Mr. Keeler ends his graph and trendline of opacity averages from Units 1 & 2, which serves as the basis for his "successful" "maintenance and upgrade program" opinion, in December 2017. Report, Ex. NA, at 79. But Unit 2 was in outage for all of October, November, and half of December 2017, and Unit 1 was long since retired. Fisher Decl. ¶ 8 & Ex. NG. Similarly, the dip

7

in monthly average opacity values in October and November 2016 coincides with a period of

limited operations of Unit 2 (5 days in October and 14 days in November), that follows Unit 1's

retirement. Fisher Decl. ¶ 8 & Ex. NG.[2]

The Court should exclude Mr. Keeler's opinion that the ESPs at Edwards are adequately

sized to meet compliance obligations.

## II.     Mr. Keeler's opinion that IPRG's control of opacity at Edwards is "excellent" should be excluded because it is based on unreliable methodology and insufficient (or wholly undisclosed) data

The known bases for Mr. Keeler's opinion that the Edwards plant's control of opacity is

"excellent" do not reliably support that opinion. Mr. Keeler's testimony purports to compare the

Edwards plant to other power plants throughout the country. Report, Ex. NA, at 7. But his report

does not disclose those plants, *see id.*, and at his deposition Mr. Keeler disclosed only one:

---

[2] In his April 15, 2019 supplemental report, Mr. Keeler extended his graphs through April 15, 2018. Supplemental Report, Ex. NB, at 14-15. In his April 26, 2019 supplemental rebuttal report, Mr. Keeler extends his graphs through December 31, 2018. Supplemental Rebuttal Report, Ex. NC, at 13-15. Mr. Keeler does not state the same opinions based on these new graphs but instead states the graphs show that "the plant's upgrades, repairs, maintenance, and operating practices are working to improve opacity and PM performance." *Id.* at 13; Supplemental Report, Ex. NB, at 14. Mr. Keeler does not claim that these new graphs show the Plant's ESPs are "well designed for the required performance," the "ESPs are properly sized," or that "the maintenance and upgrade programs have been successful." Report, Ex. NA, at 80. To the extent Mr. Keeler intends to rely on these new graphs as the basis for those conclusions, the opinions are not properly disclosed under Federal Rule of Civil Procedure 26(a)(2). Moreover, those opinions are unreliable for the same reasons as those based off the earlier graphs.

```
            7      Q.   What experience with plants across the
            8   country are you referring to in this sentence?
            9      A.   My experience, you know, from over the
11:17:51   10   years and my company's experience.
           11      Q.   What plants across the country?
           12      A.   I didn't list the plants, but we
           13   worked -- I went and kind of looked.  We've
           14   worked at over 150 plants that I have actually
11:18:10   15   digitally in my records.  But prior to that, we
           16   worked at other ones that I have hard files for.
           17   So I don't have an exact number of how many
           18   plants we've worked at.  But it's well over 150.
```

Keeler Dep., Ex. ND, at 79:7-18. Mr. Keeler refused to identify the other plants that informed the

opinion, claiming that this information was confidential. *Id.* at 80:3–83:6. Mr. Keeler asserted, "I

guess you have to take it that I'm an expert. So -- so -- and I work at other plants. So I'm not

asked to produce database on that. But it's based on my opinion and experience, and I gave you

an example." *Id.* at 81:16-20. Later, referring to the other plants he believes have more

non-exempt exceedances than Edwards and which he based his opinion on, Mr. Keeler stated

that Plaintiffs "can search all the [plants] in the country and find ones that are higher, I'm sure."

*Id.* at 189:9-14.

"[T]ake it that I'm an expert" is *ipse dixit* and not a reliable basis for an opinion. *See*

*Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 422 (E.D.N.Y. 2013) ("The Court would not be

performing its gatekeeping function, if it merely accepted, without any proof, a party's

contention that its expert's opinion is reliable."). Testimony based on confidential information

that Mr. Keeler refuses to disclose should be stricken, because neither Plaintiffs nor the Court

can examine the reliability of a data set that exists only in Mr. Keeler's head. *See Soden v.*

*Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983) (affirming exclusion of expert testimony where underlying data "were not part of a published study and were not even made available to the appellees until [the defendant] attempted to introduce them."); *In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 83-85 (Bankr. S.D. Cal. 2003) (striking expert's report and testimony because expert's reliance on undisclosed confidential information in arriving at conclusion denied right to cross-examine and ability of court to perform gatekeeping function); *see also* Fed. R. Civ. P. 26(a)(2)(B)(ii) (expert witness must disclose "the facts or data considered by the witness in forming" opinions offered for trial).

Mr. Keeler offered just one example of a plant whose operations he had compared to the Edwards plant, Big Brown. Keeler Dep., Ex. ND, at 80:8-23. A comparison to a single plant is insufficient to support an opinion that purports to evaluate the Edwards plant against "plants across the country." *See Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1462 (9th Cir. 1993) (excluding opinion testimony "based on limited anecdotal evidence" rather than "detailed examination of market data."). That is particularly true here, because the basis for Mr. Keeler's comparison to Big Brown was not his own expert opinion, but rather a description of the plant's alleged opacity exceedances taken from a court decision. Keeler Dep., Ex. ND, at 80:12-23, 85:4-18; *see also* Report, Ex. NA, at 28 (quoting *Sierra Club v. Energy Future Holdings Corp.*, No. W-12-CV-108, 2014 WL 2153913, ¶¶ 16-17, 64 (W.D. Tex. Mar. 28, 2014)). At the time he formed the opinion for which he relied on a comparison to Big Brown, Mr. Keeler had not even read the entire court order, leaving him unsure how many exceedances the court found Big Brown liable for under the Texas regulations. *See* Keeler Dep., Ex. ND, at 200:23–201:15. The full order explains that the court found Big Brown's owner and operator liable for zero opacity violations. *Sierra Club*, 2014 WL 2153913 at *19. Mr. Keeler's partial review of an opinion in a

case where the court found no opacity violations occurred is not a reliable basis for concluding

that control of opacity is "excellent" at Edwards, where IPRG has been found liable for

thousands of opacity violations and (based on Mr. Keeler's own analysis) has committed tens of

thousands more in recent months and years.

## CONCLUSION

For the reasons above, the Court should exclude Mr. Keeler's opinions concerning the

adequacy of IPRG's existing opacity control and the need for new pollution-control technology

at Edwards.

Respectfully submitted May 17, 2019,

s/ *Ian Fisher*
Ian Fisher (CO Bar No. 47858)
Selena Kyle (IL Bar No. 6311573)
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 995-5903
ifisher@nrdc.org
(312) 651-7906
skyle@nrdc.org

Jared E. Knicley (DC Bar No. 1027257)
Jacqueline M. Iwata (DC Bar No. 1047984)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6242
jknicley@nrdc.org
(202) 289-2377
jiwata@nrdc.org

Gonzalo E. Rodriguez (CA Bar No. 322913)
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6110
grodriguez@nrdc.org

*Counsel for Plaintiff Natural Resources Defense*
*Council*

11

s/ *Gregory E. Wannier*
Gregory E. Wannier (CA Bar No. 275349)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94110
(415) 977-5646
greg.wannier@sierraclub.org

*Counsel for Plaintiff Sierra Club*


s/ *Jeffrey Hammons*
Jeffrey Hammons (IL Bar No. 6324007)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
jhammons@elpc.org

*Counsel for Plaintiffs Sierra Club and Respiratory Health Association*

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I caused the following to be served on all parties'

counsel via the Court's CM/ECF system:

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY
OF THOMAS KEELER CONCERNING THE ADEQUACY OF IPRG'S EXISTING
OPACITY CONTROL AND NEED FOR NEW POLLUTION-CONTROL
TECHNOLOGY AT EDWARDS**

**DECLARATION OF IAN FISHER AND EXHIBITS NA THROUGH NG (EXHIBITS NA
THROUGH NG BEING FILED UNDER SEAL)**

s/ *Ian Fisher*
Ian Fisher