IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION; and SIERRA CLUB, INC., <br><br>Plaintiffs, <br><br>v. <br><br>ILLINOIS POWER RESOURCES GENERATING, LLC, <br><br>Defendant. | Case No. 13-cv-01181 <br>United States District Judge <br>Joe Billy McDade <br><br>Magistrate Judge <br>Thomas P. Schanzle-Haskins III |

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY
OF RALPH L. ROBERSON CONCERNING THE EXTENT TO WHICH IPRG HAS
COMPLIED WITH ITS PARTICULATE MATTER LIMITS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

EXHIBITS ............................................................................................................................ iv

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.    Mr. Roberson's testimony concerning whether IPRG has complied with its PM emission limits states a legal conclusion that will not help the Court to understand the evidence or to determine a fact in issue ............................................................................................................ 3

    II.    Mr. Roberson's testimony concerning whether IPRG has complied with its PM emission limits is not based on a reliable application of a valid methodology ........................................................................................ 5

        A.    Mr. Roberson's use of opacity values averaged over three-hour periods is not a reliable basis for opining on IPRG's compliance with PM emission limits that are stated in terms of "any one-hour period" ................................................................... 6

        B.    Mr. Roberson's testimony that the three-hour periods he found in which IPRG exceeded Edwards's PM emission limits do not constitute violations of the limit is unreliable and outside his expertise ........................................................................ 8

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898 (7th Cir. 1994) .......................... 4

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017) ............................... 5

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) ............................................... 6

*Lapsley v. Xtek, Inc.*, 689 F.3d 802 (7th Cir. 2012) .......................................................... 5

*Richman v. Sheahan*, 415 F. Supp. 2d 929 (N.D. Ill. 2006) ............................................. 4

*Robb v. Burlington N. & Santa Fe Ry. Co.*, 100 F. Supp. 2d 867 (N.D. Ill. 2000) ......... 10

*Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753 (7th Cir. 2013) ........................................... 5

*West By & Through Norris v. Waymire*, 114 F.3d 646 (7th Cir. 1997) ............................ 4

**Regulations**

35 Ill. Admin. Code § 212.123 .......................................................................................... 4

35 Ill. Admin. Code § 212.124 .......................................................................................... 4

35 Ill. Admin. Code § 212.126 .......................................................................................... 4

35 Ill. Admin. Code § 212.202 .......................................................................................... 6

**Other Authorities**

*In the Matter of: Particulate Emission Limitations, Rule 203(g)(1) and 202(b) of Chapter 2*, No. R82-1 (Docket B) Adopted Rule & Final Order (Ill. Pollution Control Bd. June 30, 1988) ............................................................................................ 4

# EXHIBITS

| Exhibit No. | Exhibit Title |
|---|---|
| PA (filed under seal) | March 21, 2018 Report of Mr. Ralph L. Roberson |
| PB (filed under seal) | April 5, 2019 Supplemental Report of Mr. Ralph L. Roberson |
| PC | April 26, 2019 deposition of Mr. Ralph L. Roberson |
| PD | June 15, 2018 deposition of Mr. Ralph L. Roberson |
| PE (filed under seal) | Roberson Appendix C & D - HrlyAvg (screened) |
| PF (filed under seal) | Keeler Exhibit A - Unit 3 - December 18, 2008 |

Plaintiffs Natural Resources Defense Council, Sierra Club, and Respiratory Health Association move to exclude defense expert Ralph L. Roberson's opinions about the extent to which Illinois Power Resources Generating, LLC (IPRG) has been in compliance with the particulate matter (PM) emission limits that apply to Units 2 and 3 at Edwards at any time between April 18, 2008 and the February 14, 2019 (the latest time Mr. Roberson has addressed in his reports). *See* March 21, 2018 Expert Report of Ralph L. Roberson (Report), Ex. PA, at 3; April 5, 2019 Supplemental Report of Ralph L. Roberson (Supp. Report), Ex. PB, at 3. This Court already decided that IPRG violated the PM emission limits in its permits during the liability period. Mr. Roberson's opinion on this legal question is irrelevant. Additionally, the opinions Mr. Roberson presents in his reports contradict decisions already made by this Court and Illinois EPA. The opinions also employ flawed methodology and wade into areas beyond his expertise. For all these reasons, Mr. Roberson's opinions concerning whether IPRG has violated its operating permit's PM emission limits will not assist the Court and should be excluded.

## BACKGROUND

IPRG's relevant permit for Edwards specifies PM emission limits for each of the plant's Units (1, 2, and 3). Operating Permit, ECF No. 104-8, at 1. The limits are specified in terms of pounds of PM per million British thermal units (a measure of the amount of heat energy input into the boilers) "in any one-hour period." *Id.* The limit for Unit 2 is .15 pounds per million British thermal units in any one hour. *Id.* The limit for Unit 3 is .10 pounds per million British thermal units in any one hour. *Id.*

Mr. Roberson opines that IPRG did not violate the PM emission limits of .15 pounds per million British thermal units (lb/$10^6$ Btu) at Unit 2's smokestack or .10 lb/$10^6$ Btu at Unit 3's smokestack in any one hour from April 18, 2008 to February 14, 2019. *See* Report, Ex. PA, at 3; Supp. Report, Ex. PB, at 3. To develop this opinion, Mr. Roberson reviewed stack test results

1

from tests conducted at Edwards's smokestacks to measure the PM emitted. Report, Ex. PA, at 3; Supp. Report, Ex. PB, at 3. He developed correlations between PM and opacity for each of Edwards's two stacks using the results of 40 stack tests runs at the Common Stack (which releases emissions from Unit 2 and released emissions from Unit 1 when it was operating),[1] 37 stack test runs at Unit 3, and the corresponding opacity averages during those runs. Report, Ex. PA, at 6 & App. A. Mr. Roberson entered the PM/opacity data pairs "into an Excel spreadsheet and used the linear correlation function to put the best fit line through the data point[s]." June 15, 2018 Dep. of Ralph Roberson (Roberson Dep.), Ex. PD, at 24:14-17. Microsoft Excel provided equations for those best fit lines: for the Common Stack, $Y = 0.0024X - 0.0026$, and for Unit 3's stack, $Y = 0.0033X - 0.0185$, where $Y$ = predicted PM emission rate in $lb/10^6$ Btu and $X$ = stack opacity as a percentage. Report, Ex. PA, at 7, App. A.

Mr. Roberson then calculated three-hour averages of opacity starting on the hour, both "block" and "rolling,"[2] between April 18, 2008 and December 31, 2017. Report, Ex. PA, at 8-9. Mr. Roberson used his correlation equations to predict PM emission rates over three hours by using the three-hour opacity average as the X variable and calculating Y, the predicted PM emission rate. *Id.* at 9. Mr. Roberson's correlation found six PM limit exceedances over three-hour periods based on the "block" averages and seventeen PM limit exceedances over three-hour periods based on the "rolling" averages. *Id.* at 10-11. But Mr. Roberson concluded that these three-hour PM exceedance periods were caused by startups and were not violations. *Id.*

---

[1] Mr. Roberson reviewed 41 stack test runs from the Common Stack but excluded one of them as "clearly an outlier," during which the test contractor suspected a "plant problem" occurred. Report, Ex. PA, at App. A n.30.

[2] Mr. Roberson's block averages were 12:00 to 3:00, 3:00 to 6:00, 6:00 to 9:00, etc. Report, Ex. PA, at 9 n.8. His rolling averages were 12:00 to 3:00, 1:00 to 4:00, 2:00 to 5:00, etc. *See, e.g., id.* at 10.

Mr. Roberson thus opined that "the Edwards Power Station has not violated its PM emission limits during the period of this litigation." *Id.* at 3; *see* Def's Mot. for Summ. J. Concerning Inj. Relief, ECF No. 180, at 7-8; Roberson Dep., Ex. PD, at 43:16-20.

Mr. Roberson's supplemental report "use[d] 1-minute opacity averages for the basis of all calculations," and examined "three additional stack tests . . . on Common Stack 1 and three additional stack tests . . . on Unit 3, all conducted during 2018." Supp. Report, Ex. PB, at 3. Mr. Roberson did not change his correlation equation for the Common Stack as a result of the additional tests. *Id.* at 5. Mr. Roberson did change his correlation equation for the Unit 3 stack, to $Y = 0.0033X - 0.0192$, but he did not utilize the new correlation in his analysis. *Id.* at 5; April 26, 2019 Dep. of Ralph Roberson (Roberson Supp. Dep.), Ex. PC, at 75:12–78:1. Mr. Roberson converted the one-minute opacity averages into block and rolling three-hour averages starting on the hour. Supp. Report, Ex. PB, at 6-7; Roberson Supp. Dep., Ex. PC, at 13:19–14:11. His supplemental report claims that he replicated his earlier results for the period from April 18, 2008 to December 31, 2017, and "found no exceedances" from January 1, 2018 to February 14, 2019. Supp. Report, Ex. PB, at 3.

## ARGUMENT

I. **Mr. Roberson's testimony concerning whether IPRG has complied with its PM emission limits states a legal conclusion that will not help the Court to understand the evidence or to determine a fact in issue**

Mr. Roberson based his testimony that Edwards "has not violated its PM emission limits during the period of this litigation," Report, Ex. PA, at 3, on his own interpretation of Illinois regulations. That interpretation is improper because Mr. Roberson is not a legal expert, and it is also contrary to the Court's summary judgment order on liability and the Illinois regulations. The meaning of the regulations applicable to the Edwards plant "is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."

3

*Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994). Expert opinions containing legal conclusions are generally inadmissible because they do not assist the trier of fact. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 n.15 (N.D. Ill. 2006); *see also West By & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997).

  Illinois regulations limit the opacity of Edwards's stack emissions to thirty percent, 35 Ill. Admin. Code § 212.123, and provide that for certain units, an opacity exceedance "shall constitute a violation of the applicable particulate limitations," which can be defended by a stack test for PM that shows compliance within sixty days under the same operating conditions, *id.* § 212.124(d)(2)(A). *See* Op. & Order, ECF No. 124, at 3-5, 25-27, 38-39. The Illinois Pollution Control Board adopted these provisions after extensive testimony and deliberation. *See* ECF No. 232-1, *In the Matter of: Particulate Emission Limitations, Rule 203(g)(1) and 202(b) of Chapter 2*, No. R82-1 (Docket B) Adopted Rule & Final Order (Ill. Pollution Control Bd. June 30, 1988), at 1-2 (outlining rulemaking history). The Court has already concluded that stack tests showing compliance within sixty days is the sole PM defense available to IPRG. Op. & Order, ECF No. 124, at 26, 38-39. Mr. Roberson's testimony is not based on stack tests that show compliance within sixty days under the same operating conditions, thus Mr. Roberson's testimony is irrelevant.

  The Illinois Pollution Control Board has also adopted a procedure that allows a coal plant operator to obtain an adjusted opacity limit if a unit meets its PM limit while exceeding the thirty percent opacity limit. 35 Ill. Admin. Code § 212.126. IPRG has not obtained an adjusted opacity limit under section 212.126 for the Edwards plant. And based on self-reported opacity exceedances and sections 212.123 and 212.124, this Court found IPRG liable for thousands of opacity and corresponding PM violations during the liability period. Op. & Order, ECF No. 124,

4

at 49-50; Pls. Initial Pretrial Br., ECF No. 240, at 7-8; Ex. JI, ECF No. 240-9; IPRG's Trial Br. Under Doc. #236, ECF No. 243, at 8.

Mr. Roberson's testimony that IPRG "has not violated its PM emission limits," Report, Ex. PA, at 3, relitigates the Court's liability decision through a collateral attack on the Illinois Pollution Control Board's regulations and procedures.

The Court should exclude Mr. Roberson's testimony opining on IPRG's PM violations at Edwards as an improper (and wrong) legal opinion and as irrelevant. The Court should exclude Mr. Roberson's testimony found in (1) Section IX "Summary Based on Correlations" and Section X "Using Correlation Results to Assess Compliance wth [sic] PM Limits" on pages 8 to 11 of his initial report, and (2) the section titled "Applying the Correlations to Assess Compliance" on pages 5-7 of his supplemental report.

**II.    Mr. Roberson's testimony concerning whether IPRG has complied with its PM emission limits is not based on a reliable application of a valid methodology**

The reliability of expert testimony under Federal Rule of Evidence 702 is determined by considering whether "the expert is providing testimony that is based on a correct application of a [valid] methodology and that the expert considered sufficient data to employ the methodology." Order & Op., ECF No. 226, at 5 (alteration in original) (quoting *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013)). The inquiry is "fact-dependent and flexible," *id.* (quoting *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012)), and some of the factors to consider are "whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion," "whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting," and "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give," *id.* at 5-6 (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779-80 (7th Cir. 2017)).

5

### A. Mr. Roberson's use of opacity values averaged over three-hour periods is not a reliable basis for opining on IPRG's compliance with PM emission limits that are stated in terms of "any one-hour period"

IPRG's operating permit for the Edwards plant limits PM emissions "in any one-hour period" to the values specified in the permit for each unit. Operating Permit, ECF No. 104-8, at 1. Although aware of this language, Roberson Dep., Ex. PD, at 216:14-22, Mr. Roberson used opacity values averaged over three hours, starting on the hour, in his correlation to reach his conclusion that Edwards has not violated its one-hour PM limit, *id.* at 26:1-16. Mr. Roberson performed no analysis using one-hour periods. Roberson Supp. Dep., Ex. PC, at 24:12-18, 48:10-13. Mr. Roberson's explanation for this decision is that compliance with PM emission limits is determined by Method 5 stack tests, and that other plants' permits, state regulations, and new source performance standards that require stack testing specify that compliance is based on the average result of three independent one-hour test runs. Report, Ex. PA, at 9-10; Supp. Report, Ex. PB, at 6-7.

Mr. Roberson's interpretation of Edwards's permit language and Illinois regulations is his own legal conclusion that he is not qualified to render. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("As a general rule . . . an expert may not offer legal opinions."). Mr. Roberson's opinion is also legally incorrect. The permit and Illinois regulations are clear that the applicable time period in the PM emission limit is *hourly*. Operating Permit, ECF No. 104-8, at 1; 35 Ill. Admin. Code § 212.202; Op. & Order, ECF No. 235, at 29. Mr. Roberson's use of three-hour opacity averages obscures many one-hour periods where his own correlation predicts exceedances of the PM limit. Decl. of Ian Fisher in Supp. of Pls.' Mot. to Exclude Test. of Ralph L. Roberson (Fisher Decl.) ¶¶ 6-7 & Ex. PE (showing more one-hour periods starting on the hour that predict violations of the Plant's PM limits than Mr. Roberson examined). Mr. Roberson cannot ignore these results by citing the need for a Method 5 stack test to average results over a

6

three-hour period. *See* Report, Ex. PA, at 9-10; Supp. Report, Ex. PB, at 6-7. Mr. Roberson is not performing a Method 5 stack test; rather, he is using opacity averages and a correlation to opine on violations. Mr. Roberson's testimony that IPRG never violated its PM standard in any *one-hour* period by looking at whether the Edwards plant exceeded the limit on averages over a *three-hour* period does not yield a reliable conclusion.

Moreover, Mr. Roberson's opinion has a more basic conceptual flaw: Rather than use average opacity measured over a rolling time period (whether one hour or three hours), Mr. Roberson used three-hour time periods starting and ending on the hour. In a rolling time period, a minute of opacity will be counted 60 times over 60 separate rolling one-hour averages or 180 times over 180 separate three-hour averages: 1:00 to 2:00, 1:01 to 2:01, 1:02 to 2:02, etc. or 1:00 to 4:00, 1:01 to 4:01, 1:02 to 4:02, etc. Mr. Roberson's methodology is inconsistent with, and therefore an unreliable means to determine compliance with, the unambiguous rolling "in any one-hour period" permit language. *See* Op. & Order, ECF No. 235, at 18-19 (explaining that opacity regulation containing any 60-minute period and any 24-hour period language is clear and requires the use of rolling periods).

The Court should therefore exclude Mr. Roberson's testimony in (1) Section X.1. "Appropriate Opacity Averaging Time," Section X.2. "Alternative Opacity Averaging Time," and Section X.3. "Reviewing the PM Emission Calculation Results" on pages 9-10 of his initial report, and (2) in the Sections titled "Appropriate Opacity Averaging Time," "Alternative Opacity Averaging Time," and "Reviewing the PM Emission Calculation Results" on pages 6-7 of his supplemental report.

7

B. **Mr. Roberson's testimony that the three-hour periods he found in which IPRG exceeded Edwards's PM emission limits do not constitute violations of the limit is unreliable and outside his expertise**

The Court should exclude Mr. Roberson's testimony as to the cause of (and the affirmative defenses available for) Edwards's PM exceedances that he found because, by his own admission, those issues are beyond his expertise, and because his testimony as to the cause of those exceedances contradicts IPRG's own statements. Contrary to his assertion that IPRG "has not violated its PM emission limits," Mr. Roberson found six three-hour block averages and seventeen three-hour rolling averages during which IPRG exceeded its PM limits. Report, Ex. PA, at 3, 10-11. Mr. Roberson reviewed the block periods, asserted that all the rolling periods are "related to and/or part of the same" events as the block periods, and concluded that the block periods are excused because they all occurred during a unit startup. *Id.* at 10-11.

First, Mr. Roberson's testimony on startup exceedances is outside the scope of his expertise because he testified that he was not providing any expert opinions on startup and malfunction exemptions for exceedances of opacity at Edwards. Roberson Dep., Ex. PD, at 224:1-9, 263:13-21. He therefore cannot conclude that the three-hour block periods in which he determined that IPRG exceeded the PM limits are exempt as occurring during startups.

Second, Mr. Roberson's testimony on startup exceedances is unreliable because his assertions contradict those of IPRG itself and another IPRG expert, Thomas Keeler. For example, although Mr. Roberson asserts that the Unit 3 three-hour PM exceedance from 18:00 to 21:00 on December 18, 2008 was caused by a startup, he ignores that, from 17:18 to 22:00, neither the Plant, nor Mr. Keeler, characterize the opacity exceedances as caused by a startup. ECF No. 104-15, at IPR-IPRG-000686-87 (labeling exceedance reason code as: "02 - Excess

8

Emission - Control Equipment Problems"); Fisher Decl. ¶ 8 & Ex. PF (Mr. Keeler's labeling of the same exceedance as TRK Code 4.3, malfunctions caused by ESP Power Drops).[3]

Third, Mr. Roberson ignores what he called the "rolling 3-hour averages" that his analysis found exceeded Edwards's PM limits, Report, Ex. PA, at 10, and which capture different hours than he reviewed. Mr. Roberson justified ignoring these other three-hour PM exceedances by lumping all events "related to and/or part of" another event together into same excusable startup. *Id.* at 10-11. For example, Mr. Roberson concluded the three-hour block from 6:00 to 9:00 on July 6, 2014, was caused by a startup at Unit 3. *Id.* at 11. Mr. Roberson did not analyze the three-hour periods from 7:00 to 10:00 or 8:00 to 11:00, both of which predict exceedances of the PM limit (over those three-hour periods). Fisher Decl. ¶ 7 & Ex. PE (page 2 rows 54489 and 54490 columns AB showing three-hour average PM emission rates of 0.124 and 0.103). Even if he properly concluded that the three-hour block from 6:00 to 9:00 was attributable to startup,[4] Mr. Roberson provides no analysis or basis for also concluding that the three-hour block PM exceedances from 7:00 to 10:00 or 8:00 to 11:00 were also attributable to startup. And Mr. Roberson ignores that from 5:36 to 10:17, the plant did not claim opacity exceedances were caused by startup, ECF No. 184-13, at NRDC IF052127. Mr. Roberson cannot reliably form an opinion about defenses for PM exceedances when he did not even analyze defenses for those PM exceedances his own correlation determined.

---

[3] And as explained below, Mr. Roberson further extends this improper opinion to the "rolling three-hour" PM exceedances that his analysis found occurred at 19:00-22:00, and 20:00-23:00.

[4] Mr. Roberson's characterization of this three-hour exceedance as attributable to startup also contradicts, without explanation, his earlier report, where he asserted that the July 6, 2014, 6:00 to 9:00 predicted three-hour PM exceedance was not caused by startup. December 17, 2015 Report of Mr. Ralph Roberson, ECF No. 109-6, at ECF p. 19 (stating "Load was limited on Unit 3 due to opacity spikes. Cause is believed to be a bad TR set").

The Court should accordingly exclude Mr. Roberson's testimony from Section X.3 "Reviewing the PM Emission Calculation Results" on pages 10 to 11 of his initial report, which is the product of an unreliable, ad hoc method that conceals exceedances that IPRG has never claimed to be exempt under the startup exception. *See Robb v. Burlington N. & Santa Fe Ry. Co.*, 100 F. Supp. 2d 867, 874 (N.D. Ill. 2000) (excluding expert testimony that was based on "an ad hoc set of unexamined assumptions").

## CONCLUSION

Mr. Roberson's testimony that IPRG has not violated its PM limits at Edwards is based on unreliable methodology and improper legal conclusions. The Court should exclude it.

Respectfully submitted May 17, 2019,

s/ *Ian Fisher*
Ian Fisher (CO Bar No. 47858)
Selena Kyle (IL Bar No. 6311573)
Natural Resources Defense Council
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 995-5903
ifisher@nrdc.org
(312) 651-7906
skyle@nrdc.org

Jared E. Knicley (DC Bar No. 1027257)
Jacqueline M. Iwata (DC Bar No. 1047984)
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 513-6242
jknicley@nrdc.org
(202) 289-2377
jiwata@nrdc.org

Gonzalo E. Rodriguez (CA Bar No. 322913)
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6110
grodriguez@nrdc.org

*Counsel for Plaintiff Natural Resources Defense Council*

s/ *Gregory E. Wannier*
Gregory E. Wannier (CA Bar No. 275349)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94110
(415) 977-5646
greg.wannier@sierraclub.org

*Counsel for Plaintiff Sierra Club*

s/ *Jeffrey Hammons*
Jeffrey Hammons (IL Bar No. 6324007)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
jhammons@elpc.org

*Counsel for Plaintiffs Sierra Club and Respiratory Health Association*

CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I caused the following to be served on all parties' counsel via the Court's CM/ECF system:

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF RALPH L. ROBERSON**

**DECLARATION OF IAN FISHER IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF RALPH L. ROBERSON AND EXHIBITS PA THROUGH PF (EXHIBITS PA, PB, PE, & PF BEING FILED UNDER SEAL)**

s/ *Ian Fisher*
Ian Fisher