IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION; and SIERRA CLUB, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS POWER RESOURCES GENERATING, LLC, <br><br> Defendant. | Case No. 13-cv-01181 <br> United States District Judge <br> Joe Billy McDade <br><br> Magistrate Judge <br> Thomas P. Schanzle-Haskins III |

**DECLARATION OF SELENA KYLE
IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO UNSEAL FULL DOCKET
AND CONDITION FURTHER SEALED FILINGS ON A PARTICULARIZED
SHOWING THAT THE CONTENTS ARE TRADE SECRETS OR INFORMATION
THAT IS PRIVILEGED OR REQUIRED TO BE KEPT CONFIDENTIAL BY STATUTE**

1.  My name is Selena Kyle, and I am one of the lawyers for Plaintiff Natural Resources Defense Council (NRDC). This declaration is based on my personal knowledge and review of the docket and discovery files in this case.

2.  Defendant Illinois Power Resources Generating, LLC's (IPRG's) document productions to Plaintiffs in this case to date include more than 400,000 pages of .pdf files and individual Excel files, based on the count reflected in the Bates stamps applied by IPRG. (For documents whose native format is Excel, IPRG has assigned a single Bates number to the entire file; for other documents, it has produced the documents in .pdf format and applied Bates stamps to each page). Most of that material has been produced since entry of December 23, 2014 Protective Order, and during the remedy phase of this case.

3. Many of IPRG's document productions include documents IPRG has stamped or designated "confidential" pursuant to the Court's December 2014 protective order.

4. Most of the expert reports IPRG has produced in this case, including most of the reports of IPRG's remedy-phase testifying experts, are stamped "confidential."

5. IPRG has added "confidential" stamps to many of its responses to Plaintiffs' remedy-phase interrogatories.

6. IPRG has designated many of the transcripts of fact witness depositions taken in this case, including many taken during the remedy phase, "confidential," in whole or in part.

7. Because of the volume of material exchanged in discovery in this case, much of the material IPRG has designated confidential pursuant to the Protective Order has never been submitted to the Court and likely never will be (either via ECF or during the remedy trial). But given the breadth of IPRG's designations and the scope of the remedy trial, however, Plaintiffs' filings over the next few months are almost certain to include additional material that IPRG has stamped or otherwise designated confidential. Some the motions *in limine* Plaintiffs are filing today, for example, reference exhibits that Plaintiffs will be moving for leave to file under seal pursuant to the Protective Order. Plaintiffs also anticipate that material IPRG has designated confidential will be submitted to the Court via ECF or referenced in live testimony during the upcoming remedy trial (for example, during the examinations of expert witnesses whose opinions are based on their review of documents IPRG has stamped confidential).

8. To the best of my knowledge, all of the documents the parties have requested to have filed under seal to date in this case were submitted for filing under seal because they contained or referenced material that IPRG has designated or otherwise claimed was confidential pursuant to the December 23, 2014 Protective Order (ECF No. 52). I am not aware of any

documents that have been submitted for filing or filed under seal because they contained or referenced material as to which a Plaintiff made a confidentiality claim pursuant to the Protective Order.

9. All of the documents that have been filed under seal to date fall into one or more of the following categories: documents IPRG has produced to Plaintiffs in discovery in this case, testifying expert reports exchanged by the parties in this case, and sworn declarations by experts designated to testify or fact witnesses designated by IPRG as persons most knowledgeable about options for controlling opacity and particulate matter pollution at Edwards. For the Court's convenience, the following paragraphs summarize the sealed documents by type and general subject matter.

10. The following ECF numbers identify documents filed under seal that are excerpts from reports of or declarations by the parties' testifying experts on remedy.

a. ECF Nos. 173 Ex. 12, 199 Exs. EC, EF-EH, and EV, 202 Ex. 4, 213 Ex. HJ, 216 Ex. 12, 216 Ex. 1, 213 Ex. HK, and 216 Ex. 1 are excerpts from reports of or declarations by IPRG remedy-phase testifying experts J. Edward Cichanowicz, Thomas Keeler, Ralph Roberson, Tony Schroeder, and Dr. Anne Smith that concern the Edwards plant's opacity and particulate matter emissions; repair and maintenance of equipment, including equipment used to control opacity and particulate matter; alternative pollution-control options for opacity and particulate matter; and the link between higher opacity emissions at Edwards and increased particulate matter pollution in the Peoria area.

b. ECF No. 186 Ex. AL is an excerpt from a Smith report concerning the ability of IPRG's corporate parents to make or influence environmental compliance decisions at Edwards.

    c.    ECF Nos. 186 Ex. AO and 213 Ex. HA are Keeler report excerpts concerning analysis of opacity exceedances.

    d.    ECF Nos. 195 Exs. CA. and CB, 199 Exs. EA and EB, 213 Exs. HD-HG, 216 Ex. 13, and 223 Ex. IK are excerpts of reports by Plaintiffs' engineering expert, Dr. Ranajit Sahu, concerning application of exemptions to the 30% opacity standard and non-exempt opacity exceedances at Edwards, the adequacy of the plant's pollution-control equipment for opacity and particulate matter and IPRG's maintenance of that equipment, and alternative pollution-control options that would allow IPRG to better control its opacity and particulate matter pollution at Edwards.

    e.    ECF No. 182 Ex. 10 is a table of six-minute opacity exceedances for part of the post-liability period presented in one of Dr. Sahu's reports. *See* IPRG Mot. for Summ. J. Concerning Inj. Relief, ECF No. 180, at 9 ¶ 40.

    f.    ECF Nos. 195 Ex. CC and 199 Ex. EW are excerpts from reports by IPRG remedy-phase testifying expert Dr. Lucy Fraiser concerning $PM_{2.5}$ (particulate matter 2.5 microns smaller in diameter) and the threats it poses to human health.

11.    The following ECF numbers identify documents filed under seal that are excerpts from depositions of the parties' testifying experts on remedy, and include information that may be elicited during examination of the experts during the forthcoming remedy trial:

    a.    ECF Nos. 182 Ex. 8 and 210 Ex. 3 are excerpts from a deposition of Dr. Sahu concerning analysis of information on the Edwards plant's opacity and particulate matter pollution-control performance and options for better controlling opacity and particulate matter.

    b.    ECF Nos. 186 Ex. AQ, 216 Ex. 4, and 223 Ex. IC are excerpts from a deposition of Mr. Keeler concerning analysis of non-exempt opacity exceedances at Edwards,

the condition of pollution-control and other equipment at Edwards, and a report Mr. Keeler wrote on upgrading and optimizing the performance of electrostatic precipitators (ESPs).

   c. ECF Nos. 202 Ex. 13, 210 Ex. 3, 213 Ex. EC, and 223 Ex. ID are excerpts from a deposition of Dr. Sahu concerning particulate matter pollution at Edwards.

   d. ECF No. 213 Ex. HB is an excerpt from a deposition of Mr. Keeler, concerning which opacity exceedances are attributable to malfunctions, for purposes of applying the affirmative defenses in the Edwards plant's operating permit.

   e. ECF Nos. 199 ED and EH are excerpts from depositions of Mr. Keeler and Dr. Sahu concerning opacity violations, the relationship between opacity and $PM_{2.5}$ pollution, and alternative pollution controls that could improve opacity performance at Edwards.

 12. The following ECF numbers identify documents filed under seal that are excerpts from depositions or sworn declarations by officers or employees of IPRG and/or IPRG corporate parents, or IPRG itself.

   a. ECF No. 110-3 Ex. 9 is an excerpt from the deposition of Mark Davis, environmental manager for Edwards and one of the people IPRG identified as most knowledgeable about options for controlling opacity and particulate matter pollution at Edwards, concerning processes for documenting opacity exceedances.

   b. ECF No. 162 Ex. A is a transcript of a deposition of Ted Lindenbusch, then managing director for Edwards and one of the people IPRG has identified as most knowledgeable about options for controlling opacity and particulate matter pollution at Edwards, concerning opacity and particulate matter pollution-control equipment maintenance, opacity exceedance monitoring and reporting, planning and budgeting, and related matters at the plant.

  c. ECF No. 162 Ex. B is a transcript of a deposition of IPRG concerning IPRG's relationships with its former ultimate corporate parent Dynegy, Inc. and other Dynegy-owned companies concerning those entities' roles in IPRG's decisionmaking; capital, operation, and maintenance expenditures; and payment of debts and other liabilities.

  d. ECF No. 162 Ex. C is a transcript of a deposition of Christopher Robinson concerning IPRG's relationships with its former ultimate corporate parent Dynegy, Inc. and other Dynegy-owned companies as they relate to operation of the Edwards plant.

  e. ECF No. 173-1 is a transcript of a deposition of IPRG concerning steps to control and/or reduce opacity and particulate matter emissions at Edwards and IPRG's procedures for investigating, recording, and reporting opacity exceedances attributable to startup, malfunction, and/or breakdown pursuant to paragraphs 4 and 5 of the plant's operating permit.

  f. ECF Nos. 182 Ex. 1 and 202 Ex. 6 are excerpts from a deposition of IPRG, concerning processes for identifying and reporting opacity violations.

  g. ECF Nos. 199 Ex. EO and 216 Ex. 11 are excerpts from a deposition of William Henning, maintenance manager for Edwards and one of the people IPRG identified as most knowledgeable about evaluation of options for controlling opacity and particulate matter pollution at Edwards, concerning his management responsibilities and qualifications and planning and budgeting for installation of baghouses at Edwards.

  h. ECF No. 186 Ex. AA is an excerpt from the deposition of IPRG concerning IPRG's access to a Dynegy revolving-credit facility.

  i. ECF No. 186 Ex. AB is an excerpt from a deposition of Mr. Lindenbusch concerning the retirement date for Unit 1 at Edwards.

6

j. ECF No. 186 Ex. AC is an excerpt from the deposition of IPRG and Dynegy Operating Company Vice President Shannon Brown concerning a shared services agreement between Dynegy and IPRG and a policy providing for Dynegy's Board of Directors to approve annual budgets for IPRG-owned facilities.

k. ECF No. 186 Ex. AD is an excerpt from the deposition of Mr. Robinson, then vice president of IPRG corporate parent Illinois Power Holdings (IPH), concerning the shared services agreement between Dynegy and IPRG and a power-supply agreement between IPRG and another Dynegy entity, Illinois Power Marketing.

l. ECF No. 186 Ex. AE is an excerpt from a deposition of IPRG concerning Dynegy's approval of the 2018 capital budget and five-year capital forecast for the Edwards plant, which provide for spending on environmental projects.

m. ECF No. 199 Ex. ES and ECF No. 202 Ex. 2 are excerpts from a deposition of Mr. Lindenbusch concerning capital budgeting and forecasting for the Edwards plant, including for possible baghouse installation.

n. ECF No. 199 Ex. ET is an excerpt from a deposition of IPRG concerning proposed baghouse installation at Edwards.

o. ECF No. 202 Ex. 7 is a declaration by Mr. Lindenbusch characterizing opacity-related capital spending, maintenance, and repair work, and attaching IPRG interrogatory responses and other records concerning this work, as well as a record for an opacity exceedance event at Unit 3.

p. ECF No. 202 Ex. 14 is an excerpt of a deposition of IPRG concerning ESP repair and maintenance work.

      q.     ECF No. 202 Ex. 19 is an excerpt from a deposition of IPRG concerning management and approval of capital projects at the Edwards plant.

      r.     ECF No. 210 Ex. 6 is an excerpt from a deposition of IPRG and Mr. Brown concerning procedures for analyzing the profitability of capital spending projects, including pollution-control projects.

13.     The following ECF numbers identify documents filed under seal (other than those identified in earlier this declaration) that concern interpretation of and/or compliance with pollution-control laws, regulations, and/or permitting requirements that apply to Edwards.

      a.     ECF No. 110-4 is an Edwards guidance document on interpreting the 30% opacity standard and related compliance and reporting requirements.

      b.     ECF No. 182 Ex. 2 describes procedures for notification of exceedances of opacity standards due to malfunctions and breakdowns at Dynegy-owned Illinois power plants (including Edwards, see page 4 of 12).

      c.     ECF No. 182 Ex. 7a is a 2013 report concerning particulate matter emissions testing at Edwards.

      d.     ECF No. 213 Ex. HM is an undated and redacted document titled "Environmental Compliance & Emission Excursions" that discusses plant protocols for responding to increases in opacity levels.

      e.     ECF No. 213 Ex. HP is an email exchange concerning operation of the electrostatic precipitators (ESPs) and opacity compliance at Edwards.

14.     The following ECF numbers identify documents filed under seal (other than those identified earlier in this declaration) that concern continuous opacity monitoring (COMS) data and other records generated as part of day-to-day operations at Edwards.

      a.      ECF Nos. 110-1, 117-2, 213 Exs. HN-HO, and 213 Ex. HQ-HR are shift turnover logs (or similar reports). These are "prepared twice daily," and "describe inspection, maintenance, and other steps taken by [Edwards] personnel to address opacity, including steps taken to prevent and/or reduce the frequency and severity of future opacity excursions." ECF No. 116-2 (Lindenbusch Decl.) ¶¶ 1, 3, 5 & Ex. B (referencing ECF No. 117-2).

      b.      ECF Nos. 110-2 and 116-2.3 are operator electronic logs, which are "prepared daily" and "describe inspection, maintenance, and other steps taken to address opacity, including steps taken to prevent and/or reduce the frequency and severity of future opacity excursions." ECF No. 116-2 ¶ 6 & Ex. C (referencing ECF No. 116-2.3).

      c.      ECF Nos. 117-1 and 186 Ex. AR are "Attachment A" excess emissions report form, or EERs. ECF No. 116-2 ¶ 4 & Ex. A (referencing ECF No. 117-1). These are "created by Edwards personnel with respect to 'opacity excursions,'" ECF No. 116-2 ¶ 3, and "include … a place for a description of the corrective action taken to address each opacity excursion … and a description of steps to prevent and/or reduce the frequency or severity of similar opacity excursions." *Id*. ¶ 4.

      d.      ECF No. 213 Ex. HS is a table of six-minute opacity exceedances for part of the post-liability period that includes notes presented in one of Mr. Keeler's reports. *See* Pls.' Reply in Supp. of Partial Summ. J. on Remedy, ECF No. 212, at 41.

      e.      ECF Nos. 182 Ex. 7b through 7v are reports of emissions tests used to measure particulate matter emissions from the smokestacks at Edwards (commonly referred to as "stack tests").[1] *See* IPRG Mot. for Summ. J. Concerning Inj. Relief, ECF No 180, at 7.

---

[1] The emissions reports in Exhibits 7o through 7v bear "Attorney Client Privilege" stamps. Plaintiffs asked IPRG's counsel about some of the stamps in this series of reports when they were were produced in discovery, and IPRG counsel confirmed that it intended to produce them.

15. The following ECF numbers identify documents filed under seal (other than those identified earlier in this declaration) that discuss the inspection, repair, or maintenance of the equipment at Edwards, including equipment used to control opacity and particulate matter.

   a. ECF No. 116-2.7 is a "Precipitator/Opacity Action Plan" that "lists past, ongoing, and future actions at Edwards to prevent and/or reduce the frequency and severity of opacity excursions." *See* ECF No. 116-2 ¶ 9 & Ex. G (referencing ECF No. 116-2.7).

   b. ECF No. 117-4 is a ten-year-old report of a structural inspection of the ESP that serves Unit 3 at Edwards.

   c. ECF Nos. 117-5 and 117-6 contain information from the plant's Computerized Maintenance Management System on ESP-related maintenance work. *See* ECF No. 116-2 ¶ 8 & Ex. E & F (referencing ECF Nos. 117-5 and 117-6).

   d. ECF Nos. 117-8, 117-9, 117-10, and 117-11 are records "created for work done to prevent and/or reduce the frequency and severity of opacity excursions." ECF No. 116-2 ¶ 10 & Exs. H-K (referencing ECF Nos. 117-8, 117-9, 117-10, and 117-11).

   e. ECF No. 213 Ex. HH is a 2014 inspection report that discusses the condition of the Unit 3 ESP at Edwards.

   f. ECF No. 213 Ex. HI is a 2005 assessment of the condition of the Unit 1 and 3 ESPs at Edwards.

16. The following ECF numbers identify documents filed under seal (other than those identified earlier in this declaration) that concern operation and management of Edwards and consideration of pollution-control options for opacity and particulate matter at the plant.

  a. ECF Nos. 186 Exs. AH and AI are a 2008 power supply agreement between Ameren Energy Marketing Company and Ameren Energy Resources Generating Company (IPRG's predecessor owner) and a 2010 amendment to that agreement.

  b. ECF No. 186 Ex. AM is an excerpt from one of IPRG's responses to Plaintiffs' interrogatories, identifying "all current and indirect parent companies of IPRG."

  c. ECF No. 186 Ex. AN is an excerpt from one of IPRG's responses to Plaintiffs' interrogatories, concerning "the dollar amount and percent of total IPRG revenue" that was transferred to Dynegy or its subsidiaries.

  d. ECF No. 199 Exs. EJ, EL, and EM are 2010 and 2011 contractor reports and proposals (or excerpts thereto) that reference installation of baghouses at Edwards.

  e. ECF No. 199 Exs. EP, EQ, and ER are 2011 emails and a redacted 2011 presentation concerning budgeting for the installation of baghouses at Edwards.

  f. ECF Noss. 186 Ex. AJ and AK are a service agreement between Dynegy and IPRG and an amendment to that agreement, dated 2013 and 2014, respectively.

  g. ECF No. 199 Ex. EK is a 2014 contractor proposal for the installation of baghouses at Edwards Units 2 and 3.

  h. ECF No. 199 Ex. EN is a 2014 contractor proposal for an engineering study of pollution-control options at Edwards Units 2 and 3, including baghouse installation.

  i. ECF No. 213 Ex. HL is a redacted 2014 email chain that includes some information on operations and maintenance budgeting for the Unit 1 ESP at Edwards.

  j. ECF Nos. 199 Ex. EU and 173.2 Ex. B are a compilation of five-year capital budget forecasts for the plant, prepared in calendar years 2014 through 2017.

11

  k. ECF No. 186 Ex. AS is a 2015 policy document providing for Dynegy, Inc.'s Board of Directors to approval annual budgets for IPRG-owned facilities.

  l. ECF No. 199 Ex. EI is a 2015 contractor proposal for the installation of a baghouse at Edwards Unit 3.

  m. ECF No. 199 Ex. EX is a May 2017 IPRG response to Plaintiffs' remedy-phase interrogatories that lists the persons most knowledgeable about opacity and particulate matter control efforts at Edwards; chemicals used to condition the flue gases at Edwards; the parties to, calendar terms of, and qualities and volumes of coal specified in three coal purchase agreements (two of which the interrogatory says expired in 2017); and the name of IPRG's immediate parent company (and original codefendant): Illinois Power Resources, LLC (IPR).

  n. ECF No. 186 Ex. AF is the final 2018 capital budget and 2019-2022 capital forecast for Edwards, approved by Dynegy's Board of Directors in 2017.

  o. ECF No. 186 Ex. AG is the final 2018 operations and maintenance budget and 2019-2022 operations and maintenance plan for Edwards, approved by Dynegy's Board of Directors in 2017.

17. Attached as Exhibit RA is a true and correct copy of a January 16, 2019 *Bloomberg Law News* article titled "Illinois Power Can't Show Order Would Force Closure." An NRDC legal intern downloaded this article from the Bloomberg Law website on May 16, 2019.

18. Attached as Exhibit RB is a true and correct copy of a November 2, 2018 *Law360* article titled "Enviro Expert Testimony Allowed in Ill. Coal Plant Dispute." I downloaded this article from Law360's website on May 16, 2019, via the following URL (which requires a subscription): https://www.law360.com/articles/1098478/enviro-expert-testimony-allowed-in-ill-coal-plant-dispute.

19. Attached as Exhibit RC is a true and correct copy of a January 16, 2019 *Law360* article titled "Vistra Coal Plant Can't Dodge Enviros' Emissions Claims." I downloaded this article from Law360's website on May 16, 2019, via the following URL (which requires a subscription): https://www.law360.com/articles/1119076/print?section=energy.

20. Attached as Exhibit RD is a true and correct copy of a March 30, 2018 letter to the editor of the Peoria *JournalStar* by Mr. Lindenbusch, titled "Spotlight: Dynegy's perspective: New pollution controls make sense for Illinois." I downloaded the letter from the *JournalStar*'s website on May 16, 2019, using the following link:
https://www.pjstar.com/opinion/20180330/spotlight-dynegys-perspective-new-pollution-controls-make-sense-for-illinois.

21. Attached as Exhibit RE is a true and correct copy of an April 13, 2018 letter to the editor of the *JournalStar*, titled "Good for the bottom line, bad for the environment," that responds to the letter attached as Exhibit RD. I downloaded Exhibit RE from the *JournalStar*'s website on May 16, 2019, using the following link:
https://www.pjstar.com/opinion/20180413/letter-good-for-bottom-line-bad-for-environment.

22. Attached as Exhibit RF is a true and correct copy of a May 17, 2019 letter to the editor of the *Chicago Tribune* titled "Stop coal ash poisoning" and referencing the Edwards plant. I downloaded Exhibit RF from the Tribune's website on May 17, 2019, using the following link: https://www.chicagotribune.com/opinion/letters/ct-vp-voice-letters-051819-story.html.

23. On January 4, 2019, Plaintiffs wrote to request IPRG's agreement that "all documents produced in discovery and designated confidential by IPRG, and deposition transcripts and exhibits designated confidential by IPRG, may be unsealed if already filed with

the Court under seal and need not be filed or otherwise submitted under seal moving forward." Attached as Exhibit RG is a true and correct copy of Plaintiffs' January 4 letter.

24. In a February 5 letter, a true and correct copy of which is attached as Exhibit RH, IPRG responded that although it could not agree to unseal all documents filed under seal, it "will evaluate which exhibits were relied upon by the Court in this case in resolving dispositive motions and which may be unsealed by the agreement of the parties. IPRG's counsel will follow this letter with its position on each such document, once it has [sic] an opportunity to review those documents with their clients." Exhibit RH at 2.

25. On April 10, having received no further response, Plaintiffs sent IPRG a follow-up letter, a true and correct copy of which is attached as Exhibit RI. Plaintiffs requested that assuming IPRG "is not in full agreement that documents, deposition transcripts, and exhibits filed with the Court may be unsealed, we ask that you please identify the specific discovery materials, deposition transcripts, or deposition exhibits (or parts thereof) that IPRG believes should remain under seal and explain the legal basis for IPRG's view that those materials should continue to be withheld from the public." Exhibit RI at 1-2.

26. IPRG still has not identified any specific document (or part thereof) that has been filed under seal in this case that IPRG believes should remain under seal. IPRG has not identified any specific document (or part thereof) filed under seal that it believes contain trade secrets, privileged information, or information required to be kept confidential by statute.

I swear under penalty of perjury that the foregoing is true and correct.

Chicago, Illinois, May 17, 2019,

                                            s/ *Selena Kyle*
                                            Counsel for Plaintiff Natural Resources Defense Council