E-FILED
Friday, 14 February, 2020  05:15:58 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC.; RESPIRATORY HEALTH ASSOCIATION; and SIERRA CLUB, INC., | |
| Plaintiffs, | Case No. 13-cv-01181 |
| | United States District Judge |
| v. | Joe Billy McDade |
| ILLINOIS POWER RESOURCES GENERATING, LLC, | Magistrate Judge |
| | Thomas P. Schanzle-Haskins III |
| Defendant. | |

### PLAINTIFFS' NOTICE OF DEVELOPMENT OF PROJECT PLANS PURSUANT TO THE CONSENT DECREE

Plaintiffs Natural Resources Defense Council, Sierra Club, and Respiratory Health Association file this notice to present the Economic Transition and Beneficial Project Plans they have developed pursuant to the November 13, 2019 Consent Decree, and to update the Court on the process they followed to develop the Plans and their next steps.

## BACKGROUND

**I.     The Consent Decree's Economic Transition and Beneficial Project provisions**

The Consent Decree required Defendant Illinois Power Resources Generating, LLC (IPRG), within sixty days after the Decree's entry, to transfer a total of $8.6 million—$1.72 million in Economic Transition funds, and $6.88 million in Beneficial Project funds—into an escrow account to be established by Plaintiffs. Consent Decree, ECF No. 283 (Decree), ¶¶ 4, 5, 15. IPRG (or its parent Vistra Energy Corporation) timely transferred the $8.6 million in funds

into the escrow account Plaintiffs established to hold them. The funds remain in the account

today, pending Plaintiffs' implementation of the Project Plans described in this notice.[1]

The Decree required Plaintiffs to develop Project Plans for allocating the Economic

Transition and Beneficial Project funds within ninety days of entry, *see* Decree, ECF No. 283, ¶¶

4, 4.1, 5, 5.1, 15, and to "timely file" the Plans, *id*. ¶¶ 4.1, 5.1. Economic Transition funds shall

be used "to pay for projects that provide funding for job training and/or re-training programs at

Peoria-area colleges, schools, community centers, and/or other organizations, that encompass a

range of industries and that may be made accessible to Edwards employees and others." *Id*. ¶ 4.

Beneficial Project funds shall be used "to pay for public health or environmental projects that

benefit the greater Peoria, Illinois area (collectively, 'Beneficial Projects'), as set forth in . . .

Appendix A." *Id*. ¶ 5. Appendix A lists four categories of projects:

1.      Projects that provide funding for electric buses to replace or supplement diesel-fueled buses, that install needed infrastructure to support electric buses, and/or that train drivers for those buses in Peoria-area public school and/or public transit fleets, up to a maximum of 50% of Beneficial Project Fund Money.
2.      Projects that provide funding for energy efficiency improvements, including pre-requisite updates needed to perform energy efficiency improvements, in Peoria-area homes (with an emphasis on lower-income homeowners and renters), up to a maximum of 50% of Beneficial Project Fund Money.
3.      Projects that provide funding to bring solar power to the Peoria-area region, with an emphasis on schools, government buildings, buildings that provide affordable housing, and/or homes owned by people with low or fixed income, up to a maximum of 25% of Beneficial Project Fund Money.
4.      Projects that provide funding for educational programs, home-improvement projects, and/or access to medical interventions to improve lung health, up to a maximum of 50% of Beneficial Project Fund Money.

---

[1] The escrow account Plaintiffs established to hold the $8.6 million has two subaccounts. One holds the Economic Transition funds, and the other the Beneficial Project funds.

IPRG (or its parent) also timely made the $3 million transfer of funds for attorneys' fees, costs, and expenses described in paragraph 7 of the Decree.

*Id*. Appendix A (ECF No. 230 at 14).

## II.     Plaintiffs' development of the Economic Transition and Beneficial Project Plans

As they noted during the November 13 hearing on the proposed Consent Decree, Plaintiffs wanted to follow an inclusive process that involved and drew on community expertise to decide what projects to include in the Economic Transition and Beneficial Project Plans. They formed an Advisory Team composed of representatives from each Plaintiff and three community partner groups: Central Illinois Healthy Community Alliance, Illinois People's Action, and the NAACP Peoria chapter. The community partner representatives have volunteered substantial amounts of time over the past several months, to help Plaintiffs design and implement a request for proposals (RFP) process to identify funding opportunities and to advise Plaintiffs on how best to choose among those opportunities. Plaintiffs are deeply grateful for their community partners' generous, unremunerated, and invaluable contributions of effort and local knowledge.[2]

The RFP was finalized on November 21, the week after the Decree was entered, and publicized via a custom website; targeted social media; personal outreach to Peoria-area not-for-profit and municipal government organizations the Advisory Team identified as likely to be interested in Edwards settlement funding (Economic Transition, Beneficial Project, or both), based on those entities' missions and service areas. The Team also held public information sessions at the Peoria Public Library on the afternoon and evening of December 3.

The RFP set a January 13 deadline to apply for funding. Forty-three applications were submitted, for a collective total of more than $35 million in funding. Following an initial screening and review process, the Team invited the proponents of thirty-two applications to give

---

[2] In addition to donating their representatives' time and expertise, Plaintiffs' community partner organizations on the Advisory Team chose not to seek any Economic Transition or Beneficial Project funds for their own work.

oral presentations and participate in question-and-answer sessions with the Team at the Peoria

Public Library during the last week of January. The Team deliberated and developed collective

recommendations on how to allocate the Economic Transition and Beneficial Project funds, after

which Plaintiffs deliberated amongst themselves to reach the final funding decisions reflected in

the Project Plans.[3]

In addition to the Consent Decree's requirements and the Clean Air Act's purposes, the

Advisory Team's recommendations and Plaintiffs' final decisions were informed by the factors

outlined in the RFP. These included relative cost effectiveness and likelihood of success, based

on each applicant's service and community-engagement history and the specifics of each

proposal (such as the proposed program design, timeline, budget, and metrics); the nexus

between the proposed work and the people most affected by the Edwards plant's pollution and

prospective closure; the desire to support wealth-building efforts in the Peoria-area communities

with the lowest household incomes and highest unemployment rates; the desire to fund some

Beneficial Project work in each of the four categories listed in Appendix A of the Consent

Decree; and the ability to effectively oversee the prospective grantees' work and ensure that both

Economic Transition and Beneficial Project funds are well managed and timely spent.

To the extent possible, after accounting for these requirements and factors, the Advisory

Team and Plaintiffs worked to ensure that funds would be made available to a variety of entities

working in or interested in serving the Peoria area: local government agencies, established not-

---

[3] One proposal was timely submitted but, for reasons that are unclear, diverted to a spam folder in the email account Plaintiffs established to accept proposals. Plaintiffs discovered this application on Wednesday, after deliberations on the other proposals and after the Decree's deadline to develop the initial Project Plans presented here. They reviewed the proposal in order to decide whether to seek leave to modify the relevant Project Plan (for Beneficial Projects) to include some funding for it, based on the same factors they and the full Advisory Team considered in evaluating other proposals. Plaintiffs decided not to seek to modify their Plan.

for-profit educational institutions and service organizations, and smaller and more nascent

community-based organizations.

## THE PROJECT PLANS

**I.    The Economic Transition Project Plan**

Plaintiffs plan to allocate the $1.72 million in Economic Transition funds as follows:

    A.    $500,000 to Heaven's View Community Development Corporation (HVCDC), a not-for-profit organization dedicated to combating the problems of poverty, for a solar jobs training program targeted to the communities of Pekin, Bartonville, Peoria (council districts 1-3), Creve Coeur, and parts of East Peoria. The funds will allow HVCDC to offer eight weeks of paid training and associated support services (including employment coaching, counseling, childcare, transportation support, and health clinic services) to approximately 450 people over five years. HVCDC's goal is to enable its trainees to obtain living and prevailing wage jobs in the solar industry.

    B.    $204,060 to Illinois Central College (ICC), to fund the participation of approximately 100 additional people (twenty-five per year over four years) in its Certified Nurses Aid (CNA) program. ICC's goal is to give these students a credential that will qualify them for immediate employment at Peoria-area hospitals and clinics and serve as a foundation for credentials that require more training and command higher pay (such as Licensed Practical Nurse and Registered Nurse). ICC plans to prioritize displaced Edwards workers and family members and residents of communities most affected by the plant's pollution (such as those on Peoria's South Side) in its recruitment.

C.      $144,200 to Jubilee Ministries, a Peoria-based not-for-profit organization dedicated to helping people get, keep, and, over time, improve their jobs, to fund the expansion of its Jubilee Jobs program, which connects people to jobs and job-training programs and helps them stay employed, over a period of one to two years (depending on the Ministries' capacity and needs). The Jubilee Jobs program focuses on serving low-income people, most of whom live in Peoria's 61605 and 61603 zip codes and approximately half of whom are felons and ex-offenders. The Ministries' goal is to help undo the damage caused by decades of racial and economic injustice by supporting people in their efforts to move into living wage work.

D.      $288,000 to the City of Peoria's PeoriaCorps green-infrastructure training and workforce development program, to increase trainees' hourly stipends from $6.25/hour to $10/hour for an approximately four-year period (depending on the level of participation). PeoriaCorps programs are designed for cohorts of up to ten people, last six months, and focus on serving people in Peoria's economically disadvantaged urban core. PeoriaCorps trainees do 900 hours of service work with the City's Public Works Department; receive personalized professional development and personal coaching; and complete classroom training including the National Green Infrastructure Certification Program (NGICP) curriculum, which culminates in a certification exam.

E.      $258,640 to Peoria Public Schools (PPS), to fund PPS's development and deployment of a new Renewable Energy Pathway technical training program over a three-year period. The program will incorporate training on the

assembly, installation, and monitoring of new solar panels to be installed on
the roof of PPS's Woodruff Career and Technical Center as part of Plaintiffs'
Beneficial Project Plan, *see infra* II.C.3. PPS's goal is to prepare its students
to enter sustainable, living wage jobs that will strengthen Peoria's workforce.

F.      $25,000 to Soulside Healing Arts, a not-for-profit organization whose
Community Yoga Program partners with Peoria-area schools and service
agencies to provide pay-as-you-wish classes by trauma-certified instructors, to
recruit, train, and certify at least two new instructors from the communities
most affected by pollution from the Edwards plant and/or socioeconomic and
racial injustice (such as the communities of Bartonville, Pekin, and Peoria's
South Side), over the next two to three years.

G.      $300,100 to the Tri-County Urban League (TCUL), to fund the participation
of approximately forty people in a Workforce Empowerment Program over a
three-year period, with a special emphasis on residents of Peoria's South Side
and interested displaced Edwards workers. The Program provides participants
with an array of integrated services including occupational training;
educational interventions; personal career coaching; legal services; and
(through partnerships with other service organizations) support services
including mental health counseling; substance abuse treatment; and assistance
with transportation and childcare. It focuses on moving people into jobs in the
advanced manufacturing, healthcare, logistics, and hospitality sectors.

//

//

7

II.     **The Beneficial Project Plan**

Plaintiffs plan to allocate the $6.88 million in Beneficial Project funds as follows. This allocation provides for funding in all four of the project categories referenced in Appendix A to the Decree, at levels consistent with the specified funding caps.

    A.    Under Appendix A paragraph 1 (concerning bus electrification projects):

        1.    $1,230,000 to the Greater Peoria Mass Transit District/City Link (GPMTD), for the purchase of a 35-foot electric transit bus, battery lease, and charging equipment. The new electric bus will replace a polluting diesel bus that has been in service for more than fourteen years. GPMTD plans to run the new electric bus on one or more of the routes that serves Peoria's South Side.

        2.    $882,000 to the Hollis and Pekin school districts, to fund the purchase of one electric school bus and associated battery and charging equipment per district (two total), and provide an allowance for any infrastructure upgrades necessary to install the charging equipment.[4] Like the new electric transit bus described in Part II.A.1, these new electric school buses will be substituted for polluting diesel buses that are in service today (a leased bus in the Hollis district, and a district-owned bus in the Pekin district).

    B.    Under Appendix A paragraph 2 (concerning energy efficiency projects):

---

[4] These two school districts partnered with some other Peoria-area school districts on a joint funding proposal. The Edwards plant is in the Hollis district.

8

1.   $845,653 to Elevate Energy, a Chicago-based not-for-profit organization dedicated to ensuring that the benefits of clean and efficient energy use reach those who need them most, to fund energy-efficiency retrofits and pre-requisite home improvements in approximately 50 lower-income homes in the areas most affected by pollution from the Edwards plant (including Bartonville, Pekin, and the South Side of Peoria), over a four-year period. Elevate's work will include identifying and integrating local construction contracting businesses owned by people of color and/or women.

2.   $650,000 to METEC, a Peoria-based not-for-profit organization dedicated to promoting home ownership, employment, and financial well-being, to fund energy efficiency upgrades and pre-requisite improvements in approximately 35 lower-income homes, with a focus on Pekin and on Peoria's South Side, over a four-year period.

3.   $163,515 to the Peoria Housing Authority (PHA), to fund weather stripping, window caulking, and installation of new storm doors at its Harrison Homes property on Peoria's southwest side (on the 2600 and 2700 blocks of Roosevelt Place, in zip code 61605). This work will reduce the property's energy consumption and make it more comfortable for residents, who are predominately African-American and whose household incomes average less than $700/month. PHA estimates that it will take four to six weeks to complete the work, once funding is confirmed.

C.      Under Appendix A paragraph 3 (concerning solar projects):

   1.      $276,480 to Artists ReEnvisioning Tomorrow, Inc. ("ART Inc."), the
           not-for-profit owner and operator of the Romain Arts & Culture
           Community Center (located in the former Greely school building at
           919 NE Jefferson Avenue, Peoria, 61603), to fund the purchase and
           installation of solar panels on the Center's roof. ART Inc.'s mission is
           to enhance community quality of life through arts education and
           cultural programs for youth and adults. It has partnered with PPS to
           host after school programming for students from five schools (Trewyn
           Middle, Glen Oak Primary, Manual, Harrison, and Roosevelt Magnet);
           it also hosts a summer arts camp. The new solar panels will supply
           most of the Center's power and allow ART, Inc. to redirect the energy
           savings to funding community programs. The timeline for this project
           will depend on how long it takes to obtain the required permits and on
           weather, but ART, Inc. has estimated that it will take about nine weeks
           to complete the installation, once funds are released.

   2.      $96,550 to the City of Peoria, to fund the purchase and installation of
           solar panels on new Fire Station Number 4, to be built at the corner of
           Western and Howett on Peoria's South Side. The City plans to begin
           construction on the Station in fall 2020. It estimates that the panels
           will offset 100% of the Station's energy use and allow the Station to
           operate as a "net zero" building. Because fire station designs are

relatively standardized, the solar array on Station Number 4 may serve as a model for future City fire station building and retrofit projects.

3.      $1,148,772 to PPS, to fund the purchase and installation of solar panels on the roof of the Woodruff Career and Technical Center (located at 1800 NE Perry Avenue, Peoria, 61603) and associated roof repairs, utility connections, and public outreach. The panels will supply power to the Center and help to offset PPS's utility costs. They will also serve as an instructional tool for the Renewable Energy Pathway training program included in the Economic Transition Project Plan (at paragraph I.E above). PPS plans to install the panels by summer 2023.

D.      Under Appendix A paragraph 4 (concerning lung health projects), $1,587,010 to the Peoria City/County Health Department, to fund educational programs and medical interventions to improve lung health in partnership with other not-for-profit health care-focused organizations and medical providers serving the greater Peoria area. These funds will be used to support asthma education programs and emergency asthma medications in schools, as well as materials designed to reduce asthma attacks at home; early detection programs for lung cancer that increase survivability; and purchase of lung health diagnostic equipment for area clinics, over a four-year timeframe.

**NEXT STEPS**

Plaintiffs have notified all applicants for Edwards settlement funds of their funding decisions, and have asked the entities listed in the Beneficial Project Plan to prepare the initial letters the U.S. Department of Justice requested in its October 2, 2019 letter to the Court (Exhibit

11

2 to the proposed Consent Decree).[5] Plaintiffs are working with their Advisory Team community partner groups and interested entities listed in the Economic Transition and Beneficial Project Plans to publicize the funding decisions in the Peoria area.

The next step is for Plaintiff Natural Resources Defense Council, in consultation with its co-Plaintiffs, to develop and enter grant agreements with each entity listed in the Economic Transition and Beneficial Project Plans.[6] Plaintiffs will begin releasing funds from escrow to each entity once a final grant agreement is in place, and pursuant to a schedule to be determined in consultation with each grantee and tailored to the planned use of the funds. Plaintiffs have until at least April 15, 2024 to disburse the full $8.6 million, *see* Decree, ECF No. 283, ¶¶ 4.1, 5.1, but must endeavor in good faith to disburse the Economic Transition funds as soon as possible, *id.* ¶ 4.1, and believe it will benefit the greater Peoria community to begin disbursing the Beneficial Project funds as soon as reasonably possible. Their goal is to complete the grant agreements and start disbursements in the next several months.

Respectfully submitted February 14, 2020,

s/ *Selena Kyle*
Selena Kyle (IL Bar No. 6311573)

---

[5] DOJ requested letters from each Beneficial Project fund recipient "representing that it is a 501(c)(3) tax-exempt entity or municipality and that it: (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the [Beneficial Project] funds were spent." Exhibit 2 to the Proposed Consent Decree, ECF No. 280-2, at 3 (page 2 of DOJ's letter). To minimize the burden on the Court and DOJ, Plaintiffs plan to bundle the initial letters from each entity listed in the Beneficial Project Plan and submit the letters as a single package.

[6] Plaintiffs believe this arrangement represents the most efficient way to distribute and ensure proper spending of the funds, given their respective organizational capacities and constraints. Plaintiffs also explored the possibility of having a local foundation write and oversee grant agreements; they were ultimately unable to find one able to take on the work within the timeframes provided by the Consent Decree.

Natural Resources Defense Council
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 651-7906
skyle@nrdc.org

*Counsel for Plaintiff Natural Resources
Defense Council*

s/ *Gregory E. Wannier*
Gregory E. Wannier (CA Bar No. 275349)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94110
(415) 977-5646
greg.wannier@sierraclub.org

*Counsel for Plaintiff Sierra Club*

s/ *Justin Vickers*
Justin Vickers (IL Bar No. 6305129)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
jvickers@elpc.org

*Counsel for Plaintiffs Sierra Club and
Respiratory Health Association*